Mr. Timothy Ray Baker. CDC#K62174.

Salinas Valley State Prison-C1-125 Low

P.O. Box 1050.

Soledad, CA 93960-1050.

IN-PRO-PER.

FILED
CLERK, U.S. DISTRICT COURT

MAR 22 2021

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT.

FOR THE CENTRAL DISTRICT OF CALIFORNIA.

| TIMOTHY R. BAKER. | Case No. 2-18-cv-02301(PA)GJS. |
| PLAINTIFF. | OPPOSITION TO THE SUMMARY |
| V. | JUDGMENT ("OPPOSITION") |
| | Fed. R. Civil. P. 56 And |
| F. VILLALOBOS, et al., | Local Rule 56-2. |
| DEFENDANTS. | |

Comes now Plaintiff files his "OPPOSITION" To

Defendants Motion & Motion for Summary

Judgment. Pesuant to Local Rule 56-2

Thank You. Magistrate Judge Gail J. Standish.

Respectfully Submitted

Dated. March 17, 2021

Signed, Timothy Ray Baker

Defendant In-Pro-Per.

1.

Mr. Timothy Ray Baker. CDC# K62174.
Salinas Valley State Prison. C1-125 Low.
P.O. Box 1050.
Soledad, CA 93760-1050.
In-PRO-PER.


UNITED STATES DISTRICT COURT.
FOR THE CENTRAL DISTRICT OF CALIFORNIA.


TIMOTHY R. BAKER.               Case No: 2:18-CV-02301 PA (GJS)
PLAINTIFF.                      PLAINTIFFS STATEMENTS OF
                V.              GENUINE DISPUTED FACTS
                                OF DEFENDANTS ALLEGATIONS
F. VILLALOBOS, et al.,          SEPARATE STATEMENTS OF
DEFENDANTS.                     DISPUTED FACTS.


Pursuant to Local Rule 56-2. Plaintiff files
his Separate Statements of Disputed Fact
and Statement of Genuine Disputed Facts
of Defendants false allegations In re: To
Plaintiffs failure to Exhaust his administrative
remedies and their assertions. That Plaintiff
physically assaulted/spat on defendants
C/o A. Castro, C/o B. Pabon, C/o R. Pabon and that
Plaintiff attempted to incite a riot. When their
false allegations are not supported by facts
but rather Subterfuges = Lies & Deception.

1.

Statement of Genuine Disputed Facts
Local Rule 56-2

(1) Opposition / Dispute To defendants false allegations. Defendants did not use reasonable force but rather excessive use of force when none was ever needed. Plaintiff was already being subdued as a resistive inmate alarm was activated. However defendants stated in their 837 crime incident packet that plaintiff was hand-cuffed behind his back and walked freely on his own down to the program office. C/o Ramone Pabon & C/o B. Pabon alleged in the same 837 crime incident packet that I had spit on their faces. (See) 837, 7219 Plantiff wasn't written up for attempting to incite a riot pursuant to CCR title 15 § 3004 (b) Rights & Respect of others. Plaintiff avers that he did not attempt to incite a riot because he was inside of the B Yard program office being severly beaten by defendants F. Villalobus, C/o A. Castro C/o B. Pabon C/o R. Pabon from 5:05 pm unto 5:46 pm and had no way to incite anyone as he was physically restrained and subdeed in hand-cuffs and the yard was doing chow pass at 5:00 pm diabetics first then G.P also they did 5:00 pm med pass for diabetics then G.P inmates. Plaintiff did not see anyone or speak to any inmates from 5:05 to 5:46

1.

(2) Opposition / Disputed Facts

Plaintiff avers he did not attack or spit on any one at any time as he was immediately placed in hand-cuffs behind his back by the assisting officers C/o B. Pabon C/o Ramone Pabon Sgt F. villalobos. Plaintiff wasn't written-up for attacking any officer nor does he recall it being reported in his 837 crime incident report ever. Plaintiff was written up for Aggravated Battery on A Peace officer caustic substance spit. Plaintiff contends that he's never spat on any officer or anyone in his life time. And there was A CP #514. AB995 Forced Chassing Test ever done on the report-ing officer faces, in her mouth or on their jumpsuits which was reported on their 7219 and entered into evidence lockers #24/#25. C/o A Castro- C/o B. Pabon with my saliva on them. (See) document CP #514 AB995 attached thereto as exhibit (B)

(3) Opposition / Dispute.

Plaintiff contends that he did exhaust all of his administrattive remedies that were made available to him and was prevented from doing it effectively by 3rd Level of appeals chief Appeals office.

2

4) Opposition / Disputed Facts

Plaintiff never ever assaulted defendants but rather was assaulted. To the degree he sustained a detached retina in his right eye (see) exh (c) medical opthamologist Treatment / diagnoses

(5) Opposition / Dispute

Plaintiff put officials on notice verbally when he was in the Holding cage after being beaten badly and then antagonized by all of the listed defendants at approximately 9:00-9:30 when they were all inside of the Mental Health Annex getting their items. I also mentioned to the watch commander Lt. Lieger and Sgt. K. Marshal that I was just viciously beaten and injured and that I was going to sue them for crimes committed against me unprovoked which did not warrant any excessive use of force. Defendants had alleged that I said to a crowd of people for them to look as these people. I'm going to sue them. When I was allegedly outside being paraded around in a wheel chair with a spit mask on after being beaten unconscious temporacily without any provocation whatsoever from plaintiff, but rather racially motivated Animus, Hatred and disdain for me as an Afro-American. Black Lives Matter!

3.

(6) Opposed / Disputed Facts

Plaintiff administrative remedies were made effectively unavailable by 2 or more 3rd Level of appeals chief of Inmate Appeals Plaintiff tried several times to cure any and all deficiencies by resubmitting the allegedly missing documents (1) MH-115 (2) 72/95 (3) 837 crime incident paper (1 & 2) Plaintiff resubmitted the said documents and was told that he had to submit all supporting documents in a single submission therefore they kept rejecting the appeal after I cure the alleged deficiencies. I was then told not to resubmit any documents or they would be confiscated. So I filed several CDCR form 22 s Requesting (1) An Interview (2) Item or (3) Service. Once @ I complied with the 3rd Level of Apple applicable regulations and attached all of the necessary documents, I was told that all of my supporting documents should be submitted in one submission. There was absolutely no reasons to challenge a rejection because Plaintiff thought he had already cured all of the deficiencies, by 1st resubmitting the MH-115 837 crime incident report pages (1 & 2) and 72/95 which were attached to the 837 incident packet report I received in its entirety unseparated.

4.

6(a) Opposition / Disputed Facts

Also when plaintiff tried to comply with the governing rules and regulations of CCR title 15. by resubmitting my supporting documents at least (2) times, I was then told not to resubmit anymore document or they would be confiscated. Therefor my administrative remedies were made effectively unavailable. Prison officials rejected my Inmate 602 appeal grievances for various reasons and never accepted it for 3rd Level Review rather kept on rejecting it even after I complied with their reasoning to cure any deficiencies, thereby rendering confusing directions from multiple 3rd level reviewers and would not accept my supporting documents after telling me to resubmit them which I did so and attached all of the supporting documents to it It was still rejected. Defendants were all put on notice that I was going to file a staff misconduct complaint regarding unnecessary use of excessive use of force when none was ever needed or necessary. I was being interviewed by the 3rd watch Commander Lt. Liger and Sgt. K. Marshall in an incamera interview. The 9th circuit noted that when prison officials screen out grievances for ("improper reasons") inmates cannot persue the necessary administrative grievances and thus remedies become plainly unavailable. CCR title 15 § 3084.(6)(b)(1)

5.

6)(b)  Opposition / Disputed Facts

Plaintiff did resubmit his appeal and was told that the resubmission of the appeal was received and would be processed (see) Exh (D) Attached as Defendants undisputed Facts. April 27, 2016 Resubmitted again on May 6, 2016 follow-up form 22 along with loose documents May 9, 2016 OOA responded to the form 22 informing me that my appeal is in screening process. on May 25, 2016 Plaintiff submitted another CDCR form 22 to follow-up to the OOA. on May 25, 2016 OOA responded to the form 22, to Plaintiff that his appeal processed for screening, and that he should refrain from submitting loose documents in which Plaintiff was instructed to do so. resubmit his MH-115. 72195 which were all attached to his 837 crime incident report (ABC) pages (1&2) on June 2, 2016 the OOA rejected plaintiffs appeal resubmission for missing necessary documents Re: MH-115, (2) 72195, 837 A.B.C. pages (1&2) NOTE: That everytime plaintiff would resubmit his necessary supporting documents at the 1st request of the OOA he was told that his 602 appeal was missing MH-115, 72195. parts A.B.C. of the 837 crime incident report pages 1&2 of part A. still Plaintiff Contend's he did include them and they were still rejected as being filed separately as opposed to being submitted in one submission

6.

(c)(c) opposition / Disputed Facts

When plaintiff was informed in the very instance to enable him to cure the defiencies (via) M.H-115, 7219, 837 crime incident report pages 1 & 2. Plaintiff appeal was then held beyond the its time frame and was ultimately rejected all together (see) Exh ①)

NOTE: The OOA 3rd Level of Appeals procedures are very draconian so as to trip up all but the most skillful prisoners. The very last time Plaintiff had made A good faith effort to remedy the defiencies he was told not to resubmit anymore document as it so clearly shows that plaintiff was in Compliance with the OOA 3rd Level of Appeals when he did submit his M.H-115, 7219, 837 incident report including pages 1 & 2 of 11. Which they clearly showed (SHO) copy on the first page just as I had conveyed that to the OOA, that they told me to add those pages that were missing and resubmit them to enable plaintiff to correct and cure any defiencies. Plaintiff did so. As plaintiff actually received all of the supporting documents he a originally submitted in the first instance, Plaintiff also informed defendant-counsel of that and that the papers may have been lost or destroyed and even stuck together any thing is possible. So plaintiff did what he was told to do several time

(See) M.H-115-7219. 837                        Complete submitted docs.

7.

7) Opposition / Disputed Facts

Plaintiff inform all named defendants of his sole intentions to sue them individually for unnecessary excessive use of force and deliberate indifference to his serious medical needs. As he was standing in the Mental Health Annex holding cage awaiting on an escort officer. Also while they were beating the Hell out of me in the program office as well as when C/o Ramsey C/o Smith was parading me around on the yard in front of my peer to mock me and as to say look at what we do to litigators. I told everyone envolved that I was going to tell all of their immediate officials incharge what they did and to contact Internal Affairs which I followed through on my word. There was an ISU / Internal Affairs Investigation done so that's my notice of intent! It doesn't require anything else. I wasnt able to read or write due to Sgt. F. villalobas and C/o Ramone Pabon slamming my head into a glass window and on the hard ground floor 4 time. Thereby causing my retina to be detached (see) medical 1824 also. It specifys Blunt Force Trauma To the head on 8/11/2015 committed by defendants. Sgt. F. villalobas C/o A Castro C/o B. Pabon  C/o. Ramone Pabon August 11, 2015.

8.

8) Opposition / Disputed Facts

Plaintiff avers that once the (A)warden was made aware of the Excessive Use of Force incident and that physical force was deployed the defendant were put on notice then that they were being sue. Even tho AOD Agent of the Day. Captain Perry. once it got to the senior officials everyone involved was notified and have to give a report as to what they did. That serves as notification The facts that the defendants cause blind-ness in my right eye due to unnecessary use of force which played a role in what I was able to do and not do. as it relates to seeing or not seeing well enough to enable me to effectively persue any other grievances. I've had 3 eye surgeries and am scheduled for A 4th one.

9) Opposition / Dispute

Plaintiff also avers that the defendants all had reasonable first hand knowledge that I had a frontal waist restraints only chrono and I had it on my person for verification. And Sgt. F. Villalobos told them not to hand-cuff me behind my back. they disregarded his orders and hand-cuffed me any way in contradiction of NO hand-cuffing me behind my bck.

9.

## CONCLUSION

The only exception to the (PLRA) Prison Litigation Reform Act, exhaustion requirements is unavailability, and administrative remedies becomes unavailable when prison administrators "thwart" them from taking advantage of a grievance process through machination, misrepresentation or intimidation. Which seems to be the situation at hand OOA's planned plotted and devised a scheme it was meant to be misrepresented to somehow intimidate me by stating they would confiscate my 602 appeal and its resubmitted original supporting documents It worked on me and therefor I was deterred, confused and exhausted from doing everything the OOA requested that I do, BUT TO NO AVAIL. Rendering my inmate 602 Appeal Grievance unexhausted with no other adequate remedy of Law, after doing what I was told to do nothing was good enough for CDCR prison administrators. Plaintiff took every reasonable action to cure the descriepencies but it still proved to be invalid, according to the 3rd Level of appeals OOA. So in retrospect Plaintiff did in fact exhaust all of the administrative remedies that were made available to him Plaintiff Made a good faith effort to exhaust his remedies, by doing what the OOA requested time and time again, However nothing sufficed.

10.

Continued; from page 10.

The 8th amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F. 3d 1041, 1045 (9th cir. 2006) Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care and personal safety. Farmer v. Brennan, 511 u.s. 825, 832-33 (1994) Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hearns v. Terhune, 413 F. 3d 1036, 1040 (9th cir. 2005) The failure to protect inmates from attacks may rise to the level of an 8th Amendment violation where prison officials know of and disregards a substantial risk of serious harm to the plaintiff. Farmer, 511. u.s. at 847; Hearns, 413 F. 3d at 1040. Defendants. (1) Sgt. F. Villalobos, C/o A. Castro C/o B. Pabon, C/o Ramon Pabon. Knew that their sole intended purpose was to beat me like A dog once they got me out of plain sight of the GP inmate population in the Sch. secluded area of the B Yard Program office for no other reason than to inflict wanton injuries, hurt, pain knowingly. That I did nothing wrong as I was completely subdued and at their mercy at all times restrained in hand-cuffs behind my back.

11.

## Declaration

I, Timothy Ray Baker, swear under the penalty of perjury and the Laws of the state of California That this is A true and correct documents based on information and Beliefs. & True & correct statements Executed this 17th, date of March, 2021 at S.V.S.P State Prison, Soledad, CA 93960-1050, signed, Timothy Ray Baker Dated March 17, 2021

Signed, Timothy Ray Baker

Timothy Ray Baker # KG2178

Salinas valley State Prison Cl-125₂

P.O. Box 1050

CC.                    Soledad, CA 93960-1050

State of California
Department of Justice
Deputy Attorney General
Neccular Grecea.
300. South Spring st, Suite 1702
Los, Angeles, CA 90013


UNITED STATES DISTRICT COURT
Central District of California
office of the Clerk. E. Carson
255. East Temple Street, Room 180
Los. Angeles, CA 90012

12.

# EXHIBIT COVER PAGE B

EXHIBIT

Efforts Made To Exhaust Remedies

Description if this exhibit:

1) First Level By Passed. Second Level, Third Level.
2) RVR. (3) COA 3rd Level Responses & Instructions
   1) M. Voong, 2) E. Parino
3) 7219. Medical Report of Injury / unusual occurrence

Number of pages to this exhibit: ___30___ pages

4. OP # 514, AB 995. Force Gassing Test

**JURISDICTION:** (Check One Only)

☐ MUNICIPAL COURT
☐ SUPERIOR COURT
☐ APPELLATE COURT
☐ STATE SUPREME COURT
☒ UNITED STATES DISTRICT COURT
☐ STATE CIRCUIT COURT
☐ UNITES STATES SUPREME COURT
☐ GRAND JURY

Case 2:18-cv-02301-PA-GJS   Document 62-4   Filed 02/09/19   Page 50 of 216   Page ID #:449

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                              EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



August 17, 2016

BAKER, TIMOTHY, K62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

RE: TLR# 1507376    LAC-15-04254    Form 22

On December 22, 2015, you submitted your appeal to the Third Level of Review. It was rejected on April 01, 2016, for missing documentation; specifically, your 115-MH, Mental Health Assessment, 7219 and complete 837, Incident Package. On April 22, 2016, you resubmitted your appeal to the Third Level of Review and it was rejected on June 2, 2016, for failure to include the complete 837, Incident Package; specifically, page one and two.

This is your fifth Form 22 inquiry regarding your appeal. On April 27, 2016, you were advised, "Your appeal has been received and will be processed in date order. " On May 9, 2016, you were advised, "You have submitted loose documents to an appeal that was rejected on 4-1-16. Your appeal was received again on 4-22-16 and is in the screening process. The attached documents are being returned as the appeal needs to be sent in one packet." On May 25, 2016, you were advised, "Per Title 15, Section 3084.2 (b) (2): "Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings." In addition, your attachments to the Form 22 are not the requested documents (a copy of the Second Level Response, LAC-15-04254 and LAC Operational Procedure #514) from your Rejection Memo dated, April 1, 2016. Your appeal was missing the following documents: CDCR MH-115, CDCR 7219 and the complete CDCR 837. You have resubmitted your appeal, separate from this Form 22, and were told via a Form 22 dated, 5/9/2016, your appeal was in the screening process. Your appeal is still within the screening process. You will have 30 days from the date of the Screen out Memo, to follow any given new instructions. Failure to follow instructions can lead to the cancellation of your appeal. Your attached documents are being returned. Do not send them again, or they will be confiscated." *You appeal was subsequently rejected on June 2, 2016, for failure to include necessary supporting documentation; specifically, the complete 837 Incident Report, page one and two.* You submitted another Form 22 to our office which was received on July 20, 2016, stating, that you were "again, writing to you requesting my 3rd level appeal..." You go on to state; you had received your appeal back with "confusing narrative w/o the most important part of the 602 Appeal The 3rd Level, COA Review." You were instructed on July 25, 2016, "You are advised to make yourself familiar with the rules and regulations of the appeals process found in the Title 15. You may also request assistance from your Correctional Counselor or the Appeals Coordinator at your institution if the narrative is confusing."

To clarify, your appeal did not have a Third Level Decision because your appeal was rejected for missing page one and two of the 837, Incident Packet. You had 30 days from the date of the rejection letter to resubmit your appeal with the entire 837, Incident Packet. To this date, IATS does not reflect having received your appeal back for reconsideration. At this time, barring any extenuating circumstances, you are past time constraints. To reiterate, your appeal is not exhausted and the Third Level does not have your appeal as it was rejected on June 2, 2016. In fact, it is evident that you did receive your rejected appeal back, as you state you had received it back without the "most important part of the 602 Appeal The 3rd Level COA Review." And while, it is unclear, exactly, what the "COA Review" is, it is assumed, you are speaking of the Third Level Decision. Again, if you are having trouble understanding the rejection letters, the Appeals Process or this Form 22, you may seek assistance from your Correctional Counselor or Appeals Coordinator.

E. Parino

E. Parino
SSMII, Office of Appeals

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

AGO_021

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



May 25, 2016

BAKER, TIMOTHY, K62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA  95671

RE: TLR# 1507376    LAC-15-04254    Form 22

Per Title 15, Section 3084.2 (b) (2): "Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings."  In addition, your attachments to the Form 22 are not the requested documents (a copy of the Second Level Response, LAC-15-04254 and LAC Operational Procedure #514) from your Rejection Memo dated, April 1, 2016.   Your appeal was missing the following documents; CDCR MH-115, CDCR 7219 and the complete CDCR 837.   You have resubmitted your appeal, separate from this Form 22, and were told via a Form 22 dated, 5/9/2016, your appeal was in the screening process. Your appeal is still within the screening process. You will have 30 days from the date of the Screen out Memo, to follow any given new instructions. Failure to follow instructions can lead to the cancellation of your appeal. Your attached documents are being returned. Do not send them again, or they will be confiscated.

E. Parino

E. Parino
SSMII, Office of Appeals

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                          EDMUND G. BROWN JR., GOVERNOR

OFFICE OF APPEALS

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

*Received 6/10/16*
*AD-SEG c/o Turner*
*ORIGINAL APPEAL*
*No 3rd Level Response*
*Attached To APPEAL, Timothy Baker*
*Complete Appeal Sent to me!*
*MAILED from COA M. Voong 6/10/16*
*Incomplete Unanswered.*

June 2, 2016

BAKER, TIMOTHY, K62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

JUN 0 7 2016

RE: TLR# 1507376     LAC-15-04254     DISCIPLINARY


The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8. The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.


Per Title 15, Section 3084.2 (b) (2): "Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings." In addition, your attachments to the Form 22 are not the requested documents (a copy of the Second Level Response, LAC-15-04254 and LAC Operational Procedure #514) from your Rejection Memo dated, April 1, 2016. Your appeal was missing the following documents; CDCR MH-115, CDCR 7219 and the complete CDCR 837. You have resubmitted your appeal, separate from this Form 22, and were told via a Form 22 dated, 5/9/2016, your appeal was in the screening process. Your appeal is still within the screening process. You will have 30 days from the date of the Screen out Memo, to follow any given new instructions. Failure to follow instructions can lead to the cancellation of your appeal. Your attached documents are being returned. Do not send them again, or they will be confiscated.


M. VOONG, Chief
Office of Appeals


Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

OFFICE OF APPEALS



April 1, 2016

BAKER, TIMOTHY, K62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

RE: TLR# 1507376   LAC-15-04254   DISCIPLINARY

The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8. The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(7). Your appeal is missing necessary supporting documents as established in CCR 3084.3. All documents must be legible (If necessary, you may obtain copy(ies) of requested documents by sending a request with a signed trust withdrawal form to your assigned counselor). Your appeal is missing:

- CDCR Form 115-MH, Rules Violation Report Mental Health Assessment Request
- CDC Form 7219, Medical Report of Injury or Unusual Occurrence
- CDCR Form 837, Crime/Incident Report (Parts A, B, & C) (complete)

M. VOONG, Chief
Office of Appeals

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



May 25, 2016

BAKER, TIMOTHY, K62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA  95671

RE: TLR# 1507376    LAC-15-04254    Form 22

Per Title 15, Section 3084.2 (b) (2): "Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings."  In addition, your attachments to the Form 22 are not the requested documents (a copy of the Second Level Response, LAC-15-04254 and LAC Operational Procedure #514) from your Rejection Memo dated, April 1, 2016.   Your appeal was missing the following documents; CDCR MH-115, CDCR 7219 and the complete CDCR 837.   You have resubmitted your appeal, separate from this Form 22, and were told via a Form 22 dated, 5/9/2016, your appeal was in the screening process. Your appeal is still within the screening process. You will have 30 days from the date of the Screen out Memo, to follow any given new instructions. Failure to follow instructions can lead to the cancellation of your appeal. Your attached documents are being returned. Do not send them again, or they will be confiscated.

*E. Parino*

E. Parino
SSMII, Office of Appeals

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

STATE OF CALIFORNIA - DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



June 2, 2016

BAKER, TIMOTHY, F62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

RE: TLR# 1507376   LAC-15-04254   DISCIPLINARY

The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8. The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

Per Title 15, Section 3084.2 (b)(2), "Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings." In addition, your attachments to the Form 22 are not the requested documents (a copy of the Second Level Response, LAC-15-04254 and LAC Operational Procedure #514) from your Rejection Memo dated April 1, 2016. Your appeal was missing the following documents: CDCR MH-115, CDCR 7219 and the complete CDCR 837. You have resubmitted your appeal, separate from this Form 22, and were told via a Form 22 dated, 5/9/2016, your appeal was in the screening process. Your appeal is still within the screening process. You will have 30 days from the date of the Screen out Memo, to follow any given new instructions. Failure to follow instructions can lead to the cancellation of your appeal. Your attached documents are being returned. Do not send them again, or they will be confiscated.

M. VOONG, Chief
Office of Appeals

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

*Received 6/10/16*
*AD-SEG C/O Turner*
*ORIGINAL APPEAL*
*No 3rd Level Response*
*Attached To APPEAL / Timothy Baker*
*Complete Appeal Sent to me.*
*MAILED from COA M. VOONG 6/10/16*
*Incomplete Unanswered.*

June 2, 2016

JUN 0 7 2016

BAKER, TIMOTHY, K62174
California State Prison, Sacramento
P.O. Box 29
Represa, CA  95671

RE: TLR# 1507376     LAC-15-04254     DISCIPLINARY

The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8.  The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

Per Title 15, Section 3084.2 (b) (2): "Inmates or parolees shall submit their appeal documents in a single mailing and shall not divide their appeal documents into separate mailings."  In addition, your attachments to the Form 22 are not  the requested documents (a copy of the Second Level Response, LAC-15-04254 and LAC Operational Procedure #514) from your Rejection Memo, April 1, 2016.  Your appeal was missing the following documents; CDCR MH-115, CDCR 7219 and the complete CDCR 837.  You have resubmitted your appeal, separate from this Form 22, and were told via a Form 22 dated, 5/9/2016, your appeal was in the screening process. Your appeal is still within the screening process. You will have 30 days from the date of the Screen out Memo, to follow any given new instructions. Failure to follow instructions can lead to the cancellation of your appeal. Your attached documents are being returned. Do not send them again, or they will be confiscated.

M. VOONG, Chief
Office of Appeals

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.

****PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE****

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 1**

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | LAC-S | 15-04254 | 1 |

**FOR STAFF USE ONLY**

K62174

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare per California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.    **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Baker, Timothy R | K62174 | 05-121L | ASU-EOP D-1-D |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): Findings And 3315(f)(1)(H)(more)(one) And CDC Fritz Dispositions EXP

A. Explain your issue (if you need more space, use Section A of the CDCR 602-A): I was found guilty of A false RVR 115 # 3005.(d)(1) Aggravated Bttry on P/O with A Caustic substance Z. I was Assessed 90 days Lop, 10 day Loss of yard 3. No Forfeiture of Credit

B. Action requested (If you need more space, use Section B of the CDCR 602-A): 1, That I Be Compensated 20,000 dollars in punitive damages Awards 10,000. In Compensatory Awards For the 14th Amendment For Due Process/Deliberate Indif-

Supporting Documents: Refer to CCR 3084.3. ference for cruel & unusual punishment violations.
☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory, CDC 128-G, Classification Chrono): 20pages of Supporting Documents -DO NOT REMOVE FORDHAM! Final Copy 602 plus Exhibits

☐ No, I have not attached any supporting documents. Reason: TREAT THIS AS AN EMERGENCY 602. I'm Dying in this Program & I'm rapidly deteriorating Give me help today Z++. Thank You.

Inmate/Parolee Signature: _____    Date Submitted: 10/17/15

**By placing my initials in this box, I waive my right to receive an interview.**

RECEIVED
NOV 02 2015
INMATE APPEALS BRANCH

INMATE APPEALS BRANCH

RECEIVED
NOV 02 2015
INMATE APPEALS

C. **First Level - Staff Use Only**    Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the First Level of Review

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____ Interview Location: _____

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name) Title: _____ Signature: _____ Date completed: _____

Reviewer: _____ (Print Name) Title: _____ Signature: _____

Date received by AC: _____

AC Use Only
Date mailed/delivered to appellant _____ / _____ / _____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)                                                                                     DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

**BYPASS**

Inmate/Parolee Signature: _____                                    Date Submitted : _____

---

**E.  Second Level - Staff Use Only**                                          Staff – Check One:  Is CDCR 602-A Attached?  ☑ Yes  ☐ No

This appeal has been:

☐ By-passed at Second Level of Review.  Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

Assigned to: _____I A C_____  Title: _____  Date Assigned: 11-3-15  Date Due: 12-10-15

Second Level Responder. Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: 11/7/15                    Interview Location: D5

Your appeal issue is:  ☐ Granted  ☐ Granted in Part  ☑ Denied  ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: M. Fordham      Title: C/II    Signature: m. ____        Date completed 12/10/15
             (Print Name)

Reviewer: D. Ustad          Title: CCw (A)  Signature: ____           
          (Print Name)

Date received by AC: **DEC 11 2015**

| | AC Use Only |
| --- | --- |
| | Date mailed/delivered to appellant DEC ___ |

---

**F.  If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

Dissatisfied on December 9, 10 2015 while having a discussion with Lt. Marshal He stated that the preponderance was and is more favorable to USE At 51 to 49 thus creating a unobjective and bias ruling, when the CCR title 15 § 3320(h) The senior hearing officer Lt. Marshal in his own word's had A predetermination of my guilt based on the basis of ___

Inmate/Parolee Signature: _Timothy R Baker_                    Date Submitted: Dec 15 2015

---

**G.  Third Level - Staff Use Only**                     APR 0 ? 2016

This appeal has been:

☐ Rejected (See attached letter for instruction) Date: _____  Date: JUN 0 7 20__ Date: _____  Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the Third Level of Review. Your appeal issue is  ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other:
    See attached Third Level response.

| | Third Level Use Only |
| --- | --- |
| | Date mailed/delivered to appellant ___/___/___ |

---

**H.  Request to Withdraw Appeal:**  I request that this appeal be withdrawn from further review because: State reason. (If withdrawal is conditional, list conditions.)

_____
_____
_____

Inmate/Parolee Signature: _____                    Date: _____

Print Staff Name: _____  Title: _____  Signature: _____  Date: _____

INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE    MAILED   MAILED    DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 22 (10/09)

**SECTION A: INMATE/PAROLEE REQUEST**    MAY 2 7 2016   MAY 0 9 2016    1507376

| NAME (Print) (LAST NAME) BAKER   (FIRST NAME) TIMOTHY R. | CDC NUMBER: #K62174 | SIGNATURE: Timothy R. Baker |
|---|---|---|

| HOUSING/BED NUMBER: CF1-101 Low | ASSIGNMENT: Unassigned | HOURS FROM_____ TO_____ | TOPIC THE MAIL CONDITION OF CONFINEMENT/PAROLE, ETC.): Gassing False RVR. 3005 (d)(1) |
|---|---|---|---|

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:
To COA. 3rd level of Appeals M. Voong. Im being falsely wrote-up for specific Act of Aggravated Battery, I didn't do it. I got this information from Lt. Shabazz at CSP-LAC, CDCR. CSP-LAC OP#319 Forced Testing of Inmates-Gassing. I was badly assaulted by C/O A. Castro. Sgt. F. Villalobos. C/O R. Pabom C/O B. Pabom. C/O J. Ramsey Sgt. F. Villalobos wrote me up as a justification for him and the Named officers badly assaulting while in hand-cuffs behind my back in RVR. LOG# 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. 2nd W APPL LOG# LAC-S-15-04255. 8/11/15

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED**
☐ SENT THROUGH MAIL: ADDRESSED TO COA 3rd Lv Appl M. Voong.    DATE MAILED: 5/4/16
☒ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE) YES   NO |
|---|---|---|---|

| IF FORWARDED – TO WHOM: Chief off Appeal M. Voong | DATE DELIVERED/MAILED: May 4, 2016 | METHOD OF DELIVERY: (CIRCLE ONE) IN PERSON   BY US MAIL |
|---|---|---|

**SECTION B: STAFF RESPONSE**

| RESPONDING STAFF NAME: Sandara | DATE: 5/9/16 | SIGNATURE: | DATE RETURNED: 5/9/16 |
|---|---|---|---|

You have submitted 100% documents to an appeal that was rejected on 4-7-16, your appeal was received again on 4/28/16 and is in the screening process. documents are being returned as the appeal needs to be sent in one packet.

**SECTION C: REQUEST FOR SUPERVISOR REVIEW**    Request for Supervisor Review. Please
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

I disagree. Per CCR title 15 § 3084.(6a) I can take the Corrective necessary action and resubmit the appeal I did so and Attch 837 mit-115 and supporting documents that were sent with the 837 packet and incident papers Lt. Shabazz (SHO) forwarded these papers to me at the 2nd level review. Please add them back to my appeal. Thank You

| SIGNATURE: Timothy R. Baker | DATE SUBMITTED: May 19, 2016 |
|---|---|

**SECTION D: SUPERVISOR'S REVIEW**

| RECEIVED BY SUPERVISOR (NAME): E Parra | DATE: 5/25/16 | SIGNATURE: E Parra | DATE RETURNED: 5/26/16 |
|---|---|---|---|

See Attached

Distribution: Original - Return to Inmate/Parolee

STATE OF CALIFORNIA
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

RECEIVED
APR 20 2016

DEPARTMENT OF CORRECTIONS AND REHABILITATION

150 7376
SA

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print): (LAST NAME) BAKER (FIRST NAME) TIMOTHY | CDC NUMBER: #K62174 | SIGNATURE: Timothy R Baker |
| HOUSING/BED NUMBER: CEL-101L | ASSIGNMENT: ABE T | HOURS FROM: 200 to 1015 | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): 3rd Level Appeal |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW

To: COA M. Voong I am
writing to you to ask you to 1 Expedite this
Appeal 2. Please Accept it in its entirety 3. Also it
doesN't have the face sheet due to my CCI R. Couch
never receiving it through the institutional mail
after I sent it to her I did have her to give me the
RVR MH Assessment Request & the Complete 839 & Attachments

METHOD OF DELIVERY (CHECK APPROPRIATE BOX)  **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☒ SENT THROUGH MAIL: ADDRESSED TO: Chief off of Appeals M. Voong          DATE MAILED: 4/20/2016
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE)

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE) YES   NO |
| IF FORWARDED – TO WHOM: Chief off of Appeals M. Voong | DATE DELIVERED/MAILED: April 20, 2016 | METHOD OF DELIVERY: (CIRCLE ONE) IN PERSON / BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: Sandoval T | DATE: 4-27-16 | SIGNATURE: | DATE RETURNED: 4-27-16 |

Dear Your appeal has been received and will be
processed in date order.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:    December 10, 2015                        2015 DEC 14  PM 3: 00

                                                        RECEIVED
To:      Inmate Baker, CDCR #K62174              CSP - LA COUNTY
         Housing Unit D5-121                        MAINLINE
         California State Prison-Los Angeles County  RECORDS OFFICE

Subject: SECOND LEVEL APPEAL RESPONSE LOG NUMBER LAC-S-15-04254

ISSUE:

The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #B15-08-0066, dated August 11, 2015, for "Aggravated Battery on a Peace Officer with a Caustic Substance."

Appellant claims there was insufficient evidence to support the Senior Hearing Officers (SHO) guilty finding. Appellant claims the RVR was fabricated to conceal staff's unprovoked beating of him which resulted in excessive force.

Appellant requests to dismiss RVR Log # B15-08-0066. Appellant requests to be monetarily compensated. Appellant requests to be allowed to file an ADA abuse complaint. Appellant requests to be taken to an emergency classification committee and be placed up for transfer. Appellant requests that an investigation be initiated by ISU into his allegations of staff misconduct. Appellant requests to be made Non-Disciplinary Status (NDS) in Administrative Segregation Housing (ADSEG).

REGULATIONS:  The rules governing this issue are:

         CCR 3005    Conduct
         CCR 3315    Serious Rule Violations
         CCR 3320    Hearing Procedures and Time Limitations

## SUMMARY OF INQUIRY:

M. Fordham, Correctional Counselor II, (CCII) Appeals Coordinator was assigned to review this appeal at the Second Level of Review. The First Level of Review was by-passed per CCR 3084.7(b). All submitted documentation and supporting arguments have been considered.  Additionally, a thorough examination has been conducted regarding the claim presented by the appellant and evaluated in accordance with California State Prison-Los Angeles County (LAC) Operational Procedures (OP); the California Code of Regulations (CCR); and the Departmental Operations Manual (DOM).

INMATE Baker, CDCR # K62174
LAC-S-15-04254
PAGE 2 OF 4

The assigned Appeals Coordinator reviewed the appeal, the RVR, the Central File, and the issues contained therein. The appellant was interviewed on November 7, 2015, by M. Fordham, Correctional Counselor II, and given the opportunity to present additional information. The appellant provided no new or additional information during the interview.

A review of the RVR indicates that appellant was charged with CCR, Title 15, Section 3005 (d)(1), for the specific act of "Aggravated Battery on a Peace Officer with a Caustic Substance. The charge was classified as a Division "A-1" offense. The discovery date of the RVR was August 11, 2015. Appellant received his copy of the RVR on August 17, 2015, which was within fifteen (15) days of the date the RVR was issued.

The appellant is a participant in the Mental Health Services Delivery System (MHSDS) at the Enhanced Outpatient (EOP) Level of Care. A Mental Health Assessment Request (CDCR 115MH) was submitted to Mental Health Services on August 21, 2015. On August 25, 2015, R. Girod conducted a non-confidential interview with the appellant and formed the opinion the appellant's mental disorder did not appear to be a contributing factor in the actions that led to the RVR. R. Girod noted there are no mental health factors the SHO should consider in assessing a penalty, if the appellant was found guilty of the charge.

When the appellant was served a copy of the RVR, it was determined that additional assistance would be required in order to achieve effective communication throughout the disciplinary process. Effective communication with the appellant was achieved through the SHO using simple English, which was spoken slowly and clearly and repeated several times to ensure full understanding by the appellant. The SHO queried the appellant to determine whether or not effective communication had been achieved with him throughout the disciplinary process. The appellant reiterated in his own words what had been explained to him and provided appropriate, substantive responses to questions asked during the hearing. The SHO was satisfied that effective communication was achieved with the appellant throughout the disciplinary process.

The RVR reflects that he attended the Disciplinary Hearing held on September 18, 2015, at approximately 1545 hours, and pled not guilty to the charge. The hearing was not held within thirty (30) days from the date the appellant received his initial copies.

INMATE Baker, CDCR # K62174
LAC-S-15-04254
PAGE 3 OF 4

A Staff Assistant was assigned by the SHO in accordance with CCR, Title 15, Section 3315 (d) (2) (A). Officer J. Williams was assigned as a Staff Assistant (SA) for the appellant.  The SA was present at the hearing and confirmed that the hearing procedures, disciplinary charges, the evidence supporting these charges, and the right to request confidentiality had been explained to the appellant at least 24 hours prior to the hearing.  The SA remained at the hearing to assist the appellant.  The appellant acknowledged to the SHO he understood all evidence to be used and understood these proceedings.  After the hearing concluded, the SA reviewed the disciplinary process and the action taken with the appellant to ensure he understood these proceedings and the outcome.

The appellant waived the assignment of an Investigative Employee as evidenced by his signature on the CDC 115A. The SHO finds that available information is sufficient and no further investigation is necessary.

Appellant did not request any witnesses to be present during the hearing on the CDCR 115-A.  Appellant was given an opportunity to request witnesses when he received a copy of the CDC-115A and at the hearing when the SHO advised appellant of his rights to request witnesses.

This matter was referred to the Los Angeles County District Attorney's Office for possible felony prosecution.  On August 17, 2015, the appellant acknowledged in writing he was not requesting the postponement of his hearing pending the outcome of the DA referral.

The Senior Hearing Officer determined the appellant was guilty of "Battery with a Caustic Substance", Division A-1 offense, and assessed 0 days loss of credit forfeiture due to the time constraint violation. This finding was based upon a preponderance of the evidence which included the reporting employee's report and Supplemental Reports authored by Sergeant Villalobos and Officer Castro.

Appellant claims there was insufficient evidence to support the Senior Hearing Officers (SHO) guilty finding. The SHO notes that his findings were based on a preponderance of the evidence which included the reporting employee's report and Supplemental Reports authored by Sergeant Villalobos and Officer Castro which were consistent in reflecting the events of the incident.

INMATE Baker, CDCR # K62174
LAC-S-15-04254
PAGE 4 OF 4

Appellant claims the RVR was fabricated to conceal staff's unprovoked beating of him which resulted in excessive force. This is a general allegation for which the appellant provided no evidence to support his claim or refute the legitimacy of the reporting employee's report or the supplemental reports. A videotaped interview was conducted with the appellant based on his allegations of excessive force. The videotape and Report of Findings were reviewed by the Institutional Executive Review Committee (IERC) on September 16, 2015. The IERC committee closed the case and determined that no administrative action would be taken. The appellant's appeal was forwarded to the Hiring Authority (HA) on October 28, 2015 and the HA determined the appeal does not meet the criteria for assignment as a staff complaint.

Appellant requests to dismiss RVR Log # B15-08-0066. The appellant's request to dismiss the RVR is denied. Appellant requests to be monetarily compensated, to be made Non-Disciplinary Status in ADSEG and to be taken to an emergency committee and put up for transfer. These requests are denied due to being beyond the scope of the appeals process. Appellant requests to be allowed to file an ADA abuse complaint and an investigation be initiated by ISU into his allegations of staff misconduct. The IERC committee closed the appellant's case concerning is allegations of staff misconduct and determined that no administrative action would be taken.

**DECISION:**  The appeal is denied.

The assessed penalties and credit forfeiture are consistent with the CCR.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

D. ULSTAD
Chief Deputy Warden (A)
California State Prison-Los Angeles County

# EXHIBIT

1) RVR 115  WRITE UP. Aggravated Battery
2) Crime Incident Report 837 and supplements
3) 4. 7219s MEDICAL REPORTS OF
4) INJURY OR UNUSUAL OCCURRENCE
   SHOWING PLAINTIFF VISIBLE INJURY
1.) Showing C/O A Castros Injuries/spit
    on His Face
2) 7219 showing spit on C/O B. Pabon
3). 7219 showing Sgt. F. Villalobos Injuries
NOTE: C/O Castro, C/O B. Pabon, Sgt. F. villalobos
      NEVER was Decontaminated at any time.

EXHIBIT: A - 48 pages

☐ EOP   ☒ CCCMS   ☐ CLEAR

DEPARTMENT OF CORRECTIONS AND REHABILITATION

STATE OF CALIFORNIA

# RULES VIOLATION REPORT    804 to records on ____    By: ____

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K62174 | BAKER | 02/23/2022 MEPD | CSP-LAC | FBB5-121L | B15-08-0066 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3C05(d)(1) | Aggravated Battery on a Peace Officer (WITH A CAUSTIC SUBSTANCE). | B-NORTH YARD | 08/11/15 | 1746 |

**CIRCUMSTANCES**

On Tuesday August 11, 2015 at approximately 1746 hours. I heard via the institutional radio requesting a code 1 response on the roadway on the north yard and the yard alarm was sounded. Upon arrival to the front of Facility B (FB) Gym Inmate Baker K62174 stood yelling and pointing towards B Yard Gunner "Fuck you, you racist ass mother fucker" I ordered Baker to turn around and summit to handcuff, which he failed to comply. To effect custody I immediately took hold of Bakers right wrist placing my handcuff on it and pulling it towards his back, Baker yelled "You dumb bitch, I'm mobility impaired I need waist chains" I immediately stopped pulling his arm towards his back. At this time Sergeant F. Villalobos arrived to the incident area, instructed responding staff and me to escort Baker to FB Program Office to be placed in a holding cell. I maintained control of Bakers right wrist which had my handcuff and right bicep and Officer R. Pabon maintained control of his left bicep, Baker willingly walked under his own will, stopping multiple times to incite to other inmates "Everybody look at these mother fuckers, take notes and names, I'm taking it to court and you all are my witnesses". Baker then turned to me and yelled "Fuck you bitch let go of my wrist or I got something for you when we go inside program you cunt". Prior to entering the Program Office, R. Pabon released Bakers left bicep, so Baker and I could entered the program door Officer A. Castro still had control of Baker right arm along with the handcuffs still on baker right wrist. Upon entering the doorway I ordered Baker to face to the right while R. Pabon opened the holding cell room. Baker continued yelling "You fucking racist C.O's, due to Bakers violent demeanor, took hold of his left shoulder, ordering Baker to calm down, at this time Baker, turned to his left side saying "shut up (bitch) spitting saliva at me, striking me in my open mouth, I yelled "He spit on me". Holding my composure I ordered Baker to "stop spitting" and "calm down". Sgt Villalobos then

**(CONTINUED ON PART C)**

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| B. Pabon, Correctional Officer (4) | 8/16/15 | B-Sec-Pat #3 | |

| REVIEWING EMPLOYEE (Typed Name and Signature) | DATE | ☐ INMATE SEGREGATED PENDING HEARING | LOC. |
|---|---|---|---|
| F. Villalobos, Correctional Sergeant | 8-16-15 | DATE | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE  ☒ SERIOUS | "A-1" | | (4) M. Nunez, Facility Captain capt (A) | ☐ HO  ☒ SHO  ☐ SC  ☐ FC |

**COPIES GIVEN INMATE BEFORE HEARING**

| ☒ CDC 115 | BY (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | | 8/17/15 | 1800 | ☒ SUMMARY OF DISCIPLINARY PROCEDURES (115 Back Page) |
| ☐ INCIDENT REPORT | BY (STAFF'S SIGNATURE) | DATE | TIME | ☒ SUMMARY OF DISCIPLINARY PROCEDURES AND INMATE RIGHTS (115A Back Page) |
| LOG NUMBER: LAC-BPG-15-08-0473 | | 8/17/15 | 1800 | BY (STAFF'S SIGNATURE) DATE 8/17/15 TIME 1800 |

**HEARING**

8/17/15 ALLOWED FIM TO VIEW PHOTO EVED. (36)
COPY OF M.A.A. GIVEN TO FIM 8/6/15 INMATE ZOO

**THE STAFF MEMBER ISSUING THE INITIAL COPY SHALL COMPLETE THIS SECTION**

Assistance Provided To Ensure Effective Communication:

| ☐ Use of Text Magnifier | ☐ Read Documents to "S" | ☐ Lip Reading |
|---|---|---|
| ☐ Foreign Language Interpreter | ☐ Sign Language Interpreter | ☐ Written Notes (see attached noted) |
| ☐ Simple English | ☐ S" was wearing his hearing aid(s) | ☐ S.A. Assigned |
| ☒ "S" stated he did not need any assistance for effective communication | | |

Method Used To Determine Communication Was Effective:

| ☒ "S" reiterated in his own words what was explained | ☒ "S" asked appropriate questions regarding the information provided |
|---|---|
| ☒ "S" provided appropriate substantive responses to questions asked | ☐ "S" did not appear to understand the communication, even though the primary method of |
| ☐ Other | communication was used. |

| SIGNATURE OF EMPLOYEE WHO COMPLETED THIS SECTION | PRINTED NAME OF EMPLOYEE | DATE SIGNED |
|---|---|---|
| X | M. ROSALES | 8/17/15 |

**(REFER TO RULES VIOLATION REPORT – PART C FOR HEARING PORTION)**

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| B. Marshall (SHO) | | 10/7/15 | 1425 |
| REVIEWED BY (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
| M. Nunez Facility Captain Cap. | 10-8-15 | R. Fritz, Associate Warden (AW) | 10/9/15 |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY (STAFF'S SIGNATURE) | DATE 10/12/15 | TIME 1800 |

CDC 115 (7/88)

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE _2_ OF _2_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K62174 | BAKER | B15-08-0066 | CSP-LAC | 08/11/15 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF: ☒ CDC 115 CIRCUMSTANCES   ☐ HEARING   ☐ I.E. REPORT   ☐ OTHER: _____

pushed Bakers head towards the glass ordering him to "quit spitting" Baker then began kicking his right foot back while twisting his body from left to right. I immediately pushed my body weight against him in attempt to overcome resistance, effect custody and gain compliance. Due to Bakers continued violence against staff, Sgt Villalobos instructed responding staff and me to take Baker down the floor to keep him from harming himself and others. I took hold of Bakers left side state issued blue shirt pulling him toward the left causing him and me to fall to the floor. Once on the floor Baker swung his left elbow back hitting me underneath my right eyebrow. I then utilized my institutional radio calling for leg irons and waist chains. Sgt Villalobos instructed me to go to the Triage and Treatment Area (TTA) for a medical evaluation. On completion of my medical evaluation Security Squad Officer C. Smith took photos of my injuries. I was transported to Proactive Medical Center for further evaluation. Upon returning to the institution Sgt Villalobos instructed me to submit my Green Jumpsuit to evidence, which was submitted to A and B Sub-Evidence locker number 25 at 2105 hours.


Inmate **BAKER** is aware of this report.
Inmate **BAKER** is a participant in the Mental Health Services Delivery System at CCCMS Level of Care.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| F. VILLALOBOS, Correctional sergeant | | 08/17/15 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 8/11/15 | 1800 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**RULES VIOLATION REPORT - PART C**

PAGE 1 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K62174 | BAKER | B15-08-0066 | CSP-LAC | 08/11/13 |

☒ SUPPLEMENTAL   ☐ CONTINUATION OF:  ☐ CDC 115 CIRCUMSTANCES  ☐ HEARING   ☐ I.E. REPORT   ☐ OTHER: _____

On Tuesday, August 11, 2015 at approximately 1746 hours while assigned to Facility "B" as the Program Sergeant, I was completing paperwork inside the Sergeant's office. I heard over the Institutional radio a request for a "Code 1" response by the medical clinic from the Yard Observation Officer J. Archambo. I exited the program office area and observed all the inmates on the North yard as well as the South yard, down on sitting positions. I turned my attention towards the roadway by the "B" medical clinic and observed inmate Baker K-61724, FBB1-129L standing in front of the canteen roadway screaming "Fuck you all bitches, no one is taking me nowhere". I began walking towards inmate Baker and Officers B. Pabon, R. Pabon, A. Castro and J. Ramsey approached Baker as well. Officer R. Pabon and B. Pabon attempted to place inmate Baker in handcuffs and he began resisting by pulling his arms away from the Officer's grasp to avoid being placed in handcuffs. Baker then stated "You can't place me in handcuffs; I have a waist chain Chrono!" I approached Officers R. Pabon and B. Pabon and gave them instructions to escort inmate Baker to one of the program holding cells without restraints. I asked inmate Baker what was the problem and he stated "You all bitches are only trying to fuck with me, that bitch ass white boy in observation is trying to fuck with me". I advised Baker that we were going to escort him to one of the holding cells so that we could continue with the evening meal. Baker began walking as Officer B. Pabon held Baker's right bicep area as R. Pabon held Baker by his left bicep area. As we came by the intake medical clinic, inmate Baker stopped walking and stated "Fuck you all idiots I will do whatever I want". Officer R. Pabon told Baker to calm down and that we were just going to escort him to the holding cell area. Baker started to walk again and upon arrival to the program door, Officer R. Pabon relinquished custody of Baker to Officer Castro as he was opening the holding cell room door. We walked inside the Office hallway and I instructed Baker to face the Counselors door as R. Pabon opened the door. Inmate Baker then attempted to break the Officers grasp by turning his body to the left in a sudden move and pulling his arms away from the Officers. I immediately gave orders to Baker to stop resisting and Baker did not comply as he continued to turn his body from side to side as well as is arms. To gain compliance of a lawful order and to overcome Baker's resistance, I stepped forward and began pushing Baker against the wall by placing both of my hands on Baker upper back. Officer B. Pabon held on to Baker's left arm as Officer Castro held the right arm. Officer J. Ramsey stepped to my right and using his hand he pushed on Bakers upper body in an attempt to immobilize him. Inmate Baker suddenly turned his face to the left and spat right on Officer B. Pabon's face. To gain compliance of a lawful order and to overcome Baker's resistance I ordered Baker to stop spiting with negative results. Baker began coughing up saliva and I placed my right hand on Baker's head. My hand was placed around Baker's left ear/jaw area to force him to face away from all the Officers. I kept giving Baker orders to stop spiting and to stop resisting with negative results. Baker continued thrashing his body and was spitting at the glass where his face was held by me. Inmate Baker then began swinging his right leg back attempting to kick me or Officer Ramsey. To overcome resistance and to be able to effect custody of inmate Baker, I instructed Officers Ramsey, B. Pabon and A. Castro to "Take the inmate down". I grabbed Bakers shirt around his left shoulder with my left hand. With my right hand I grabbed Baker's shirt around his right shoulder and using my strength and body weight, I turned Baker to the right as I pushed him on a downward-forward motion forcing him to the floor. Inmate Baker landed on his stomach, Officer Castro landed on Baker's right side as he was holding on to Baker's right arm. Officer B. Pabon was on Baker's right side as she was holding Baker's right arm. I landed on Baker's right side next to Officer B. Pabon. I took control of Baker's left arm holding it with both of my hands and instructed Officer B. Pabon to step away from the incident. Officer J. Ramsey sat on Baker's legs to stop him from kicking. I requested for a set of waist chains and some leg restraints to be able to secure Baker. I ordered Baker to place his hands behind his back to which he refused. To be able to effect custody I pushed on Baker's left arm to place it on the middle of his back as Officer Castro moved Baker's right arm to the center of his back. I grabbed the handcuffs which were already placed on Baker's right hand and secured the left hand as well. Once in handcuffs I grabbed Baker's left arm by the bicep area as Officer Castro held Baker's left arm and we both assisted him to his feet as he stood under his own power. We placed Baker facing the window of the counselor's office and I instructed Officer Ramsey to open one of the holding cells to place Baker inside. Ramsey opened the holding cell and Officer Castro relinquished custody of Baker to C. Smith who had arrived to the scene of the incident. I relinquished custody of Baker to Ramsey. I then instructed Officers B. Pabon and A. Castro to report to the triage treatment area to be medically evaluated and /or treated for their injuries. Officer Smith and Ramsey escorted Baker inside the holding cell followed by me. As soon as Baker was placed in the holding cell, he began to

**(CONTINUED ON SUPPLEMENTAL PART C)**

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| F. VILLALOBOS, Correctional Sergeant | | 68 / 7 / 15 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | 8/17/15 | 1200 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

**RULES VIOLATION REPORT - PART C**                                                        PAGE _2_ OF _2_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| K62174 | BAKER | B15-08-0066 | CSP-LAC | 08/11/15 |

☒ SUPPLEMENTAL   ☒ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES   ☐ HEARING   ☐ I.E. REPORT   ☐ OTHER: _____

resist again by thrashing his body from side to side in an attempt to break from our grasp. Officer Smith and Ramsey pushed Baker against the back of the holding cell to be able to immobilize him. Inmate Baker began coughing up saliva as if he was getting ready to spit again. I grabbed a spit mask out of my pocket and placed it over Baker's face. As soon as the mask was placed inmate Baker began screaming stating "I can't breathe, I can't breathe". I requested for an Officer to bring a wheel chair via institutional radio. A few seconds later, Officer Tillman arrived with a wheel chair. Officer Tillman and Smith assisted inmate Baker onto the wheel chair and escorted him to the "B" Facility medical clinic for a medical evaluation. Once in the medical clinic, inmate Baker was medically evaluated by Licensed Vocational Nurse C. Adeduro who cleared him for Administrative Segregation placement. During the medical evaluation, Baker was placed in waist chains and he was subsequently placed in the intake clinic holding cell pending Administrative Segregation placement. While in the holding tank in the intake clinic, inmate Baker began kicking the holding cell door as he yelled profanities and racial slurs to any person around him. At approximately 1815 hours I received a call from Officer Godina via institutional radio requesting for me to come to the intake clinic. Upon arrival to the intake clinic I observed inmate Baker hitting his head against the protection grill which is located on the intake holding cell windows. As soon as baker saw me he stopped hitting his head and began yelling at me stating "Hey you bean burrito eating mother fucker you are going to lose your job for this". "You fucking dirty pig you are in your way out and you don't even know it". "Fuck you fucking wet back, dirty cop mother fucker". Inmate Baker then stated "You know I have the right to kill you right?" "It is my Islamic right to kill you". Baker then gesture with his right hand as if he was slicing the throat as he stated "You are done". Inmate Baker again started to hit his head against the window cover. I ordered to stop and he complied. I walked out of the intake clinic and returned to the Sergeant's office. At approximately 1830 hours, I received a call from Officer H. Tillman via Institutional Radio requesting for me to go to the intake clinic. Upon arrival, Officer Tillman informed me that inmate Baker had removed the waist chains from his waist leaving them in front. Baker then began striking the protection grill in an attempt to break the windows in the holding cell with the chain and lock. I walked to the door and ordered Baker to go to one the bench and to sit down to which he complied. I opened the holding cell door and ordered Baker to walk backwards toward me to which he complied. Officer Tillman and I removed the waist chains and put them back around the waist of inmate Baker. I then advised inmate Baker that if he was to remove the waist chains again, I would place him in hand cuffs. Inmate Baker sat down and did not respond. Inmate Baker made allegations of misconduct by staff and was interviewed by Lieutenant B. Legier and Sergeant K. Marshall. During the interview, inmate Baker expressed suicidal ideations to Lieutenant B. Legier and he contacted me to inform me of the situation. After medical staff was informed, they requested that inmate Baker be escorted to the TTA for a mental health evaluation. Inmate Baker was escorted to the TTA for a mental health evaluation and he was placed in "Suicide Watch" in Ad-Seg FAB4-123. At approximately 2045 hours Officers B. Pabon, R. Pabon and A. Castro returned from an outside hospital. Both Officers were instructed to be off work for approximately 7 days as a result of the injuries sustained during the incident. This concludes my involvement in this incident.

Inmate **BAKER** is aware of this report.

Inmate **BAKER** is a participant in the Mental Health Services Delivery System.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | F. VILLALOBOS, Correctional Sergeant | 08/17/15 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED: 8/17/15   TIME SIGNED: 1000 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K62174 | BAKER | 3005(d)(1) | 08/11/15 | CSP-LAC | B15-08-0066 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT   ☒ YES   ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

☒ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution.

INMATE'S SIGNATURE ► *Timothy R. Baker*   DATE ► Aug 17, 2015

☒ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution.

INMATE'S SIGNATURE ►   DATE ►

DATE NOTICE OF OUTCOME RECEIVED   DISPOSITION

☐ **I REVOKE** my request for postponement

INMATE'S SIGNATURE ►   DATE

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE ► *Timothy R. Baker* | DATE 8/21/2015 |
|---|---|---|---|
| ☐ REQUESTED | ☒ WAIVED BY INMATE | | |
| ☒ ASSIGNED | DATE 8/17/15 | NAME OF STAFF C. LORENZO | |
| ☐ NOT ASSIGNED | REASON | Not Assigned Per CCR 3315(d)(2) — A.L   TABE BELOW 4.0 | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE ► *Timothy R. Baker* | DATE 8/21/2015 |
|---|---|---|---|
| ☐ REQUESTED | ☒ WAIVED BY INMATE | | |
| ☒ ASSIGNED | DATE 8/17/15 | NAME OF STAFF M. ROSALES | |
| ☐ NOT ASSIGNED | REASON ASU | Not Assigned Per CCR 3315(d)(1) — A.L | |

EVIDENCE/INFORMATION REQUESTED BY INMATE

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER_____   ☒ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

## THE OFFICER ISSUING THE FINAL COPY TO THE INMATE SHALL COMPLETE THIS SECTION.

**Assistance Provided To Ensure Effective Communication:**

☐ Use of Text Magnifier
☐ Foreign Language Interpreter
☒ Simple English
☐ "S" stated he did not need any assistance for effective communication

☐ Read Documents to "S"
☐ Sign Language Interpreter
☐ "S" was wearing his hearing aid(s)

☐ Lip Reading
☐ Written Notes (see attached noted)
☐ S.A. Assigned

**Method Used To Determine Communication Was Effective:**

☒ "S" reiterated in his own words what was explained
☐ "S" provided appropriate substantive responses to questions asked
☐ Other _____

☒ "S" asked appropriate questions regarding the information provided
☐ "S" did not appear to understand the communication, even though the primary method of communication was used.

| SIGNATURE OF EMPLOYEE WHO COMPLETED THIS SECTION X | PRINTED NAME OF EMPLOYEE T. Manzo | DATE SIGNED 10/17/15 |
|---|---|---|

INVESTIGATOR'S SIGNATURE ►   DATE

| ☒ COPY OF CDC 115-A GIVEN INMATE | BY (STAFF SIGNATURE) ► | TIME 1800 | DATE 8/17/15 |
|---|---|---|---|

CDC 115-A (7/88)   – If additional space is required use supplemental

STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE <u>1</u> OF <u>3</u>

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-62174 | BAKER | B15-08-0066 | CSP-LAC | 09-18-15 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☒ HEARING | ☐ I.E. REPORT | ☐ OTHER: _____ |

**PLEA:** Not Guilty                              **FINDING:** Guilty

**HEARING CONVENED:** On 09-18-15 at approximately 1545 hours, Inmate **BAKER** made a personal appearance before **Correctional Lieutenant G. Marshall**, Senior Hearing Officer (SHO), for the purpose of adjudicating this Rules Violation Report. BAKER stated he was in good health and ready to proceed with this hearing.

**DOCUMENT ISSUANCE:** BAKER acknowledged that he had received copies of the following documents at least twenty-four (24) hours prior to this hearing:

| FORM NO. | DESCRIPTION | DATE ISSUED |
|---|---|---|
| CDC-115 | Rules Violation Report | 08-17-15 |
| CDC-115A | Serious Rules Violation Report | 08-17-15 |
| CDC-115 | Summary of Disciplinary Procedures (Back Page) | 08-17-15 |
| CDC-115A | Summary of Disciplinary Procedures and Inmate Rights (Back Page) | 08-17-15 |
| CDC-837 | Crime/Incident Report W/Supps & 7219's (Log #LAC-BPG-15-08-0473) | 08-17-15 |
| CDC-115MH | Rules Violation Report: Mental Health Assessment | 09-01-15 |

These reports were reviewed with BAKER in the hearing. BAKER is charged with Aggravated Battery on a Peace Officer (with Caustic Substance), a Division 'A-1' Offense. BAKER was advised that the charged offense is a violation of CCR §3005 Conduct, subparagraph (d)(1) Force or Violence. CCR §3005(d)(1) states, "Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force of violence upon another person." BAKER acknowledged understanding the charge and the evidence being presented.

**DISTRICT ATTORNEY:** On 08-17-15, BAKER acknowledged in writing that he was not requesting the postponement of this hearing pending the outcome of referral for prosecution (CDC-115A). BAKER acknowledged that any statements or other evidence presented at this hearing could be used against him in future court proceedings.

**TIME CONSTRAINTS:** Time constraints have not been met which shall preclude denial or forfeiture of credits in the event of a guilty finding. Specifically, this disciplinary hearing is not being held within 30 days from the date a copy of the CDC-115 was issued to BAKER (CCR 3320(b)).

**CONFIDENTIAL INFORMATION:** There was no confidential information to be considered.

**PHOTOGRAPH/VIDEOTAPE EVIDENCE:** On 08-17-15, BAKER was given an opportunity to view the photographs entered into evidence (see CDC-128B). There was no videotape evidence to be considered.

**MENTAL HEALTH INFORMATION:** On 08-21-15, a Mental Health Assessment Request (CDC-115MH) was submitted to Mental Health Services because BAKER is a participant in the Mental Health Services Delivery System (MHSDS) at the Enhanced-Out-Patient (EOP) level of care. On 08-25-15, R. Girod, PsyD conducted a non-confidential interview with BAKER and formed the opinion that BAKER'S mental disorder did not appear to be a contributing factor in the actions that led to the RVR. R. Girod, PsyD noted that there are no mental health factors the SHO should consider in assessing a penalty if the inmate is found guilty of the charge.

**EFFECTIVE COMMUNICATION:** Effective communication means providing the inmate, to the extent possible, the means to understand and participate in the disciplinary process to the best of their ability (CCR 3000). When BAKER was served a copy of this RVR, it was determined that additional assistance would be required in order to achieve effective communication with BAKER throughout the disciplinary process. Effective Communication with BAKER was achieved through the SHO using simple English, which was spoken slowly and clearly and repeated several times to ensure full understanding by the inmate.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| G. Marshall, (Correctional Lieutenant) | | 10/7/15 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | | 10/17/15 | 1800 |

CDC 115-C (4/09) (AK-JG/Rev 9-01-2011)

J.P. OSP 99 ELE25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE _2_ OF _3_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-62174 | BAKER | B15-08-0066 | CSP-LAC | 09-18-15 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES  ☒ HEARING  ☐ I.E. REPORT  ☐ OTHER: _____

The SHO queried **BAKER** to determine whether or not effective communication had been achieved with him throughout the disciplinary process. **BAKER** reiterated in his own words what had been explained to him and provided appropriate, substantive responses to questions asked during the hearing. The SHO is satisfied that effective communication was achieved with **BAKER** throughout the disciplinary process.

**STAFF ASSISTANT:** On 09-18-15, **Correctional Officer J. Williams** was assigned as a Staff Assistant (SA) for BAKER because BAKER is a participant in the Mental Health Services Delivery System (MHSDS) at the Enhanced-Out-Patient (EOP) level of care. Correctional Officer J. Williams was present at the hearing and confirmed that the hearing procedures, disciplinary charges, the evidence supporting these charges, and the right to request confidentiality had been explained to BAKER at least 24 hours prior to the hearing. Correctional Officer J. Williams remained at the hearing to assist BAKER. Speaking slowly and using simple English, Correctional Officer J. Williams reviewed the disciplinary process with BAKER in the presence of the SHO. The SHO then read each report to BAKER and explained his appeal rights. BAKER acknowledged to the SHO that he understood all evidence to be used and understood these proceedings. After the hearing concluded, Correctional Officer J. Williams reviewed the disciplinary process and the action taken with BAKER to ensure he understood these proceedings and the outcome.

**INVESTIGATIVE EMPLOYEE:** On 08-21-15, BAKER waived the assignment of an Investigative Employee as evidenced by his signature on the CDC-115A. The SHO finds that available information is sufficient and no further investigation is necessary.

**PLEA AND STATEMENT:** BAKER entered a plea of Not Guilty and declined to make a statement.

**WITNESSES:** Neither BAKER nor the SHO called witnesses at the hearing. BAKER was given an opportunity to request witnesses when he received a copy of the CDC-115A and at the hearing when the SHO advised BAKER of his right to request witnesses.

**FINDING: Guilty** of the **Division 'A-1' Offense BATTERY WITH A CAUSTIC SUBSTANCE** (CCR §3323(b)(4)). BATTERY is the deliberate use of force or violence on the person of another. Deliberate means it is not accidental. Force is power, violence, compulsion, or constraint, exerted upon or against a person. Violence is unjust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage or fury; the exertion of any physical force so as to injure, damage, or abuse. This includes every type of physical contact from unlawful touching or simple battery, through battery with enough force to result in serious injury or death. CAUSTIC SUBSTANCE is any substance that is capable of burning or destroying organic tissue by chemical action. This finding is based upon a preponderance of the following evidence:

1) **The Supplemental Report (CDC 115-C) authored by Correctional Sergeant F. Villalobos.**

2) **The Supplemental Report (CDC 837-C) authored by Correctional Officer A. Castro,** indicating that Inmate BAKER spat in his face.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| G. Marshall, (Correctional Lieutenant) | 10/7/15 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | | 10/17/15 | 1800 |

CDC 115-C (4/09) (AK-JG/Rev 9-01-2011)

J.P. OSP 99 ELE25082

STATE OF CALIFORNIA

RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __3__ OF __3__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-62174 | BAKER | B15-08-0066 | CSP-LAC | 09-18-15 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES ☒ HEARING ☐ I.E. REPORT ☐ OTHER: _____

**DISPOSITION:** In accordance with CCR 3315(f), **the following penalties have been assessed:**

* **No Forfeiture of Credit was assessed** due to the time constraint violation noted at the commencement of this hearing.

* **Assessed 10 consecutive days loss of yard privileges** to be imposed within 90 days & completed no later than 12-17-15.

* **Assessed 90 days loss of dayroom privileges** commencing the date of this hearing through 12-17-15.

* **Assessed 90 days loss of telephone privileges** commencing the date of this hearing through 12-17-15.

* **Assessed 90 days loss of all vendor package privileges** commencing the date of this hearing through 12-17-15.

**ENEMY CONCERN: No enemy concern** has resulted from this incident.

**APPEAL RIGHTS:** BAKER was advised of the finding in this matter.  BAKER was also advised that he would receive a copy of this completed report upon final review by the CDO.  BAKER was advised that he may appeal any portion of the hearing, finding, or disposition and that to do so, he must attach the final copy of the CDC-115 to his inmate appeal form.  BAKER is referred to CCR 3084.1 for further information.

**CREDIT RESTORATION:** BAKER was advised that per CCR 3327(a)(1) No credit shall be restored for any serious disciplinary offense punishable by a credit loss of more than 90 days. These offenses include Divisions A-1, A-2, B and C.  BAKER is referred to CCR Sections 3327 & 3328 for further information.

BAKER was advised that the results of this hearing would not become final until reviewed and approved by the chief disciplinary officer (CDO) and that after review he would receive the final copy of the completed CDC-115.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| G. Marshall. (Correctional Lieutenant) | | 10/7/15 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | | 10/17/15 | 1830 |

CDC 115-C (4/09) (AK-JG/Rev 9-01-2011)

J.P. OSP 99 ELE25082

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART A - COVER SHEET**
CDCR 837-A (REV. 10/06)

DV-1.5.4

| | Page 1 of 11 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 | INCIDENT DATE 08/11/2015 | INCIDENT TIME 17:46 |
|---|---|---|---|---|

| INSTITUTION LAC | FACILITY BPG - General Population | FACILITY LEVEL ☐ I ☐ II ☐ RC ☐ III ☑ IV | INCIDENT SITE FACILITY B PROGRAM OFFICE | LOCATION FACILITY B PROGRAM OFFICE | PROGRAM GP | ADSEG YARD N/A | USE OF FORCE Yes |
|---|---|---|---|---|---|---|---|

| SPECIFIC CRIME / INCIDENT Force or Violence - Aggravated Battery on a Peace Officer | ☑ CCR ☐ PC ☐ N/A   NUMBER / SUBSECTION 3005-d1 Force or Violence |
|---|---|

| D.A. REFERRAL ELIGIBLE ☑ Yes ☐ No | CRISIS RESPONSE TEAM ACTIVATED ☐ Yes ☑ No | MUTUAL AID ☐ Yes ☑ No | PIO/AA NOTIFIED ☐ Yes ☑ No |
|---|---|---|---|

## RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☐ N/A 1. STAFF | ☐ N/A 1. SPITTING/SPITTLE ON STAFF<br><br>Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☑ N/A | ☐ N/A 1. Bodily Fluid Saliva - | ☐ N/A 1. PHYSICAL FORCE - #Warning: 0 #Effect: 0 #Chemical: 0 |
| **ESCAPES** ☑ N/A | | |

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☑ N/A | ☑ N/A |
| | | | **EXTRACTION:** ☑ N/A |

**BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)**

On Tuesday August 11, 2015 at approximately 1746 hours, Inmate BAKER, K-62174, FBB2-129L was being escorted to the Facility B Program Office when he committed the act of "Aggravated Battery on a Peace Officer" by resisting and spitting on the facial areas of two officers.

Inmate BAKER is a participant in the MHDS at the CCCMS level of care.

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) A██████ LUGO | TITLE CORRECTIONAL LIEUTENANT | ID# ████ | BADGE # ████ |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE ████ | DATE 8/11/2015 |
| NAME OF WARDEN / AOD (PRINT/SIGN) J. SOTO | | TITLE WARDEN | DATE 8/25/15 |

AGO  015

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1 5.4

| | | | |
|---|---|---|---|
| | | Page 2 of 11 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| LAC | BPG - GENERAL POPULATION | 08/11/2015 | 17:46 |

TYPE OF INFORMATION:

[✓] SYNOPSIS/SUMMARY OF INCIDENT  [ ] SUPPLEMENTAL INFORMATION  [ ] AMENDED INFORMATION  [ ] CLOSURE REPORT

SYNOPSIS:

On Tuesday August 11, 2015 at approximately 1746 hours Correctional Officer J. R. Archambo was conducting his duties as the Facility B Yard Observation Officer and was monitoring the inmates coming and going from the dining hall when he observed Inmate T. R. Baker, K62174, FBB2-129L standing in front of the Facility B Medical Intake Clinic talking to other inmates.

Officer Archambo ordered Inmate Baker to keep moving and to go back to his assigned housing unit. Inmate Baker then approached the base of the Observation Tower and began to yell profanities at Officer Archambo. Officer Archambo continued to order Inmate Baker to go back to his assigned cell with negative results as Inmate Baker refused to obey Officer Archambo's lawful orders by continuing to yell profanities at Officer Archambo.

Officer Archambo then activated the Yard Alarm and requested a Code-1 Response to the area. Responding officers arrived and attempted to place Inmate Baker in handcuffs, but Inmate Baker refused by yelling "You can't handcuff me, get waist restraints" over and over again.

The Facility B Program Sergeant, Correctional Sergeant F. Villalobos responded to the area and instructed the escorting officers to escort Inmate Baker to the Facility B Program Office without handcuffs due to Sgt. Villalobos being aware that Inmate Baker has a "Waist Restraint" Chrono. As officers were escorting Inmate Baker he began to resist the escorting officers by attempting to break free from their hold by twisting and jerking his body around after entering the Facility B Program Office. Officers then had to utilize Physical Force to safely gain compliance with the officers lawful orders, overcome resistance, and affect custody of Inmate Baker at which time Inmate Baker began to purposely spit toward the officers, striking Correctional Officers B. Pabon and A. Castro on their facial areas with his saliva as he continued to attempt to break free from the officers hold at which time the officers forced Inmate Baker to the floor.

Inmate Baker was subsequently placed in handcuffs and a Spit Mask was placed on him to prevent him from spitting on any other staff member. Officers then escorted Inmate Baker in a wheelchair to the Facility B Medical Clinic where medical staff medically evaluated Inmate Baker. After medical staff cleared Inmate Baker, he was escorted to the Facility B Medical Intake Holding Cell.

Officers Pabon and Castro were instructed to go to the Triage Treatment Area (TTA) for medical treatment and evaluation. Both officers were later transported to Proactive Medical Clinic for further medical treatment and evaluation. Sgt. Villalobos was medically evaluated at the TTA and was cleared to return to duty.

Since Inmate Baker was making allegations of unnessasary and excessive force Lt. Lugo requested the assistance of the Third Watch, Watch Commander Correctional Lieutenant B. Legier in conducting a video recorded interview of Inmate Baker before he was re-housed in Administrative Segregation to properly document his statements and injuries.

It should also be noted on this report that Investigative Services Officer, Correctional Officer C. Smith responded to the scene and began to assist Facility B officers in restraining and escorting Inmate Baker. Officer Smith also recorded some of Inmate Baker's verbal attack on staff with his state issued audio recording devise.

After Sgt. Marshall and Lt. Legier completed the video recorded interview of Inmate Baker, Inmate Baker was rehoused in Ad-Seg where he was placed on Suicide Watch without further incident due to Inmate Baker stating that he was feeling suicidal during the video recorded interview.

ALARMS
Correctional Officer J. R. Archambo announced the incident over the institutional radio and activated the Facility B Yard Alarm.

[✓] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) A███████ LUGO | TITLE: CORRECTIONAL LIEUTENANT | ID# ███████ | BADGE # ███████ |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT INCIDENT SITE ███████ | DATE 8/11/2015 |
| NAME OF WARDEN / AOD (PRINT/SIGN) L. SOTO | | TITLE WARDEN | DATE |

AO057016

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

| | Page 3 of 11 | INCIDENT LOG NUMBER<br>LAC-BPG-15-08-0473 |
|---|---|---|

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| LAC | BPG - GENERAL POPULATION | 08/11/2015 | 17:46 |

TYPE OF INFORMATION:
[✓] SYNOPSIS/SUMMARY OF INCIDENT    [ ] SUPPLEMENTAL INFORMATION    [ ] AMENDED INFORMATION    [ ] CLOSURE REPORT

SUSPECT(S):
•Inmate T. R. Baker, K62174, FBB2-129L, Black, CCCMS.

USE OF FORCE:
•Correctional Officer B. Pabon utilized Physical Force during this incident.
•Correctional Officer R. Pabon utilized Physical Force during this incident.
•Correctional Officer C. Smith utilized Physical Force during this incident.
•Correctional Officer A. Castro utilized Physical Force during this incident.
•Correctional Officer J. Ramsey utilized Physical Force during this incident.
•Correctional Sergeant F. Villalobos utilized Physical Force during this incident.

EVIDENCE:
•Correctional Sergeant K. Marshall placed the camera used to conduct the video recorded interview in A/B Evidence Locker #23.
•Correctional Officer C. Smith logged and secured the camera used to document the officers and Inmate Baker's injuries into the Main Evidence Locker #1.
•Correctional Officer A. Castro logged and secured his uniform shirt contaminated with Inmate Bakers saliva in A/B Evidence Locker # 24.
•Correctional Officer B. Pabon logged and secured her uniform jumpsuit contaminated with Inmate Baker's saliva in A/B Evidence Locker #25.

ESCORTS:
•Correctional Officers B. Pabon, R. Pabon, J. Ramsey and Correctional Sergeant F. Villalobos escorted Inmate Baker from the roadway in front of the Facility B Gym to the Facility B Program Office.
•Correctional Officer C. Smith and H. Tillman escorted Inmate Baker from the Facility B Program Office to the Facility B Medical Clinic and then to the Facility B Medical Intake.

HOLDING CELL:
•Correctional Officer H. Tillman placed Inmate Baker in the Facility B Medical Intake Holding Cell and initiated a Holding Cell Log.

DECONTAMINATION:
N/A

MEDICAL:
Registered Nurse J. Sisson conducted a medical evaluation on Officer Pabon, and completed a CDC-7219 Unusual Occurrence Medical Evaluation form which noted the following;
•Swollen and Reddened area on right eye.
•Spit in mouth.
•Pain on left elbow area.

Registered Nurse J. Sisson conducted a medical evaluation on Officer Castro, and completed a CDC-7219 Unusual Occurrence Medical Evaluation form which noted the following;
•Pain on right shoulder.
•Spit on his left cheek area.

Registered Nurse I. Ibarra conducted a medical evaluation on Sergeant Villalobos, and completed a CDC-7219 Unusual Occurrence Medical Evaluation form which noted the following;
•Pain on left wrist.

[✓] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE)<br>A███ LUGO | TITLE:<br>CORRECTIONAL LIEUTENANT | ID#<br>████ | BADGE #<br>████ |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE<br>8/11/2015 |
| NAME OF WARDEN / AOD (PRINT/SIGN)<br>J. SOTO | | TITLE<br>WARDEN | DATE<br>8/25/15 |

AGO 017

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**

DV-1.5.4

**PART A1 - SUPPLEMENT**

CDCR 837-A1 (REV. 10/06)

| Page 4 of 11 | INCIDENT LOG NUMBER<br>LAC-BPG-15-08-0473 |
|---|---|

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| LAC | BPG - GENERAL POPULATION | 08/11/2015 | 17:46 |

| TYPE OF INFORMATION |
|---|
| ☑ SYNOPSIS/SUMMARY OF INCIDENT ☐ SUPPLEMENTAL INFORMATION ☐ AMENDED INFORMATION ☐ CLOSURE REPORT |

•Reddened area on left elbow.
•Abrasion/Scratch and Reddened area on right elbow.
•Pain on lower back.

Licensed Vocational Nurse C. Adeduro conducted a medical evaluation on Inmate Baker, and completed a CDC-7219 Unusual Occurrence Medical Evaluation form which noted the following:
•Scratch on stomach area.

VIDEO RECORDED INTERVIEW(S):
Correctional Lieutenant B. Legier conducted a video recorded interview with Inmate Baker.

NOTIFICATION:
AOD, Correctional Business Manager L. Raupe, D. Shapiro with OIG, Headquarters AOD Correctional Captain T. Tyler, and CCPOA Representative, Correctional Officer R. Pabon were all notified of this incident.

CONCLUSION:
Inmate Baker will be issued a CDCR-115 Rules Violation Report Log #B15-08-0066 for Violation of California Code of Regulations (CCR), Title 15, Section 3005 (d)(1), for the specific act of "Aggravated Battery on a Peace Officer".

There were injuries to staff, no serious injuries to Inmate Baker and no destruction to any state property during or after this incident. You will be apprised of any further developments in this matter as they occur, via supplemental reports.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE)<br>A██████ LUGO | TITLE<br>CORRECTIONAL LIEUTENANT | ID#<br>████ | BADGE #<br>████ |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT   INCIDENT SITE<br>████ | DATE<br>8/11/2015 |
| NAME OF WARDEN / AOD (PRINT/SIGN)<br>J. SOTO | | TITLE<br>WARDEN | DATE<br>8/25/15 |

AGO  018

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

**CRIME / INCIDENT REPORT**
**PART B1 - INMATE**
CDCR 837-B1 (REV. 10/06)

Page 5 of 11

| INSTIUTTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

**INMATE (ENTIRE SHEET)**

| NAME:   LAST | | FIRST | | MI | CDC # | SEX | ETHNICITY | FBI #: | CII # |
|---|---|---|---|---|---|---|---|---|---|
| BAKER | | TIMOTHY | | R | K-62174 | M | BLA | 234287MA1 | A11446397 |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | RELEASE Date Type | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| SUSPECT | 65 | NO | 08/27/1997 | 09/18/2014 | 02/23/2082 | MEPD | NO | 12/28/1960 | FBB2-129L |

| CURRENT INMATE LEVEL | ☐ N/A ☑ CCCMS ☐ EOP ☐ DMH | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|---|
| IV | ☐ MHCB ☐ DDP ☐ DPP | SODOMY W/FORCE, ATT MURDER 1ST1 | SACRAMENTO |

☐ N/A   DESCRIPTION OF INJURIES, LOCATIONS AND CAUSE
·SCRATCH ON STOMACH AREA. (INJURY LOCATIONS: 1. STOMACH CAUSE: STAFF - PHYSICAL FORCE)

| ☐ N/A   ☑ TREATED AND RELEASED | ☐ HOSPITALIZED | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|
| ☐ DECEASED DATE | ☐ REFUSED TREATMENT | ☐ N/A   FACILITY B MEDICAL CLINIC |

| Reason For Death: | Is There ASCA Seicus Injury ☑ N/A | PRISON GANG / DISRUPTIVE GROUP | VALIDATED / ASSOCIATED |
|---|---|---|---|
| | ⦿ No  ○ Yes | | |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DV-1.5.4

Page 6 of 11

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

## STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| LEGIER | E | | CORRECTIONAL LIEUTENANT | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| CAMERA | | | | WATCH COMMANDER |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE.

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT   ☐ HOSPITALIZED   ☐ DECEASED DATE | USED FORCE ☐ Yes  ☑ No   TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes  ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury  ◉ No  ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| LUGO | A | | CORRECTIONAL LIEUTENANT | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| INCIDENT COMMANDER | | | | FAC B PROGRAM LIEUTENANT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE.

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT   ☐ HOSPITALIZED   ☐ DECEASED DATE | USED FORCE ☐ Yes  ☑ No   TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes  ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury  ◉ No  ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| MARSHALL | K | | CORRECTIONAL SERGEANT | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| CAMERA | | | | FAC A PROGRAM SERGEANT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE.

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT   ☐ HOSPITALIZED   ☐ DECEASED DATE | USED FORCE ☐ Yes  ☑ No   TYPE OF FORCE: | PROCESSED EVIDENCE ☑ Yes  ☐ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury  ◉ No  ○ Yes | | |

AGO 020

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1 5.4

| Page 7 of 11 |
|---|

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

### STAFF (ENTIRE SHEET)

| NAME   LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| VILLALOBOS | F | | CORRECTIONAL SERGEANT | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | FAC B PROGRAM SERGEANT |

☐ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:
-Pain on left wrist.
-Reddened area on left elbow.
-Abrasion/Scratch and Reddened area on right elbow.
-Pain on lower back  (Injury Location: 1. LEFT WRIST - INMATE - 2. LEFT ELBOW - INMATE - 3. RIGHT ELBOW - INMATE - 4. BACK - INMATE - )

| ☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☐ N/A | ☑ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| TRIAGE TREATMENT AREA (TTA) | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☑ Yes   ☐ No | ☐ Yes   ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury   ◉ No   ○ Yes | | PHYSICAL FORCE | |

| NAME:   LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| ARCHAMBO | J | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| 216 | | | | FAC B OBSERVATION OFFICER |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A | ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☐ Yes   ☑ No | ☐ Yes   ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury   ◉ No   ○ Yes | | | |

| NAME   LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| CASTRO | A | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | B-2 FLOOR OFFICER #2 |

☐ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:
-Pain on right shoulder.
-Spit on his left cheek area  (Injury Location: 1. FACE - INMATE - Bodily Fluid Saliva 2. RIGHT SHOULDER - INMATE - )

| ☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☐ N/A | ☑ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| TTA, PROACTIVE MEDICAL CLINIC | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☑ Yes   ☐ No | ☐ Yes   ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury   ◉ No   ○ Yes | | PHYSICAL FORCE | |

AGO  021

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DV-1 5.4

Page 8 of 11

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

### STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| ▮ | SMITH | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | ISU OFFICER #6 |

☑ N/A    DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A  NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A    ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|
| | ☐ REFUSED TREATMENT  ☐ HOSPITALIZED | ☑ Yes  ☐ No | ☐ Yes  ☑ No |
| Reason For Death | ☐ DECEASED DATE | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury  ☐ No  ☐ Yes | PHYSICAL FORCE | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| CORDERO | S▮ | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | FAC B SEC PAT OFFICER #3 |

☑ N/A    DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A  NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A    ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|
| | ☐ REFUSED TREATMENT  ☐ HOSPITALIZED | ☐ Yes  ☑ No | ☐ Yes  ☑ No |
| Reason For Death | ☐ DECEASED DATE | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury  ☑ No  ☐ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| GODINA | M▮ | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| WITNESS | | | | FAC B SEC PAT OFFICER #1 |

☑ N/A    DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A  NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A    ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|
| | ☐ REFUSED TREATMENT  ☐ HOSPITALIZED | ☐ Yes  ☑ No | ☐ Yes  ☑ No |
| Reason For Death | ☐ DECEASED DATE | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury  ◉ No  ☐ Yes | | |

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1 5.4

| | Page 9 of 11 |
|---|---|

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| PABON | ■ | L | CORRECTIONAL OFFICER | F | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | B-5 FLOOR OFFICER #2 |

☐ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:
-Swollen and Reddened area on right eye.
-Spit in mouth.
-Pain on left elbow area. (Injury Location: 1. FACE - INMATE - Bodily Fluid Saliva 2. LEFT ELBOW - INMATE - )

| ☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☐ N/A | ☑ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| TTA, PROACTIVE MEDICAL CLINIC | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☑ Yes   ☐ No | ☐ Yes   ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: PHYSICAL FORCE | |
| | Is There ASCA Serious Injury   ☑ No   ☐ Yes | | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| PABON | R ■ | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | B-4 FLOOR OFFICER #2 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A | ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☑ Yes   ☐ No | ☐ Yes   ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: PHYSICAL FORCE | |
| | Is There ASCA Serious Injury   ☑ No   ☐ Yes | | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| RAMSEY | J ■ | | CORRECTIONAL OFFICER | M | | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | | FAC B YARD OFFICER #1 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A | ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☑ Yes   ☐ No | ☐ Yes   ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: PHYSICAL FORCE | |
| | Is There ASCA Serious Injury   ☑ No   ☐ Yes | | | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

DV-1.5 4

## CRIME / INCIDENT REPORT
## PART B2 - STAFF
CDCR 837-B2 (REV. 10/06)

Page 10 of 11

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

### STAFF (ENTIRE SHEET)

| NAME: LAST TILLMAN | FIRST H | MI | TITLE CORRECTIONAL OFFICER | SEX M | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| PARTICIPANT RESPONDER | BADGE # | ID # | POST ASSIGN # | POSITION FAC B SEC PAT OFFICER #2 | | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE

☑ N/A   NAME/LOCATION OF HOSP/FACILITY
☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT   ☐ HOSPITALIZED   ☐ DECEASED DATE
Reason For Death
Is There ASCA Serious Injury  ⦿ No  ◯ Yes
USED FORCE  ☐ Yes  ☑ No   TYPE OF FORCE:
PROCESSED EVIDENCE  ☐ Yes  ☑ No

| NAME: LAST IBARRA | FIRST | MI | TITLE REGISTERED NURSE | SEX M | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| PARTICIPANT OBSERVER, MED | BADGE # N/A | ID # | POST ASSIGN # | POSITION TTA NURSE | | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

☑ N/A   NAME/LOCATION OF HOSP/FACILITY
☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT   ☐ HOSPITALIZED   ☐ DECEASED DATE
Reason For Death
Is There ASCA Serious Injury  ⦿ No  ◯ Yes
USED FORCE  ☐ Yes  ☑ No   TYPE OF FORCE:
PROCESSED EVIDENCE  ☐ Yes  ☑ No

| NAME: LAST SISSON | FIRST J | MI | TITLE REGISTERED NURSE | SEX M | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| PARTICIPANT OBSERVER, MED | BADGE # N/A | ID # | POST ASSIGN # | POSITION TTA NURSE | | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

☑ N/A   NAME/LOCATION OF HOSP/FACILITY
☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT   ☐ HOSPITALIZED   ☐ DECEASED DATE
Reason For Death
Is There ASCA Serious Injury  ⦿ No  ◯ Yes
USED FORCE  ☐ Yes  ☑ No   TYPE OF FORCE:
PROCESSED EVIDENCE  ☐ Yes  ☑ No

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**

**PART B2 - STAFF**

CDCR 837-B2 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

DV-1 5.4

| Page 11 of 11 |

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| LAC | BPG - GENERAL POPULATION | LAC-BPG-15-08-0473 |

### STAFF (ENTIRE SHEET)

| NAME   LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| ADEDURO | ▮ | | LICENSED VOCATIONAL NUR | F | ▮ | |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| OBSERVER, MED | N/A | ▮ | ▮ | FACILITY B NURSE |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE

☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY

Reason For Death

☑ N/A   ☐ TREATED AND RELEASED
☐ REFUSED TREATMENT   ☐ HOSPITALIZED
☐ DECEASED DATE

Is There ASCA Serious Injury   ◉ No  ○ Yes

USED FORCE   ☐ Yes  ☑ No
TYPE OF FORCE:

PROCESSED EVIDENCE   ☐ Yes  ☑ No

AGO  025

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| | |
|---|---|
| Page 1 of 3 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |

| NAME: LAST VILLALOBOS | FIRST F███ | MI ███ | INCIDENT DATE 08/11/2015 | INCIDENT TIME 17:46 HRS |
|---|---|---|---|---|

| POST # ███ | POSITION B. FAC. SERGEANT | YEARS OF SERVICE ███ | DATE OF REPORT 08/11/2015 | LOCATION OF INCIDENT B PROGRAM OFFICE |
|---|---|---|---|---|

| RDO's ███ | DUTY HOURS ███ | DESCRIPTION OF CRIME / INCIDENT AGGRAVATED BATTERY ON A PEACE OFFICER | CCR SECTION / RULE ☐ N/A 3005 (d) (1) |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | (S) J. ARCHAMBO | (S) H. TILLMAN | (S) BAKER K-62174 |
| ☒ RESPONDER | (S) B. PABON | (S) A. ADEDURO (LVN) | |
| ☐ WITNESS | (S) R. PABON | | |
| ☐ VICTIM | (S) A. CASTRO | | |
| ☐ CAMERA | (S) J. RAMSEY | | |
| ☐ SCRIBE | (S) M. GODINA | | |

**FORCE USED BY YOU**
☐ WEAPON
☒ PHYSICAL
☐ CHEMICAL
☐ NONE

**FORCE OBSERVED BY YOU**
☐ WEAPON
☒ PHYSICAL
☐ CHEMICAL
☐ NONE

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

☐ N/A

FORCE:
☐ EXPANDABLE BATON
☐ RESTRAINT TECHNIQUES
☒ HANDS
☐ FEET

| WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|
| ☐ MINI-14 | | | ☐ 37 MM | | ☐ N/A |
| ☐ .38 CAL | | | ☐ L8 | | ☐ OC |
| ☐ 9 MM | | | ☐ 40 MM | | ☐ CN |
| ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| | | | ☐ HFWRS | | ☐ OTHER |

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |

| EVIDENCE COLLECTED BY YOU ☐ Yes ☒ No | DESCRIPTION OF INJURY ☐ N/A SORE LOWER BACK, ABRASIONS AND PAIN ON BOTH ELBOWS | LOCATION TREATED (HOSPITAL / CLINIC) ☐ N/A MEDICALLY EVALAUTED AND CLEARED AT TRIAGE TREATMENT AREA. | FLUID EXPOSURE ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER | SCIF 3301 /3067 COMPLETED ☒ YES ☐ NO |
|---|---|---|---|---|
| REPORTING STAFF INJURED ☐ Yes ☒ No | | | | |

**NARRATIVE:**

On Tuesday, August 11, 2015 at approximately 1746 hours while assigned to Facility "B" as the Program Sergeant, I was completing paperwork inside the Sergeant's office. I heard over the Institutional radio a request for a "Code 1" response by the medical clinic from the Yard Observation Officer J. Archambo. I exited the program office area and observed all the inmates on the North yard as well as the South yard, down on sitting positions. I turned my attention towards the roadway by the "B" medical clinic and observed inmate Baker K-61724, FBB1-129L standing in front of the canteen roadway screaming "Fuck you all bitches, no one is taking me nowhere". I began walking towards inmate Baker and Officers B. Pabon, R. Pabon, A. Castro and J. Ramsey approached Baker as well. Officer R. Pabon and B. Pabon attempted to place inmate Baker in handcuffs and he began resisting by pulling his arms away from the Officer's grasp to avoid being placed in handcuffs. Baker then stated "You can't place me in handcuffs; I have a waist chain Chrono!" I approached Officers R. Pabon and B. Pabon and gave them instructions to escort inmate Baker to one of the program holding cells without restraints. I asked inmate Baker what was the problem and he stated "You all bitches are only trying to fuck with me, that bitch ass white boy in observation is trying to fuck with me". I advised Baker that we were going to

☑ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF F. VILLALOBOS | TITLE CORRECTIONAL SERGEANT | BADGE # ███ | ID# ███ | DATE 08/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) A. LUGO, LT. | DATE RECEIVED 08/11/2015 | APPROVED ☑ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☑ NO | DATE 08/11/2015 |

Distribution: Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

AGO_026

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

| | |
|---|---|
| PAGE __2__ OF __3__ | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| VILLALOBOS | ▮ | ▮ |

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT      ☐ CLARIFICATION OF REPORT      ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

escort him to one of the holding cells so that we could continue with the evening meal. Baker began walking as Officer B. Pabon held Baker's right bicep area as R. Pabon held Baker by his left bicep area. As we came by the intake medical clinic, inmate Baker stopped walking and stated "Fuck you all idiots I will do whatever I want". Officer R. Pabon told Baker to calm down and that we were just going to escort him to the holding cell area. Baker started to walk again and upon arrival to the program door, Officer R. Pabon relinquished custody of Baker to Officer Castro as he was opening the holding cell room door. We walked inside the Office hallway and I instructed Baker to face the Counselors door as R. Pabon opened the door. Inmate Baker then attempted to break the Officers grasp by turning his body to the left in a sudden move and pulling his arms away from the Officers. I immediately gave orders to Baker to stop resisting and Baker did not comply as he continued to turn his body from side to side as well as is arms. To gain compliance of a lawful order and to overcome Baker's resistance, I stepped forward and began pushing Baker against the wall by placing both of my hands on Baker upper back. Officer B. Pabon held on to Baker's left arm as Officer Castro held the right arm. Officer J. Ramsey stepped to my right and using his hand he pushed on Bakers upper body in an attempt to immobilize him. Inmate Baker suddenly turned his face to the left and spat right on Officer B. Pabon's face. To gain compliance of a lawful order and to overcome Baker's resistance I ordered Baker to stop spiting with negative results. Baker began coughing up saliva and I placed my right hand on Baker's head. My hand was placed around Baker's left ear/jaw area to force him to face away from all the Officers. I kept giving Baker orders to stop spiting and to stop resisting with negative results. Baker continued thrashing his body and was spitting at the glass where his face was held by me. Inmate Baker then began swinging his right leg back attempting to kick me or Officer Ramsey. To overcome resistance and to be able to effect custody of inmate Baker, I instructed Officers Ramsey, B. Pabon and A. Castro to "Take the inmate down". I grabbed Bakers shirt around his left shoulder with my left hand. With my right hand I grabbed Baker's shirt around his right shoulder and using my strength and body weight, I turned Baker to the right as I pushed him on a downward-forward motion forcing him to the floor. Inmate Baker landed on his stomach, Officer Castro landed on Baker's right side as he was holding on to Baker's right arm. Officer B. Pabon was on Baker's right side as she was holding Baker's right arm. I landed on Baker's right side next to Officer B. Pabon. I took control of Baker's left arm holding it with both of my hands and instructed Officer B. Pabon to step away from the incident. Officer J. Ramsey sat on Baker's legs to stop him from kicking. I requested for a set of waist chains and some leg restraints to be able to secure Baker. I ordered Baker to place his hands behind his back to which he refused. To be able to effect custody I pushed on Baker's left arm to place it on the middle of his back as Officer Castro moved Baker's right arm to the center of his back. I grabbed the handcuffs which were already placed on Baker's right hand and secured the left hand as well. Once in handcuffs I grabbed Baker's left arm by the bicep area as Officer Castro held Baker's left arm and we both assisted him to his feet as he stood under his own power. We placed Baker facing the window of the counselor's office and I instructed Officer Ramsey to open one of the holding cells to place Baker inside. Ramsey opened the holding cell and Officer Castro relinquished custody of Baker to C Smith who had arrived to the scene of the incident. I relinquished custody of Baker to Ramsey. I then instructed Officers B. Pabon and A. Castro to report to the triage treatment area to be medically evaluated and /or treated for their injuries. Officer Smith and Ramsey escorted Baker inside the holding cell followed by me. As soon as Baker was placed in the holding cell, he began to resist again by thrashing his body from side to side in an attempt to break from our grasp. Officer Smith and Ramsey pushed Baker against the back of the holding cell to be able to immobilize him. Inmate Baker began coughing up saliva as if he was getting ready to spit again. I grabbed a spit mask out of my pocket and placed it over Baker's face. As soon as the mask was placed inmate Baker began screaming stating "I can't breathe, I can't breathe". I requested for an Officer to bring a wheel chair via institutional radio. A few seconds later, Officer Tillman arrived with a wheel chair. Officer Tillman and Smith assisted inmate Baker onto the wheel chair and escorted him to the "B" Facility medical clinic for a medical evaluation. Once in the medical clinic, inmate Baker was medically evaluated by Licensed Vocational Nurse C. Adeduro who cleared him for Administrative Segregation placement. During the medical evaluation, Baker was placed in waist chains and he was subsequently placed in the intake clinic holding cell pending Administrative Segregation placement. While in the holding tank in the intake clinic, inmate Baker began kicking the

☑ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| F. VILLALOBOS | CORRECTIONAL SERGEANT | ▮ | ▮ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| A. LUGO, LT. | 08/11/2015 | ☑ YES  ☐ NO | ☐ YES  ☑ NO | 08/11/2015 |

Distribution:    Original: Incident Package       Copy: Reporting Employee       Copy: Reviewing Supervisor

AGO 027

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE ___3___ OF ___3___

INCIDENT LOG NUMBER
LAC-BPG-15-08-0473

| NAME: LAST | FIRST | MI |
|---|---|---|
| VILLALOBOS | ▮ | ▮ |

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

holding cell door as he yelled profanities and racial slurs to any person around him. At approximately 1815 hours I received a call from Officer Godina via institutional radio requesting for me to come to the intake clinic. Upon arrival to the intake clinic I observed inmate Baker hitting his head against the protection grill which is located on the intake holding cell windows. As soon as baker saw me he stopped hitting his head and began yelling at me stating "Hey you bean burrito eating mother fucker you are going to lose your job for this". "You fucking dirty pig you are in your way out and you don't even know it". "Fuck you fucking spic wet back mother fucker". "You will be kicking cans on the street by the time I'm done with you fucking wet back, dirty cop mother fucker". Inmate Baker then stated "You know I have the right to kill you right?" "It is my Islamic right to kill you". Baker then gesture with his right hand as if he was slicing the throat as he stated "You are done". Inmate Baker again started to hit his head against the window cover. I ordered to stop and he complied. I walked out of the intake clinic and returned to the Sergeant's office. At approximately 1830 hours, I received a call from Officer H. Tillman via Institutional Radio requesting for me to go to the intake clinic. Upon arrival, Officer Tillman informed me that inmate Baker had removed the waist chains from his waist leaving them in front. Baker then began striking the protection grill in an attempt to break the windows in the holding cell with the chain and lock. I walked to the door and ordered Baker to go to one the bench and to sit down to which he complied. I opened the holding cell door and ordered Baker to walk backwards toward me to which he complied. Officer Tillman and I removed the waist chains and put them back around the waist of inmate Baker. I then advised inmate Baker that if he was to remove the waist chains again, I would place him in hard cuffs. Inmate Baker sat down and did not respond. Inmate Baker made allegations of misconduct by staff and was interviewed by Lieutenant B. Legier and Sergeant K. Marshall. During the interview, inmate Baker expressed suicidal ideations to Lieutenant B. Legier and he contacted me to inform me of the situation. After medical staff was informed, they requested that inmate Baker be escorted to the TTA for a mental health evaluation. Inmate Baker was escorted to the TTA for a mental health evaluation and he was placed in "Suicide Watch" in Ad-Seg FAB4-123. At approximately 2045 hours Officers B. Pabor, R. Pabon and A. Castro returned from an outside hospital. Both Officers were instructed to be off work for approximately 7 days as a result of the injuries sustained during the incident. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF<br>F. VILLALOBOS | TITLE<br>CORRECTIONAL SERGEANT | BADGE #<br>▮ | ID#<br>▮ | DATE<br>08/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)<br>A. LUGO. LT. | DATE RECEIVED<br>08/11/2015 | APPROVED<br>☑ YES  ☐ NO | CLARIFICATION NEEDED<br>☐ YES  ☑ NO | DATE<br>08/11/2015 |

Distribution:    Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C-STAFF REPORT**
CDCR 837-C (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE 1 OF 1

INCIDENT LOG NUMBER
LAC- BPG- 15-08- 0 473

NAME: LAST ██████████  FIRST ██████

INCIDENT DATE 8|11|15   INCIDENT TIME 1746

POST # ██████  POSITION B observation   YEARS OF SERVICE ██████  DATE OF REPORT 8|11|15   LOCATION OF INCIDENT B North yard

RHO'S ██████  DUTY HOURS ██████  DESCRIPTION OF CRIME / INCIDENT Battery on a Peace Officer

CCR SECTION / RULE 3005(d)(1)   ☐ N/A

YOUR ROLE
☒ PRIMARY
☐ RESPONDER
☐ WITNESS
☐ VICTIM
☐ CAMERA
☐ SCRIBE

WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OHER)

INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS)
V/n Baker (K6-2174; B8-129)

FORCE USED BY YOU
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE

☐ N/A

FORCE:
☐ EXPANDABLE BATON
☐ RESTRAINT TECHNIQUES
☐ HANDS
☐ FEET

WEAPON | WARNING | EFFECT
☐ MINI 14
☐ 38 CAL
☐ 9 MM
☐ SHOTGUN

LAUNCHER
☐ 37MM
☐ L8
☐ 40MM
☐ 40 MULTI
☐ HFWRS

CHEMICAL /TYPE :
☐ N/A
☐ OC
☐ CN
☐ CS
☐ OTHER

FORCE OBSERVED BY YOU
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

EVIDENCE COLLECTED BY
☐ YES
☒ NO

EVIDENCE DESCRIPTION
☒ N/A

EVIDENCE DISPOSITION
☒ N/A

BIO HAZARD
☐ YES
☒ NO

PPE
☐ YES
☒ NO

REPORTING STAFF INJURED
☐ YES
☒ NO

DESCRIPTION OF INJURY
☒ N/A

LOCATION TREATED (HOSPITAL / CLINIC)
☒ N/A

FLUID EXPOSURE
☐ BODILY    ☒ N/A
☐ UNKNOWN
☐ OTHER

SCIF 3301/3067 COMPLETED
☐ YES
☒ NO

NARRATIVE:

On Tuesday August 11, 2015 at approximately 1746 hrs while Performing my duties as Bravo yard observation officer I ordered inmate Baker (K6-2174; B8-129) to keep moving off the roadway during the Evening meal. Baker yells at me "You don't know me like that!" I again tell Baker take it back to your building. Baker yells "Fuck this yard, fuck these Clos!" I again order Baker take it back to your building. Baker yells "I'm tired of all you Clos and we don't have to take this and Fucking u!" I notify Control via the institutional Bettach requesting a code. I response on the roadway, to the north yard. I activate the yard Alarm and order all inmates to get down over the Public Address system. All inmates comply and get down except for Baker who is at ill walking away. As soon as Responding staff get close to him, Baker stops and stands there. Baker yells "you can't handcuff me, get in-out restraints over and over. Responding Staff escort Baker to Facility B Program while I maintain coverage on the yard.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C-1

SIGNATURE OF REPORTING STAFF ████████

TITLE C/O

BADGE # ██████   ID# ██████

DATE 8|11|15

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) ████████

DATE RECEIVED 08/11/15

APPROVED ☐ YES ☐ NO

CLARIFICATION NEEDED ☐ YES ☐ NO

DATE 08/11/15

Distribution: Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

AGO 029

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C – STAFF REPORT
CDCR 837-C (REV. 10/06)

| | | |
|---|---|---|
| Page __1__ of __2__ | INCIDENT LOG NUMBER | LAC-PBG-15-08-0473 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| PABON | B███ | | 08/11/2015 | 1746 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| | | | 08/11/2015 | FAC "B" PROG OFFICE |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | |
|---|---|---|---|---|
| | | AGGRAVATED BATTERY ON A PEACE OFFICER | 3005 (d) (1) | ☐ N/A |

**YOUR ROLE**
- ☐ PRIMARY
- ☒ RESPONDER
- ☐ WITNESS
- ☐ VICTIM
- ☐ CAMERA
- ☐ SCRIBE

**WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)**
(S) C/O  R. PABON
(S) C/O  A. CASTRO
(S) SGT F. VILLALOBOS

**INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)**
(S) BAKER K62174

**FORCE USED BY YOU**
- ☐ WEAPON
- ☒ PHYSICAL
- ☐ CHEMICAL
- ☐ NONE

**FORCE OBSERVED BY YOU**
- ☐ WEAPON
- ☒ PHYSICAL
- ☐ CHEMICAL
- ☐ NONE

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

☐ N/A
**FORCE**
- ☐ EXPANDABLE BATON
- ☒ RESTRAINT TECHNIQUES
- ☒ HANDS
- ☐ FEET

| WEAPON | WARNING | EFFECT | LAUNCHER | EFFECT# | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|
| ☐ MINI-14 | | | ☐ 37 MM | | ☐ N/A |
| ☐ 38 CAL | | | ☐ L8 | | ☐ OC |
| ☐ 9 MM | | | ☐ 40 MM | | ☐ CN |
| ☐ SHOTGUN | | | ☐ 40 MULTI | | ☐ CS |
| | | | ☐ HFWRS | | ☐ OTHER |

**EVIDENCE COLLECTED BY**
- ☒ Yes
- ☐ No

**EVIDENCE DESCRIPTION**
☐ N/A
Green CDCR Jumpsuit

**EVIDENCE DISPOSITION**
☒ N/A - LOGGED AND SECURED INTO A/B EVIDENCE LOCKER #25   A.L.

| BIO HAZARD | PPE |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |

**REPORTING STAFF INJURED**
- ☒ Yes
- ☐ No

**DESCRIPTION OF INJURY**
☐ N/A
Left elbow pain, Right eyebrow swollen

**LOCATION TREATED (HOSPITAL / CLINIC)**
☐ N/A
Proactive Medical Center

**FLUID EXPOSURE**
- ☒ BODILY   ☐ N/A
- ☐ UNKNOWN
- ☐ OTHER

**SCIF 3301 /3067 COMPLETED**
- ☒ YES
- ☐ NO

**NARRATIVE:**

On Tuesday August 11, 2015 at approximately 1746 hours, I heard via the institutional radio requesting a code 1 response on the roadway on the north yard and the yard alarm was sounded. Upon arrival to the front of Facility B (FB) Gym Inmate Baker K62174 stood yelling and pointing towards B Yard Gunner "Fuck you, you racist ass mother fucker" I ordered Baker to turn around and summit to handcuff, which he failed to comply. To effect custody I immediately took hold of Bakers right wrist placing my handcuff on it and pulling it towards his back, Baker yelled "You dumb bitch, I'm mobility impaired I need waist chains" I immediately stopped pulling his arm towards his back. At this time Sergeant F. Villalobos arrived to the incident area, instructed responding staff and me to escort Baker to FB Program Office to be placed in a holding cell. I maintained control of Bakers right wrist which had my handcuff and right bicep and Officer R. Pabon maintained control of his left bicep, Baker willingly walked under his own will, stopping multiple times to incite to other inmates "Everybody look at these mother fuckers, take notes and names, I'm taking it to court and you all are my witnesses". Baker then turned to me and yelled "Fuck you bitch let go of my wrist or I got something for you when we go inside

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| B. PABON | CORRECTIONAL OFFICER | ███ | ███ | 8/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| SERGEANT F. VILLALOBOS | 8/11/2015 | ☒ YES  ☐ NO | ☐ YES  ☒ NO | 8/11/2015 |

Distribution:   Original: Incident Package      Copy: Reporting Employee      Copy: Reviewing Supervisor

AGO_030

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT
PART C1 - SUPPLEMENT**
CDCR 837-C1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| | |
|---|---|
| PAGE 2 OF 2 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |

NAME: LAST
PABON

FIRST
B▮▮▮▮▮

MI
▮▮

TYPE OF INFORMATION:

☐ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

program you cunt". Prior to entering the Program Office, R. Pabon released Bakers left bicep, so Baker and I could entered the program door Officer A. Castro still had control of Baker right arm along with the handcuffs still on baker right wrist. Upon entering the doorway I ordered Baker to face to the right while R. Pabon opened the holding cell room. Baker continued yelling "You fucking racist C.O's", due to Bakers violent demeanor I took hold of his left shoulder ordering Baker to calm down, at this time Baker turned to his left side saying "shut up, bitch" spitting saliva at me, striking me in my open mouth, I yelled "He spit on me". Holding my composure I ordered Baker to "stop spitting" and "calm down". Sgt Villalobos then pushed Bakers head towards the glass ordering him to "quit spitting" Baker then began kicking his right foot back while twisting his body from left to right. I immediately pushed my body weight against him in attempt to overcome resistance, effect custody and gain compliance. Due to Bakers continued violence against staff, Sgt Villalobos instructed responding staff and me to take Baker down the floor to keep him from harming himself and others. I took hold of Bakers left side state issued blue shirt pulling him toward the left causing him and me to fall to the floor. Once on the floor Baker swung his left elbow back hitting me underneath my right eyebrow. I then utilized my institutional radio calling for leg irons and waist chains. Sgt Villalobos instructed me to go to the Triage and Treatment Area (TTA) for a medical evaluation. On completion of my medical evaluation Security Squad Officer C. Smith took photos of my injuries. I was transported to Proactive Medical Center for further evaluation. Upon returning to the institution Sgt Villalobos instructed me to submit my Green Jumpsuit to evidence, which was submitted to A and B Sub-Evidence locker number 25 at 2105 hours.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF B. PABON | TITLE CORRECTIONAL OFFICER | | BADGE # ▮▮▮ | ID# ▮▮▮ | DATE 08/11/2015 |
|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) SERGEANT F. VILLALOBOS | DATE RECEIVED 08/11/2015 | APPROVED ☑YES ☐NO | | CLARIFICATION NEEDED ☐YES ☑NO | DATE 08/11/2015 |

Distribution:   Original Incident Package      Copy Reporting Employee      Copy Reviewing Supervisor

AGO_031

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| Page | 1 | of | 2 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |
|---|---|---|---|---|

| NAME: LAST CASTRO | FIRST A▮▮▮▮ | MI | INCIDENT DATE 08/11/2015 | INCIDENT TIME 1746 |
|---|---|---|---|---|

| POST # ▮▮▮ | POSITION B2-FLOOR 2 | YEARS OF SERVICE ▮▮ | DATE OF REPORT 08/11/2015 | LOCATION OF INCIDENT "B" PROG. OFFICE |
|---|---|---|---|---|

| RDO's ▮▮▮ | DUTY HOURS ▮▮▮▮▮ | DESCRIPTION OF CRIME / INCIDENT AGGRAVATED BATTERY ON A PEACE OFFICER | CCR SECTION / RULE ☐ N/A 3005 (d)(1) |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | (S) R.PABON | (S) BAKER FBB2-129L |
| ☒ RESPONDER | (S) B.PABON | |
| ☐ WITNESS | (S) J.RAMSEY | |
| ☐ VICTIM | (S) F.VILLALOBOS | |
| ☐ CAMERA | (S) C.SMITH | |
| ☐ SCRIBE | | |

**FORCE USED BY YOU**
**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**
☐ N/A

| | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|
| ☐ WEAPON | FORCE: | ☐ MINI-14 | | ☐ 37 MM | | ☒ N/A |
| ☒ PHYSICAL | ☐EXPANDABLE BATON | ☐ .38 CAL | | ☐ L8 | | ☐ OC |
| ☐ CHEMICAL | ☐RESTRAINT | ☐ 9 MM | | ☐ 40 MM | | ☐ CN |
| ☐ NONE | TECHNIQUES | ☐ SHOTGUN | | ☐ 40 MM MULTI | | ☐ CS |
| **FORCE OBSERVED BY YOU** | ☒ HANDS | | | ☐ HFWRS | | ☐ OTHER |
| | ☐ FEET | | | | | |

**FORCE OBSERVED BY YOU**
☐ WEAPON
☒ PHYSICAL
☐ CHEMICAL
☐ NONE

| EVIDENCE COLLECTED BY YOU | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | |
|---|---|---|---|---|

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ Yes ☐ No | ☐ N/A Uniform shirt contaminated with inmate Baker's saliva. | ☐ N/A Logged and secured in the A/B sub-evidence room locker # 24. | ☐ Yes ☒ No | ☐ Yes ☒ No |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 /3067 COMPLETED |
|---|---|---|---|---|
| ☒ Yes ☐ No | ☐ N/A RIGHT SHOULDER REGION AND EXPOSED TO BODY FLUID | ☐ N/A PRO-ACTIVE (TREATED AND RELEASED) | ☒ BODILY ☐ N/A ☐ UNKNOWN ☐ OTHER | ☒ YES ☐ NO |

**NARRATIVE:**
On August 8, 2015 at approximately 1746 hours while performing my duties as B2 Floor 2, I was assigned to the North side dining hall when I heard over the intuitional radio "Code 1, resistive inmate in front of Bravo Medical. I responded from the north dining hall and observed Officer R. Pabon and Officer B. Pabon escorting inmate Baker (K61724 FBB2-129L) towards the Facility B program office. Inmate Baker stated that he could not be restrained behind the back and needed waist restraints. Sgt. Villalobos then instructed us to escort Baker to the program office. Once we got into the program office, I assisted in holding inmate Baker as he was placed facing the counselor door while Officer R. Pabon opened the holding cell room door. Once against the wall, Baker began moving his upper body from left to right kicking his right leg backwards in attempt to strike staff causing an imminent threat to our safety and requiring immediate action. To gain compliance of a lawful order, to overcome resistance and to effect custody, Sergeant Villalobos instructed myself, officer Ramsey and officer B. Pabon to take Baker down to the floor. I grabbed the back of Bakers shirt with bot of my hands and pulled him to the left on a downward motion forcing him to the floor. I landed on Baker's right side as I held his right arm with both of my hands. Once on the ground, Baker began kicking both his legs. Baker turned his face in my

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF A. CASTRO | TITLE CORRECTIONAL OFFICER | BADGE # ▮▮▮ | ID# ▮▮▮ | DATE 08/11/2015 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT /SIGNATURE) F. VILLALOBOS, SGT. | DATE RECEIVED 08/11/2015 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 08/11/2015 |
|---|---|---|---|---|

Distribution:   Original: Incident Package      Copy: Reporting Employee      Copy: Reviewing Supervisor

AGO 032

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE   2   OF   2

INCIDENT LOG NUMBER
LAC-BPG-15-08-0473

| NAME:   LAST | FIRST | MI |
|---|---|---|
| CASTRO | A█████████ | █ |

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

direction (right), and spat in my face. Officer R. Paton grabbed a hold of Bakers head and turned it away from me in an attempt to prevent him from spitting on my face again. I still had control of Baker's left arm and to overcome resistance and to effect custody, I utilized both of my hands pushing Baker's left arm up towards his back as Sergeant Villalobos did the same with Baker's right arm. Sergeant Villalobos and I placed inmate Baker in restraints. I assisted Baker to his feet by placing my right hand on his right bicep. Inmate Baker was ordered to stand facing the Counselors office. Responding staff arrived and placed Baker in the holding cell. I was then instructed by Sergeant Villalobos to report to the Triage Treatment Area for a medical evaluation and/or treatment for my injuries and the exposure to saliva. I was medically evaluated by Registered Nurse J. Sisson. During the evaluation it was determined that I needed further evaluation and I was transported to Pro Active Work Health Services.  This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| A. CASTRO | CORRECTIONAL OFFICER | █████ | █████ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| F. VILLALOBOS, SGT. | 08/11/2015 | ☑ YES  ☐ NO | ☐ YES  ☑ NO | 08/11/2015 |

Distribution   Original Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

AGO  033

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C - STAFF REPORT**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDCR 837-C (REV. 10/06)

*1 of 1*

| | INCIDENT LOG NUMBER |
|---|---|
| | LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| LEGIER | B█ | █ | 8/11/2015 | 17:46 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| █ | WATCH COMMANDER | █ █ | 8/11/2015 | FACILITY "B" PROGRAM |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| █ | █ | Force or Violence - Aggravated Battery on a Peace Officer with Use of Force - Gassing (Scitting) | 3005-d1 Force or Violence |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS |
|---|---|---|
| RESPONDER | (S) SGT. K. MARSHALL | (S) I/M BAKER, K62174 |

| FORCE OBSERVED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | CHEMICAL AGENTS USED |
|---|---|---|---|---|---|---|---|
| NONE | ☑ N/A | **WEAPON** | **WARNING** | **EFFECT:** | **LAUNCHER:** | **EFFECT#:** | **CHEMICAL/ TYPE:** |
| | **FORCE:** | ☐ MINI 14 | | | ☐ 37MM | | ☐ OC |
| | ☐ EXPANDABLE BATON | ☐ .38 CAL | | | ☐ L8 | | ☐ CN |
| | ☐ PHYSICAL FORCE | ☐ 9MM | | | ☐ 40MM | | ☐ CS |
| | ☐ X10 | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ OTHER |
| | | | | | ☐ HFWRS | | |

| EVIDENCE COLLECTED BY | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ Yes  ☑ No | ☑ N/A | ☑ N/A | ☐ Yes  ☑ No | ☐ Yes  ☑ No |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3057 COMPLETED |
|---|---|---|---|---|
| ☐ Yes  ☑ No | ☑ N/A | ☑ N/A | ☑ N/A  DESC: | ☐ Yes  ☑ No |

NARRATIVE:

On Tuesday, August 11, 2015 at approximately 2025 hours I arrived to Facility "B" Medical Intake area to conduct a videotaped interview with Inmate Baker, K62174, FBB2-129L. The video camera operator was Sergeant K. Marshall and at the completion of the video, Sergeant Marshall placed the camera and video into A/B evidence room, locker #23.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Lieutenant | BADGE # █ | ID# █ | DATE 8/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/ SIGNATURE) A. LUGO CORRECTIONAL LIEUTENANT | DATE RECEIVED 8/11/2015 | APPROVED ☑ Yes  ☐ No | CLARIFICATION NEEDED ☐ Yes  ☑ No | DATE 8/11/2015 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C-STAFF REPORT
CDCR 837-C (REV. 10/06)

PAGE 1 OF 1

INCIDENT LOG NUMBER
LAC-BPG-15-08-0473

| NAME LAST MARSHALL | FIRST K█████ | MI | INCIDENT DATE 08/11/2015 | INCIDENT TIME 1746 HRS |
|---|---|---|---|---|

| POST # █ | POSITION FAC A PROG SERGEANT | YEARS OF SERVICE █████ | DATE OF REPORT 08/11/2015 | LOCATION OF INCIDENT FAC B PROGRAM OFFICE |
|---|---|---|---|---|

| RDO'S █ | DUTY HOURS █████ | DESCRIPTION OF CRIME / INCIDENT AGGRAVATED BATTERY ON A PEACE OFFICER | CCR SECTION / RULE 3005 (d) (1) | ☐ N/A |
|---|---|---|---|---|

| YOUR ROLE | WITNESSES(PREFACE S-STAFF, V-VISITOR, 0-OHER) | INMATES(PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐PRIMARY<br>☐RESPONDER<br>☐WITNESS<br>☐VICTIM<br>☒CAMERA<br>☐SCRIBE | (S) B. LEGIER | (S) BAKER, K-62174 |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|

| | | WEAPON WARNING EFFECT | LAUNCHER | CHEMICAL /TYPE : |
|---|---|---|---|---|
| ☐ WEAPON<br>☐ PHYSICAL<br>☐ CHEMICAL<br>☒ NONE | ☒ N/A<br><br>FORCE:<br>☐ EXPANDABLEBATON<br>☐ RESTRAINT TECHNIQUES<br>☐ HANDS<br>☐ FEET | ☐ MINI 14 ___ ___<br>☐ 38CAL ___ ___<br>☐ 9 MM ___ ___<br>☐ SHOTGUN ___ ___ | ☐37MM ___ ___<br>☐L8 ___ ___<br>☐40MM ___ ___<br>☐40 MULTI ___ ___<br>☐HFWRS ___ ___ | ☐ N/A ___<br>☐ OC ___<br>☐ CN ___<br>☐CS ___<br>☐OTHER ___ |

| FORCE OBSERVED BY YOU |
|---|
| ☐ WEAPON<br>☐ PHYSICAL<br>☐ CHEMICAL<br>☒ NONE |

| EVIDENCE COLLECTEDBY | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES<br>☐ NO | ☐ DIGITAL VIDEO CAMERA SERIAL # LL17908 # 1 | ☐PLACED IN A/B SUB-EVIDENCE LOCKER #23 | ☐YES<br>☒NO | ☐YES<br>☒NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 /3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES<br>☒ NO | ☒N/A | ☒N/A | ☐ BODILY ☒N/A<br>☐UNKNOWN<br>☐OTHER_____ | ☐YES<br>☒NO |

NARRATIVE:
On Tuesday August 11, 2015 at approximately 2025 hours, while assigned as the Facility A Program Sergeant I was instructed by Correctional Lieutenant B. Legier to operate the video camera for the purpose of conducting a video recorded interview of Inmate Baker, K-62174, FBB2-129L. Upon completion of the video camera interview, the camera was secured within the A/B Sub-Evidence Room Locker #23. This concludes my involvement in this matter.

☐CHECK IF NARRATIVE IS CONTINUED ON PART C-1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL SERGEANT | BADGE # █████ | ID# █████ | DATE 08/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER(PRINT/SIGNATURE)<br>CORRECTIONAL LIEUTENANT A. LUGO | DATE RECEIVED 08/11/2015 | APPROVED ☒ YES☐ NO | CLARIFICATION NEEDED ☐ YES ☒NO | DATE 08/11/2015 |

Distribution Original Incident Package Copy Reporting Employee Copy Reviewing Supervisor

AGO 035

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page  1  of  2

INCIDENT LOG NUMBER
LAC-BPG-15-08-0473

| NAME. LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| GODINA | M | | 08/11/2015 | 17:46 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| | SEC. PAT #1 | | 08/11/2015 | Facility "B" Program Office |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE □ N/A |
|---|---|---|---|
| | | AGGRAVATED BATTERY ON A PEACE OFFICER | 3005 (d) (1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| □ PRIMARY | (S) F. Villalobos | (S) Baker K-62174 |
| ☒ RESPONDER | (S) C. Smith | |
| □ WITNESS | (S) H. Tillman | |
| □ VICTIM | | |
| □ CAMERA | | |
| □ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | |
|---|---|---|---|---|---|---|---|
| | ☒ N/A | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
| □ WEAPON | FORCE: | □ MINI-14 | | | □ 37 MM | | ☒ N/A |
| □ PHYSICAL | □ EXPANDABLE BATON | □ 38 CAL | | | □ L8 | | □ OC |
| □ CHEMICAL | □ RESTRAINT | □ 9 MM | | | □ 40 MM | | □ CN |
| ☒ NONE | TECHNIQUES | □ SHOTGUN | | | □ 40 MM MULTI | | □ CS |
| FORCE OBSERVED BY YOU | □ HANDS | | | | □ HFWRS | | □ OTHER |
| □ WEAPON | □ FEET | | | | | | |
| □ PHYSICAL | | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
| □ CHEMICAL | | | | | | | |
| ☒ NONE | | ☒ N/A | | ☒ N/A | | □ Yes | □ Yes |
| EVIDENCE COLLECTED BY YOU | | | | | | ☒ No | ☒ No |
| □ Yes | | DESCRIPTION OF INJURY | | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | | SCIF 3301 /3067 COMPLETED |
| ☒ No | | ☒ N/A | | ☒ N/A | □ BODILY  ☒ N/A | | □ YES |
| REPORTING STAFF INJURED | | | | | □ UNKNOWN | | ☒ NO |
| □ Yes | | | | | □ OTHER | | |
| ☒ No | | | | | | | |

NARRATIVE:

On Tuesday. August 11, 2015, at approximately 1746 hours, while performing my duties inside of Facility "B" Medical Intake, the yard alarm was activated. As I responded to the yard alarm, I observed responding staff escorting inmate Baker K-62174, FBB2-129L, to Facility "B" Program Office. With the yard still down I provided coverage on the yard. I observed Officer C. Smith and Officer H. Tillman escort Baker to Facility "B" Medical. At approximately 1757 hours I observed Officer Smith and Officer Tillman escort Baker to Facility "B" Medical Intake. At approximately 1815 hours, I requested for Sergeant Villalobos to come to the intake clinic via Institutional radio. Upon arrival of Sergeant Villalobos I advised him that inmate Baker was kicking the holding cell door. I also informed Sergeant Villalobos that inmate Baker was striking the window cover (grill) with his head as he yelled profanities. Sergeant Villalobos advised me that if Baker attempted to hurt himself I would have to stop him even if it required use of force. Sergeant Villalobos returned back to his office and remained in front of medical intake providing coverage for evening med line. At approximately 1830 hours, Sergeant F. Villalobos return to talk to Baker. When Sergeant Villalobos was talking to Baker he stated, "I have the right to kill you It's my Islamic right to kill you" Baker then began to gesture using his right hand to slice his throat from left to right

□ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| | Correctional Officer | | | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| Correctional Sergeant F. Villalobos | 08/11/2015 | ☒ YES  □ NO | □ YES  ☒ NO | 08/11/2015 |

Distribution:    Original: Incident Package        Copy: Reporting Employee        Copy: Reviewing Supervisor

AGO 036

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE | 2 | OF | 2 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| GODINA | M█████ | █ |

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

and stated, "You are all done, I got you all". Baker then began to slam his head on the metal door window over and over. Officer Tillman called Sergeant Villalobos back and Baker stopped his actions. I left the intake clinic to continue providing coverage for the night med-line. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF M. GODINA | TITLE CORRECTIONAL OFFICER | BADGE # █████ | ID# █████ | DATE 08/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) F. VILLALOBOS, SGT. | DATE RECEIVED 08/11/2015 | APPROVED ☑ YES  ☐ NO | CLARIFICATION NEEDED ☐ YES  ☑ NO | DATE 08/11/2015 |

Distribution    Original: Incident Package    Copy: Recording Employee    Copy: Reviewing Supervisor

AGO  037

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| | | INCIDENT LOG NUMBER |
|---|---|---|
| Page __1__ of __2__ | | LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| CORDERO | S▮▮▮ | ▮ | 08/11/2015 | 17.46 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| ▮▮ | B SEC. PATROL 3 | | 08/11/2015 | FAC "B" PROGRAM OFFICE |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| ▮▮ | ▮▮▮▮▮ | AGGRAVATED BATTERY ON A PEACE OFFICER | 3005 (d) (1) |

**YOUR ROLE**
- ☐ PRIMARY
- ☒ RESPONDER
- ☐ WITNESS
- ☐ VICTIM
- ☐ CAMERA
- ☐ SCRIBE

**WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER)**
- (S) F. VILLALOBOS
- (S) J. ARCHAMBO
- (S) R. PABON
- (S) B. PABON

**INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES)**
- (S) BAKER (K-62174)   FBB2-129L

**FORCE USED BY YOU**
- ☐ WEAPON
- ☐ PHYSICAL
- ☐ CHEMICAL
- ☒ NONE

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

☒ N/A

| FORCE: | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|
| ☐EXPANDABLE BATON | ☐ MINI-14 | | | ☐ 37 MM | | ☐ N/A |
| ☐RESTRAINT | ☐ 38 CAL | | | ☐ L8 | | ☐ OC |
| TECHNIQUES | ☐ 9 MM | | | ☒ 40 MM | | ☐ CN |
| ☐ HANDS | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| ☐ FEET | | | | ☐ HFWRS | | ☐ OTHER |

**FORCE OBSERVED BY YOU**
- ☐ WEAPON
- ☐ PHYSICAL
- ☐ CHEMICAL
- ☒ NONE

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |

**EVIDENCE COLLECTED BY YOU**
- ☐ Yes
- ☒ No

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 /3067 COMPLETED |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER | ☐ YES ☒ NO |

**REPORTING STAFF INJURED**
- ☐ Yes
- ☒ No

**NARRATIVE:**

On Tuesday, August 11, 2015 at approximately 1746 hours, while performing my duties as Facility "B" Security Patrol 3, I was inside Bravo Program Office assisting in a 115 hearing when I heard an alarm activation on 'B' Yard. Upon exiting Facility "B" Program Office, I scanned the culinary area and the South yard. I then observed all the inmates down in a sitting position on the yard. I looked to the North Yard and the Medical clinic area. I observed all the inmates on the North yard in a sitting position as well with the exception of inmate Baker (K-62174 FBB2-129L). Baker was standing outside of Bravo Medical area with his right hand clinched screaming at "B" Yard Observation Correctional Officer J. Archambo yelling "Fuck all you bitches, no one is taking me anywhere." Correctional Sergeant F. Villalobos ordered me to get waist restraints from Bravo building 1. As I was returning from building 1 with the waist restraints, I observed Baker being escorted by Correctional Officer B. Pabon and R. Pabon. Correctional Officer R. Pabon was holding Bakers left bicep and B. Pabon was holding right bicep as they were walking towards the Program Office. During the escort inmate Baker continued yelling profanities at the escorting Officers. After I gave the waist restraints to Correctional Sergeant Villalobos

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| S. CORDERO | CORRECTIONAL OFFICER | ▮▮ | ▮▮ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| F. VILLALOBOS SERGEANT | 08/11/2015 | ☒YES ☐ NO | ☐ YES ☒ NO | 08/11/2015 |

Distribution:  Original: Incident Package      Copy: Reporting Employee      Copy: Reviewing Supervisor

AGO 038

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| | | | INCIDENT LOG NUMBER |
|---|---|---|---|
| PAGE | 2 | OF | 2 | LAC-BYRD-15-08-0474 |

| NAME:   LAST | FIRST | | MI |
|---|---|---|---|
| CORDERO | S█████ | | █ |

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

he entered the program office following the escort. I then returned to the culinary to provide coverage. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| S. Cordero | CORRECTIONAL OFFICER | ███ | ███ | 8·11·2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| F. VILLALOBOS, SERGEANT. | 08/12/2015 | ☑ YES  ☐ NO | ☐ YES  ☑ NO | 08/12/2015 |

Distribution    Original Incident Package    Copy Reporting Employee    Copy Reviewing Supervisor

AGO 039

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

| Page | 1 | 2 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |
|---|---|---|---|

| NAME: LAST PABON | FIRST ▮ | MI ▮ | INCIDENT DATE 08/11/2015 | INCIDENT TIME 1746 |
|---|---|---|---|---|

| POST # ▮ | POSIT ON B4FLR#2 | YEARS OF SERVICE 1▮ | DATE OF REPORT 08/11/2015 | LOCATION OF INCIDENT FAC "B" PROG OFFICE |
|---|---|---|---|---|

| RDO's ▮ | DUTY HOURS ▮ | DESCRIPTION OF CRIME / INCIDENT AGGAVATED BATTERY ON A PEACE OFFICER | CCR SECTION / RULE ☐ N/A 3005(d)(1) |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | C/O B.PABON | BAKER K 62174 | FBB2-129L |
| ☒ RESPONDER | C/O A.CASTRO | | |
| ☐ WITNESS | C/O J.RAMSEY | | |
| ☐ VICTIM | SGT.F.VILLALBOS | | |
| ☐ CAMERA | | | |
| ☐ SCRIBE | | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|

| FORCE USED BY YOU | | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ N/A | ☐ MINI-14 | | | ☐ 37 MM | | ☒ N/A |
| ☒ PHYSICAL | FORCE: | ☐ .38 CAL | | | ☐ L8 | | ☐ OC |
| ☐ CHEMICAL | ☐EXPANDABLE BATON | ☐ 9 MM | | | ☐ 40 MM | | ☐ CN |
| ☐ NONE | ☐RESTRAINT | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| | TECHNIQUES | | | | ☐ HFWRS | | ☐ OTHER |

| FORCE OBSERVED BY YOU | ☒ HANDS | | |
|---|---|---|---|
| ☐ WEAPON | ☐ FEET | | |
| ☒ PHYSICAL | | | |
| ☐ CHEMICAL | | | |
| ☐ NONE | | | |

| | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| EVIDENCE COLLECTED BY YOU | ☒ N/A | ☒ N/A | ☐ Yes ☒ No | ☐ Yes ☒ No |
| ☐ Yes | | | | |
| ☒ No | | | | |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL / CLINIC) ☒ N/A | FLUID EXPOSURE | SCIF 3301 /3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes | | | ☐ BODILY   ☒ N/A | ☐ YES |
| ☒ No | | | ☐ UNKNOWN | ☒ NO |
| | | | ☐ OTHER | |

**NARRATIVE:**
On Tuesday August 11, 2015 at approximately 1746 hours, I was monitoring the inmate entering Facility B North dining hall from the evening meal. I heard a call via intuitional Radio for a "code 1 response" in front of Facility B medical, the yard alarm was activated and all non involved inmates got down except inmate Baker K-62174 FBB2-129L, the inmate at the time was yelling "fuck these C/O's" in what was an attempt to get the attention of other inmates and gain their support. As Officer B.Pabon and I approached him, Pabon order him to turn around and cuff up. Baker ignored the order so Officer B.Pabon grabbed Baker's right wrist and placed the handcuff on it, in order to affect custody and gain compliance with B. Pabon lawful order I grabbed a hold of his left wrist and began to place it on his lower back in order to assist B.Pabon to place the inmate in handcuffs. Baker yelled "dumb bitch I mobility impaired I need waist chain". Because of Baker mobility impaired vest and being unaware of the inmate's disability I immediately stopped and maintain control of his left bicep. Sergeant F.Villalobos instructed us to escort Baker to Facility B program and place him into the holding cell. While escorting Baker to program, Baker stopped his forward movement by planting his left and right feet. Baker began to yell other profanities and telling the other non -involved inmates to take notes while standing there, I told Baker "calm down and keep walking". Baker began to walk again look toward his right and said "fuck you bitch let go of my wrist, I got something for you." Bakers left arm became very tensed, and again yelled" look at these racist C/O's to non- involved inmates. Upon arriving at the Facility B program door I released the inmate's left arm due to the width of the door and seeing responding Officer A.Castro on his right side along with Officer J.Ramsey behind the inmate. Upon entering the

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF R.PABON | TITLE CORRECTIONAL OFFICER | BADGE # ▮ | ID# ▮ | DATE 08/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) SEARGEANT F.VILLALOBOS | DATE RECEIVED 08/11/2015 | APPROVED ☒ YES  ☐ NO | CLARIFICATION NEEDED ☐ YES  ☒ NO | DATE 08/11/2015 |

Distribution:   Original: Incident Package       Copy: Reporting Employee       Copy: Reviewing Supervisor

AGO 040

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10-06)

| PAGE | 1 | 2 | INCIDENT LOG NUMBER |
|------|---|---|---------------------|
|      |   |   | LAC-BPG-15-08-0473 |

| NAME:   LAST | FIRST | MI |
|--------------|-------|-----|
| PABON | F■■■ | ■■ |

**TYPE OF INFORMATION:**

☑ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

Program staff faced the inmate toward the right door as I opened the door to the holding cell area.  As I began enter the holding cell area in order to search the cell I heard B.Pabon order the inmate to stop spitting. I turned to see Sergeant F.Villalobos, J.Ramsey and B.Pabon forcing Baker against the door, Baker began moving his upper body from left to right and  kicking his right leg backward in attempt to strike staff causing an imminent threat to their safety and requiring immediate action in order to stop the threat.  Sergeant F.Villalobos instructed the Officer's A.Castro, J.Ramsey and B.Pabon "take him down". Officer B.Pabon and A.Castro were still on the inmates left side, Sergeant F.Villalobos was directly behind him all begun to pulling the inmate down and to the left forcing him to the floor. Because the multiple staff there and my angle I was standing unable to identify all the staff hand placements. Once on the ground Baker begun kicking both his legs wildly in staff direction again causing and immediate threat to their safety. Ramsey grabbed a hold of the inmates leg's and sat down on them in order to prevent any further injuries to staff. Castro was still on the ground when inmate Baker turned his face to his left and spit saliva at Castro's Facial area. I grabbed a hold of the back of Bakers head with my right hand and turned it directly toward the floor, maintained control of it in order to prevent him from continuing to spit at Castro. Responding staff placed Baker into handcuffs stood the inmate to his feet and took control the inmate. Seeing this I stepped out of the program area with Officer A.Castro and escorted him and B.Pabon to treatment triage area for further a medical evaluation due to their multiple injuries. Officer A.Castro and B.Pabon where then transported to Proactive medical center for their injuries by myself via state vehicle.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|------------------------------|-------|---------|-----|------|
| R.PABON | CORRECTIONAL OFFICER | ■■ | ■■ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|----------------------------------------------|---------------|----------|----------------------|------|
| SEARGEANT F.VILLALOBOS | 08/11/2015 | ☒ YES ☐ NO | ☐ YES ☒ NO | 08/11/2015 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

AGO 041

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| Page | 1 | of | 2 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |
|---|---|---|---|---|

| NAME: LAST RAMSEY | FIRST ▮▮▮ | MI | INCIDENT DATE 8/11/2015 | INCIDENT TIME 17:46 |
|---|---|---|---|---|

| POST # ▮▮ | POSITION B Yard # 1 | YEARS OF SERVICE ▮▮▮▮ | DATE OF REPORT 8/11/2015 | LOCATION OF INCIDENT B Program Office |
|---|---|---|---|---|

| RDO s ▮▮ | DUTY HOURS ▮▮▮ | DESCRIPTION OF CRIME / INCIDENT Aggravated Battery On A Peace Officer | CCR SECTION / RULE 3005 (d) (1)  ☐ N/A |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | (S) SGT. F. VILLALOBOS | (S) BAKER  K-61724 |
| ☒ RESPONDER | (S) C/O R. PABON | |
| ☐ WITNESS | (S) C/O H. TILLMAN | |
| ☐ VICTIM | (S) C/O B. PABON | |
| ☐ CAMERA | (S) C/O A. CASTRO | |
| ☐ SCRIBE | (S) C/O C. SMITH | |

**FORCE USED BY YOU**

| | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|

| | | WEAPON: | WARNING | EFFECT: | LAUNCHER: | | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ N/A | ☐ MINI-14 | | | ☐ 37 MM | | ☐ N/A |
| ☒ PHYSICAL | **FORCE** | | | | ☐ L8 | | ☐ OC |
| ☐ CHEMICAL | ☐ EXPANDABLE BATON | ☐ 38 CAL | | | ☐ 40 MM | | ☐ CN |
| ☐ NONE | ☐ RESTRAINT | ☐ 9 MM | | | ☐ 40 MULTI | | ☐ CS |
| | TECHNIQUES | ☐ | | | ☐ 40 MULTI | | ☐ OTHER |
| **FORCE OBSERVED BY YOU** | ☒ HANDS | | | | ☐ HFWRS | | |
| ☐ WEAPON | ☐ FEET | | | | | | |
| ☒ PHYSICAL | | | | | | | |
| ☐ CHEMICAL | | | | | | | |
| ☐ NONE | | | | | | | |

| | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| **EVIDENCE COLLECTED BY YOU** | ☒ N/A | ☒ N/A | ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| ☐ Yes ☒ No | | | | |

| **REPORTING STAFF INJURED** | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 /3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes ☒ No | ☒ N/A | ☒ N/A | ☐ BODILY  ☒ N/A ☐ UNKNOWN ☐ OTHER | ☐ YES ☒ NO |

**NARRATIVE:**

On 8/11/2015 at approximately 1746 hours while performing my duties as B Yard #1, I was monitoring inmates walking into the chow hall when I heard over the intuitional Radio "Code 1, resistive inmate in front of Bravo Medical, I responded from the dining hall when I observed inmate Baker (K61724, B2 129L) screaming "Fuck all you bitches, no one taking me anywhere" Officer R. Pabon was holding Baker left bicep with his right hand and B. Pabon was holding Baker right forearm with handcuff already on his wrist bicep attempting to walk him to the Bravo holding cell. R. Pabon immediately grabbed Baker left wrist and brought it to the middle of his back in order to effect custody while B. Pabon grabbed Baker right wrist and brought it to the middle of his back. Baker stated "I'm mobility impaired, and you can only put waist chains on me". R.Pabon immediately brought his left arm back to the inmates left side while Officer B.Pabon brought his right arm back to the inmate's right side all while maintaining control of the inmate. Baker once again stopped his movement during the escort by planting booth his feet into the ground and said "Call the Sergeant, no one is taking me anywhere" Sgt. F. Villalobos responded to the incident and asked Baker" what's the problem?" Baker stated "All yall are bitches, that fucking coward in the observation booth a bitch ass white boy that's trying to fuck with me" Sgt Villalobos said "We are going to walk you to the holding cage so we can talk about it and continue to run evening chow. Baker once again started to walk to the B program with R. Pabon holding Baker left bicep with his right hand and B. Pabon holding Baker right forearm with her left hand when Baker once again planted both his feet in the ground and stopped his

☑ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF J. RAMSEY | TITLE CORRECTIONAL OFFICER | BADGE # ▮▮ | ID# ▮▮ | DATE 08/11/2015 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) F. VILLALOBOS, SGT. | DATE RECEIVED 08/11/2015 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 08/11/2015 |

Distribution    Original: Incident Package         Copy: Reporting Employee         Copy: Reviewing Supervisor

AGO 042

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1 - SUPPLEMENT**
CDCR 837-C1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE | 2 | OF | 2 | INCIDENT LOG NUMBER |
| | | | | LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI |
|------------|-------|----|
| RAMSEY | JOSHUA | D |

**TYPE OF INFORMATION:**

☑ CONTINUATION OF REPORT ☐ CLARIFICATION OF REPORT ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

movement while being escorted to B program and stated "Fuck yall idiots, I'll do whatever I want" R. Pabon told Baker to "Calm Down", Baker began to walk again. Once at the Facility B program door R.Pabon let go of the inmate's left arm while B. Pabon maintained controlled of his right arm and Officer Castro took control of the left arm. I proceeded to follow behind the inmate's left side thru the program door. Once inside the program door, Baker was put on the counselor door closest to B Program entrance door by Sgt. Villalobos and B. Pabon and A. Castro so that R. Pabon could open the door where the holding cells are. Once again the wall, Baker swung his body and torso in an aggressive manner to left towards the B Education area. Sgt. Villalobos immediately pushed Baker upper back with both his hands towards the Bravo Counselor door as he ordered Baker to stop resisting. To gain compliance of a lawful order, to overcome resistance and to effect custody, I immediately assisted by stepping on the right side of Sgt. Villalobos. I used my right hand and placed it on Baker right upper back pressing his upper body against the counselor door with my arm strength as I ordered Baker to stop resisting. Baker immediately turned his head to left and spat on Officer B. Pabon's face. Sgt. Villalobos utilized his right hand and held Bakers head against the window and ordered Baker to stop spitting. Sgt. Villalobos instructed all staff to take Baker down to the floor. While grabbing Baker's left shoulder with his left hand and his upper right shoulder with his right hand Sergeant Villalobos used his body weight to take Baker to the floor. Once on the floor, Baker began to kick back and forth with both feet in an aggressive manner attempting to strike staff. To get compliance of a lawful order, to overcome resistance and to effect custody I immediately sat on Baker's lower thighs putting my body weight and grabbed his left foot and ankle with my left hand and his right foot and ankle with my right hand while facing the B Program entrance door. I then transitioned my body weight and pinned Baker legs down by sitting on his lower calves and ankles while turning my body simultaneously 180 Degrees to face Sgt. Villalobos. Officer A. Castro grabbed Baker right arm with his right hand and pulled it to the middle his back while Sgt. Villalobos grabbed Baker left arm with his right hand and brought it to the middle of his back to connect the handcuffs. Once in restraints, Castro grabbed Baker's right arm with his right hand and Sgt. Villalobos grabbed Baker left arm with his right hand and both assisted him to his feet. Officer Castro and Sergeant Villalobos placed Baker on the counselor's office window right in front of the inmates work office. Sgt. Villalobos instructed me to open the holding cell door so we could place Baker inside the holding cell. Investigations Services Unit (ISU) Officer C. Smith responded to the incident and grabbed Baker right bicep with his left hand. I grabbed Baker's left bicep with my right hand and we escorted him from the program hallway and placed him in holding # 2. Once inside the holding cell, Baker attempted to break the grasp of C. Smith and me by turning his body to the left by swinging his torso and lower body towards me. C. Smith immediately grabbed Baker right upper shoulder with his left and right hand and used his body weight to press him against the back of the holding cell. To overcome resistance and to gain compliance with a lawful order, I grabbed Baker left shoulder and pressed him to the back of the cell using my body weight as I ordered Baker to stop resisting. Inmate Baker appeared to be coughing up saliva to spit again and Sgt. Villalobos assisted us by putting a spit mask over Baker Face which he had inside his right cargo pants pocket. Baker immediately began to say "I cannot breath, I cannot breath' Take this spit mask off me" Sgt. Villalobos instructed Officer H. Tillman to get a wheel chair. Once H. Tillman returned with the wheel chair, Smith maintained control of Baker Right bicep with his both of his hands. I maintained control of Baker left bicep with my right hand and we escorted Baker to the wheel chair. Officer Tillman pushed Baker out of the B Program area assisted by Smith. Inmate Baker was escorted to the "B" medical clinic where he was medically evaluated. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|------------------------------|-------|---------|-----|------|
| J. RAMSEY | CORRECTIONAL OFFICER | ███ | ███ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|-----------------------------------------------|---------------|----------|---------------------|------|
| F. VILLALOBOS, SGT. | 08/11/2015 | ☑ YES ☐ NO | ☐ YES ☑ NO | 08/11/2015 |

Distribution    Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

AGO 043

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C-STAFF REPORT**
CDCR 837-C  (REV. 10/06)

PAGE   1   OF   3

| INCIDENT LOG NUMBER |
|---|
| LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| SMITH | | | 08/11/2015 | 1746 HOURS |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| | ISU Officer #6 | | 08/11/2015 | Facility 'B' Program Office |

| RDO | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | N/A |
|---|---|---|---|---|
| | | Aggravated Battery on a Peace Officer | 3005 (d) (1) | ☐ |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY<br>☒ RESPONDER<br>☐ WITNESS<br>☐ VICTIM<br>☐ CAMERA<br>☐ SCRIBE | (S) SGT. F. VILLALOBOS<br>(S) C/O A. CASTRO<br>(S) C/O J. RAMSEY<br>(S) C/O B. PABON<br>(S) C/O H. TILLMAN | (S) Baker K62174 FBB2-129L |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|
| ☐ WEAPON<br>☒ PHYSICAL<br>☐ CHEMICAL<br>☐ NONE | |

☐ N/A

| | WEAPON | WARNING | EFFECT | LAUNCHER | CHEMICAL /TYPE : |
|---|---|---|---|---|---|
| **FORCE:**<br>☐ EXPANDABLE BATON<br>☐ RESTRAINT TECHNIQUES<br>☒ HANDS<br>☐ FEET | ☐ MINI 14<br>☐ 38 CAL<br>☐ 9 MM<br>☐ SHOTGUN | | | ☐ 37MM<br>☐ L8<br>☐ 40MM<br>☐ 40 MULTI<br>☐ HFWRS | ☐ N/A<br>☐ OC<br>☐ CN<br>☐ CS<br>☐ OTHER |

| FORCE OBSERVED BY YOU |
|---|
| ☐ WEAPON<br>☒ PHYSICAL<br>☐ CHEMICAL<br>☐ NONE |

| EVIDENCE COLLECTED BY | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES<br>☐ NO | ☐ N/A<br>Thirty six (36) Digital photographs | ☐ N/A<br>Submitted into ISU Main Evidence Locker #1 | ☐ YES<br>☒ NO | ☐ YES<br>☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 /3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES<br>☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY   ☒ N/A<br>☐ UNKNOWN<br>☐ OTHER | ☐ YES<br>☒ NO |

**NARRATIVE**

On Tuesday, August 11, 2015, at approximately 1746 hours, I heard a radio transmission requesting a Code 1 Response on facility 'B' due to an inmate resisting staff. I arrived at the Facility 'B' Program Office and observed Inmate Baker K62174 Facility 'B' Building 2, Cell #129 Lower (FBB2-129L) standing in the hallway, facing the Counselor's Office with Facility 'B' Sergeant F. Villalobos holding Baker's left upper arm with both hands and Facility 'B' Officer A. Castro holding Baker's right upper arm with both hands. Villalobos instructed Facility 'B' Officer J. Ramsey to open the door to Holding Cell #2 on order to secure Baker inside. I was advised that Baker had spit, striking officers Castro and B. Pabon in the facial area. Castro relinquished control of Baker's right upper arm to me so that he could seek treatment for exposure to the spit. Villalobos relinquished control of Baker's left upper arm to Ramsey. I maintained control of Baker's right arm with both hands as he twisted his upper body away from me toward Ramsey. Ramsey maintained control of Baker's left upper arm with his hands in an effort to overcome resistance as Baker twisted toward him. I held Baker's right underarm with both hands and Ramsey held Baker's left underarm as we assisted him to the holding cell. Baker continued to twist and began to kick his lower legs behind him. In order to overcome resistance, I placed my left hand on Baker's right shoulder and my right hand around his right biceps as Ramsey placed his left hand on Baker's left shoulder. Ramsey and I used our body weight to secure Baker to the back of the holding cell. Baker began to 'hawk/expectorate' and appeared to attempt to spit. Villalobos applied a spit mask on Baker and instructed Facility 'B' Officer H. Tillman to retrieve a wheelchair. I maintained control of Baker's right

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C-1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| C. SMITH JR | ISU Officer #6 | | | 08/11/2015 |
| NAME AND TITLE OF REVIEWER  (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| | 8/11/15 | ☐ YES ☐ NO | ☐ YES ☐ NO | 8/11/15 |

Distribution:  Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

AGO  044

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE | 2 | OF | 3 | INCIDENT LOG NUMBER |
|---|---|---|---|---|
| | | | | LAC-PBG-15-08-0473 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| SMITH | ▓ | ▓ |

**TYPE OF INFORMATION:**

☑ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

biceps as I retrieved my voice recorder from my left pants cargo pocket with my left hand and began recording the incident. Villalobos told Baker, "We're going to put you in a wheelchair and take you to medical". Baker responded by saying "I won't do that". Villalobos repeatedly instructed Baker to "Settle down" with negative results. Baker continued to yell at Villalobos. Tillman arrived with a wheelchair. I maintained control of Baker's right upper arm with both hands and Ramsey maintained control of Baker's left upper arm with his right hand and we assisted him into the wheelchair. Baker stated "I need to walk". Tillman and I pushed Baker in the wheelchair to the Facility 'B' Medical Clinic for medical staff to conduct a CDC 7219 Medical Evaluation. On the roadway enroute to the Medical Clinic, he yelled "Mother Fuckers! You can't win for losing!" "You ain't got common sense not to fuck with a litigator, you a joke!" He looked up at the observation officer and yelled, "and you, you comin' out that tower, you point that gun at me mutherfucker, you should've used it!" When we arrived at the Medical Clinic, Baker stated, "I fear for my life, get me out of here right now!" Baker was told that he would not be going anywhere until staff conducted a 7219 on him. He replied, "Who asked you? Kiss my ass bitch! Whoever you are!" "You got that? 7219 that! Stupid bitch!" I attempted to calm Baker down so that medical staff could conduct the evaluation. Medical staff conducted the evaluation as Baker continued to berate and verbally assault everyone in his presence. Baker was repeatedly asked to "Calm down" with negative results. Baker went on to state, "This is big! Now we at that $25 mil! You guys are fucked!" He also claimed to have one lung and to suffer from Post Traumatic Stress Disorder (PTSD), saying "I'm a mutherfucking veteran of two wars!" Upon completion of the medical evaluation, Tillman and I pushed Baker in the wheelchair to Facility 'B' Medical Intake and secured him inside the inmate waiting area. Upon securing the waiting area door, I stopped the recorder.

I proceeded to the Correctional Treatment Center where officers B. Pabon and A. Castro were receiving CDC 7219 Medical Evaluations. I took digital photographs of Pabon with the following depictions:

Frame 1: Front view, waist up
Frame 2: Employee I.D Card
Frame 3: Name tape
Frame 4: Front view, holding I.D Card
Frame 5: Right profile
Frame 6: Back
Frame 7: Left profile
Frame 8: Front view, legs
Frame 9: Front view, face, showing swollen right eyelid
Frame 10: Right side of face
Frame 11: Close up of right side of face, showing swollen right eyelid
Frame 12: Close up of swollen right eyelid
Frame 13: Left elbow, showing redness
Frame 14: Back of State I.D Card

Upon completion of the photographs of Pabon, I took a series of photographs of Castro with the following depictions:

Frame 15: State I.D Card
Frame 16: Back of State I.D Card
Frame 17: Front view
Frame 18: Right profile

✓ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| C. SMITH JR. | SU Officer #6 | ▓ | ▓ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| | 8/11/15 | ☑ YES ☐ NO | ☐ YES ☑ NO | 8/11/15 |

Distribution:   Original: Incident Package      Copy: Reporting Employee      Copy: Reviewing Supervisor

AGO_045

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

PAGE   3   OF   3

INCIDENT LOG NUMBER
LAC-BPG-15-06-0473

NAME:   LAST
SMITH

FIRST
CONRAD

MI
L

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE:

Frame 19:  Back
Frame 20:  Left profile
Frame 21:  Name tape
Frame 22:  Front view, legs
Frame 23:  Face, front view
Frame 24:  Face, left side
Frame 25:  Face, right side

Villalobos arrived at the CTC for a CDC 7219 Medical Evaluation.  Upon completion of the photographs of Castro and the medical evaluation, I took photographs of Villalobos with the following depictions.

Frame 26:  State I.D Card
Frame 27:  Back of I.D Card
Frame 28:  Front view, waist up
Frame 29:  Right profile
Frame 30:  Back
Frame 31:  Left profile
Frame 32:  Front view, legs
Frame 33:  Back of left and right hand
Frame 34:  Left elbow, showing redness and abrasions
Frame 35:  Right elbow, showing scratches, redness and abrasions
Frame 36:  Right forearm, showing abrasions

Upon completion of the photographs of Villalobos, I returned to the Investigative Services Unit (ISU) office and submitted all photographs and audio recording into ISU Main Evidence Locker #1.  This concludes my report.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

SIGNATURE OF REPORTING STAFF
C. SMITH JR.

TITLE/
ISU Officer #6

BADGE #

ID#

DATE
08/11/2015

NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE)

DATE RECEIVED
8/11/15

APPROVED
☑ YES  ☐ NO

CLARIFICATION NEEDED
☐ YES  ☑ NO

DATE
8/11/15

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

AGO_046

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C – STAFF REPORT
CDCR 837-C (REV. 10/06)

Page __1__ of __1__

| INCIDENT LOG NUMBER |
|---|
| LAC-BPG-15-08-0473 |

| NAME LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| TILLMAN | H▉ | ▉ | 08/12/2015 | 17:46 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| ▉ | B SEC PAT #2 | ▉ ▉ ▉ ▉ | 08/11/15 | FAC "B" PROG. OFFICE |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| ▉ | ▉ | AGGRAVATED BATTERY ON A PEACE OFFICER | 3005 (d)(1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | (S) Sgt. F. Villalobos | (S) Baker (K62174) |
| ☒ RESPONDER | (S) C. Smith | |
| ☐ WITNESS | (S) J. Ramsey | |
| ☐ VICTIM | (S) C. Aeduro | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | |
|---|---|---|---|---|---|---|---|
| | ☒ N/A | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL TYPE: |
| ☐ WEAPON | FORCE: | ☐ MINI-14 | | | ☐ 37 MM | | ☐ N/A |
| ☐ PHYSICAL | ☐ EXPANDABLE BATON | ☐ 38 CAL | | | ☐ L8 | | ☐ OC |
| ☐ CHEMICAL | ☐ RESTRAINT | ☐ 9 MM | | | ☐ 40 MM | | ☐ CN |
| ☒ NONE | TECHNIQUES | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ CS |
| FORCE OBSERVED BY YOU | ☐ HANDS | | | | ☐ HFWRS | | ☐ OTHER |
| ☐ WEAPON | ☐ FEET | | | | | | |
| ☐ PHYSICAL | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | | BIO HAZARD | PPE |
| ☐ CHEMICAL | | | | | | | |
| ☒ NONE | ☒ N/A | | ☒ N/A | | | ☐ Yes | ☐ Yes |
| EVIDENCE COLLECTED BY YOU | | | | | | ☒ No | ☒ No |
| ☐ Yes | DESCRIPTION OF INJURY | | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | | | SCIF 3301 /3067 COMPLETED |
| ☒ No | | | | | | | |
| REPORTING STAFF INJURED | ☒ N/A | | ☒ N/A | ☐ BODILY | ☒ N/A | | ☐ YES |
| | | | | ☐ UNKNOWN | | | ☒ NO |
| ☐ Yes | | | | ☐ OTHER | | | |
| ☒ No | | | | | | | |

NARRATIVE:

On Tuesday August 11, 2015 at approximately 17:46 hours the yard alarm was activated. When I responded from the medical intake clinic, I observed responding staff escorting inmate Baker K-62174 FBB2 129L to the Facility B Program Office. As I began returning back to medical intake and I was instructed by Correctional Sergeant F. Villalobos via institutional radio to retrieve a wheel chair from the B Medical clinic. I responded to the B program office with the wheel chair and observed inmate Baker standing inside holding cell # 2 facing the wall. Inmate Baker was wearing a spit mask over his face and he was in handcuffs. Correctional Officer J. Ramsey and Investigative Security Unit Officer C. Smith were holding Baker by his arms. Inmate Baker appeared to be very agitated and angry. Inmate Baker was attempting to break from the officers grasp by turning his body from side to side. Officer Ramsey and Officer Smith placed Baker in the wheel chair. Officer Smith and I escorted Baker to the B medical clinic where a medical evaluation was conducted by Licensed Vocational Nurse C. Aeduro. After the medical evaluation was completed, I took the handcuffs off and placed waist restraints and leg irons on inmate Baker. Officer Smith and I escorted Baker to the medical intake clinic. I searched the intake clinic holding cell with negative results for contraband. Inmate Baker was placed in the holding cell. I

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| H. TILLMAN. | Correctional Officer | ▉ | ▉ | 08/11/15 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| F. VILLALOBOS, SGT. | 08/11/15 | ☒ YES ☐ NO | ☐ YES ☒ NO | 08/11/15 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

AGO_047

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART c1 - SUPPLEMENT**
CDCR 837-c1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE | 2 | OF | 2 | INCIDENT LOG NUMBER LAC-BPG-15-08-0473 |

| NAME: LAST | FIRST | MI |
| TILLMAN | H████ | ██ |

TYPE OF INFORMATION:

☑ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

**NARRATIVE:**

immediately initiated a holding cell log. At approximately 1830 hours I heard a loud banging coming from the intake clinic holding cell. I looked over to the holding cell and observed inmate Baker striking the window protection grill inside the holding cell with the lock and the waist chairs. Inmate Baker had removed the waist restraints and was using them as a weapon in an attempt to break the windows. I contacted Sergeant Villalobos via institutional radio and asked him to come to the intake clinic. Upon the Sergeant's arrival to the intake clinic inmate Baker stopped hitting the door and windows. I advised Sergeant Villalobos of the situation and he ordered inmate Baker to sit down on the bench inside the holding cell to which he complied. Sergeant Villalobos opened the door and ordered Baker to walk backwards toward the door to which he complied. Sergeant Villalobos and I removed the waist chains and placed them again on Baker. Sergeant Villalobos warned Baker stating "If you remove the waist chains again, I will place handcuffs on you". Baker did not attempt to remove the restraints anymore. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
| H. TILLMAN, | CORRECTIONAL OFFICER | ████ | ████ | 08/11/2015 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| F. VILLALOBOS, SGT. | 08/11/2015 | ☑ YES ☐ NO | ☐ YES ☑ NO | 08/11/2015 |

Distribution:    Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

AGO  048

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| CSP-LAC | B-YARD | USE OF FORCE   (UNUSUAL OCCURRENCE)   INJURY | | PRE AD/SEG ADMISSION | 8/11/15 |

| THIS SECTION FOR INMATE ONLY | NAME   LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME   LAST   CASTRO | FIRST   A. ██ | BADGE #   ██ | RANK/CLASS   CO | ASSIGNMENT/RDOs   B² Floor 2 |
| THIS SECTION FOR VISITOR ONLY | NAME   LAST | FIRST   MIDDLE | DOB | OCCUPATION | |

| HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |
|---|---|---|---|---|

| PLACE OF OCCURRENCE   B- Program | DATE/TIME OF OCCURRENCE   1745  8/11/15 | NAME OF WITNESS(ES) |
|---|---|---|
| TIME NOTIFIED   1805 | TIME SEEN   1805 | ESCORTED BY   Self | MODE OF ARRIVAL (circle)   LITTER  (AMBULATORY)  ON SITE   WHEELCHAIR | AGE ██ | RACE ██ | SEX M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE
An inmate spit in my face and my RT shoulder (arm)



| INJURIES FOUND?   YES / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other   Spit Area | (17) |
| | 18 |
| | 19 |

O.C. SPRAY EXPOSURE?   YES /(NO)

DECONTAMINATED?   YES / NO

Self-decontamination instructions given?   YES / NO

Refused decontamination?   YES / NO

Q 15 min. checks

Staff Issued exposure packet?   YES / NO

| RN NOTIFIED/TIME   Susan RN  1805 | PHYSICIAN NOTIFIED/TIME |
|---|---|

TIME/DISPOSITION
Sent to Program Health Services  1810

| REPORT COMPLETED BY/TITLE   (PRINT AND SIGN)   Susan RN | BADGE # ██ | RDOs ██ |
|---|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

AGO 049

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| NAME OF INSTITUTION CSP-LAC | FACILITY/UNIT B-YMO | REASON FOR REPORT (circle)   INJURY   USE OF FORCE   (UNUSUAL OCCURRENCE) | ON THE JOB INJURY   PRE AD/SEG ADMISSION | DATE 8/11/15 |

| THIS SECTION FOR INMATE ONLY | NAME   LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME   LAST PaBon | FIRST ▉ | BADGE # ▉ | RANK/CLASS CO | ASSIGNMENT/RDOs B⁵ Floor #2 ▉ |
| THIS SECTION FOR VISITOR ONLY | NAME   LAST | FIRST | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE B-Program office | DATE/TIME OF OCCURRENCE 8/11/15  1745 | NAME OF WITNESS(ES) | | |
|---|---|---|---|---|
| TIME NOTIFIED 1756 | TIME SEEN 1756 | ESCORTED BY CO PaBon | MODE OF ARRIVAL (circle)   LITTER   WHEELCHAIR   AMBULATORY   ON SITE | AGE ▉   RACE ▉   SEX M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE
An inmate spit in my face and I hurt my (L) arm

| INJURIES FOUND?   YES / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Swollen Area | (16) |
| Other   Spit Mar | 17 |
| | 18 |
| | 19 |

| O.C. SPRAY EXPOSURE?   YES / (NO) | |
|---|---|
| DECONTAMINATED?   YES / NO | |
| Self-decontamination Instructions given?   YES / NO | |
| Refused decontamination?   YES / NO | |
| Q 15 min. checks | |
| Staff issued exposure packet?   YES / NO | |



| RN NOTIFIED/TIME   Sisson RN/E  1756 | PHYSICIAN NOTIFIED/TIME |
|---|---|
| TIME/DISPOSITION   1805 To Pioneer Health Service | |

| REPORT COMPLETED BY/TITLE   (PRINT AND SIGN)   Sisson RN | BADGE # ▉ | RDOs ▉ |
|---|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

AGO 050

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | | DATE |
|---|---|---|---|---|---|
| CSP LAC | TTA | INJURY / USE OF FORCE / UNUSUAL OCCURRENCE / ON THE JOB INJURY / PRE AD/SEG ADMISSION | | | 8/11/15 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME | LAST Villalobos | FIRST ███ | BADGE # ███ | RANK/CLASS Sgt | ASSIGNMENT/RDO B Sgt ███ |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE | |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) | | |
|---|---|---|---|---|
| B-program | 8/11/15 @ 1745 | c/o Pabon, c/o Castro | | |
| TIME NOTIFIED 1915 | TIME SEEN 1915 | ESCORTED BY self | MODE OF ARRIVAL *(circle)* AMBULATORY / LITTER / WHEELCHAIR / ON SITE | AGE ███ | RACE ███ | SEX Male |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

" I had an incident with I/m Baker. Suffered some injuries"

| INJURIES FOUND? (YES)/NO | |
|---|---|
| Abrasion/Scratch | (1) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |



| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES / (NO) |
| DECONTAMINATED? | YES / (NO) |
| Self-decontamination instructions given? | YES / (NO) |
| Refused decontamination? | YES / (NO) |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| I. Ibarra 1915 | ∅ |

TIME/DISPOSITION

Back to work @ 1920

| REPORT COMPLETED BY/TITLE   *(PRINT AND SIGN)* | BADGE # | RDOs |
|---|---|---|
| I. Ibarra RN ███ | ███ | |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

STATE OF CALIFORNIA

**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | | DATE |
|---|---|---|---|---|---|
| CSP-LAC | B-yard | USE OF FORCE   INJURY   (UNUSUAL OCCURRENCE)   ON THE JOB INJURY   PRE AD/SEG ADMISSION | | | 8/11/15 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST Baker | FIRST Timothy | CDC NUMBER K62174 | HOUSING LOC. B2-129 | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|

| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|---|

| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|---|
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES). |
|---|---|---|
| B yard | 8/11/15 1650 | C.O |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL *(circle)* | | AGE | RACE | SEX |
|---|---|---|---|---|---|---|---|
| 1755 | 1755 | C.O Tillman | AMBULATORY   LITTER   (WHEELCHAIR)   ON SITE | | 54 | BLK | M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

" I'm very agitated "

| INJURIES FOUND? | YES/NO | |
|---|---|---|
| Abrasion/Scratch | | 1 |
| Active Bleeding | | 2 |
| Broken Bone | | 3 |
| Bruise/Discolored Area | | 4 |
| Burn | | 5 |
| Dislocation | | 6 |
| Dried Blood | | 7 |
| Fresh Tattoo | | 8 |
| Cut/Laceration/Slash | | 9 |
| O.C. Spray Area | | 10 |
| Pain | | 11 |
| Protrusion | | 12 |
| Puncture | | 13 |
| Reddened Area | | 14 |
| Skin Flap | | 15 |
| Swollen Area | | 16 |
| Other | | 17 |
| | | 18 |
| | | 19 |

| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES/NO |
| DECONTAMINATED? | YES/NO |
| Self-decontamination instructions given? | YES/NO |
| Refused decontamination? | YES/NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES/NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| RN Ibarra | N/A |

TIME/DISPOSITION

1800    RTC

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| C Azeduro LVN | | |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   **DISTRIBUTION:**   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator *(only work related injury)*

AGO_052

# EXHIBIT

1) Plaintiffs MH-115 Evaluation

2) Plaitiffs Holding cell Logs
   No document of Plaintiff allegedly
   Banging his head up against the
   Holding Cage Door / window.

EXHIBIT: A - 2 pages

## RULES VIOLATION REPORT: MENTAL HEALTH ASSESSMENT REQUEST

**REVIEWING CUSTODY SUPERVISOR** MT/NCF

A CDC 115, Rules Violation Report (RVR), has been written on the following inmate, who requires a mental health assessment.

Inmate Name: BAKER                                              K-62174

RVR Log Number: B15-08-0066        Date of Violation: 8/11/15        Housing: FBD5-121L

Specific Act Charged: AGGRAVATED BATTERY ON A PEACE OFFICER

The inmate's current Mental Health Level of Care is: (check one)

☐ NOT IN MHSDS PROGRAM*   ☒ CCCMS   ☒ EOP   ☐ MHCB   ☐ DMH

*CCCMS AND NON-MHSDS PROGRAM PARTICIPANTS WILL BE REFERRED FOR A MENTAL HEALTH ASSESSMENT FOR BEHAVIOR THAT IS BIZARRE OR UNUSUAL FOR ANY INMATE, OR THAT IS UNCHARACTERISTIC FOR THIS INMATE.

Sent to Mental Health: 8/21/15 _____ By: M.ROSALES FACILITY B _____ / _____
                              Date                    Print Name                    Signature

Return this form to: M.ROSALES FACILITY B _____ *By: A.S.A.P _____ 9/1/15
                         Print Name                                          Date
                                                                      8/31

*(CCCMS and non-MHSDS, 5 working days; EOP/MHCB/DMH, 15 calendar days

### MENTAL HEALTH CLINICIAN

Conducted non-confidential interview: 8/25/15 _____ (Inmate informed of non-confidentiality).
                                          Date

1. CCCMS/NON-MHSDS only. Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate the need for the assignment of a Staff Assistant?   ☐ Yes   ☐ No

Explain "yes" response: N/A _____

_____

_____

2. In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the RVR?

☐ Yes   ☒ No   Explain "yes" response: _____

_____

_____

3. If the inmate is found guilty of the offense, are there any mental health factors that the hearing officer should consider in assessing the penalty?   ☐ Yes ☒ No   Explain "yes" response: _____

_____

_____

_____

| INSTITUTION: LAC | CLINICIAN NAME (Print) R. Gird, PSYD | SIGNATURE R. Gird | DATE 8/25/15 |
|---|---|---|---|
| RECEIVED BY | CUSTODY STAFF NAME (Print) | SIGNATURE | DATE |

DISTRIBUTION:
Original : Central File With Adjudicated RVR
Blue    : 115 Unit Health Record
Pink    : Inmate

### RULES VIOLATION REPORT:
### MENTAL HEALTH ASSESSMENT REQUEST

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

CDC # : K-62174                    Aug 21 15 28

NAME : BAKER

D.O.B :

CDCR 115-MH (Rev. 06/06)
STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS AND REHABILITATION

# HOLDING CELL LOG

DATE: 8/11/15          HOUSING UNIT: B2          HOLDING CELL #: RC INTAKE

NAME: BAKER          CDCR #: K62174          HOUSING: B2 129

PLACEMENT ORDERED BY: F. Villalobos _____ _____ Sergeant

                       PRINT NAME              SIGNATURE          TITLE

STAFF PLACING INMATE IN HOLDING CELL:   NAME: H. Tillman      SIGNATURE: H. 2—

HOLDING CELL SEARCHED BY:          NAME: H. Tillman      SIGNATURE: H. 2—

The inmate will be check every 15 minutes. The inmate will be offered access to water and toilet facilities at reasonable intervals not to exceed 1 hour.

| DURATION | TIME | NAME | SIGNATURE | DISPOSITION |
|---|---|---|---|---|
| START | 1815 | H. Tillman | H. 2— | SITTING |
| :15 | 1830 | H. Tillman | H. 2— | SITTING |
| :30 | 1845 | H. Tillman | H. 2— | GIVEN COPY OF 7219 |
| :45 | 1900 | H. Tillman | H. 2— | RESTRAINTS ADJUSTED |
| 1:00 | 1915 | H. Tillman | H. 2— | WATER/RESTROOM BREAK |
| 1:15 | 1930 | H. Tillman | H. 2— | TALKING |
| 1:30 | 1945 | H. Tillman | H. 2— | SITTING |
| 1:45 | 2000 | H. Tillman | H. 2— | SITTING / REST ROOM BREAK |
| 2:00 | 2015 | H. Tillman | H. 2— | INTERVIEWED BY WATCH COMMANDER |
| 2:15 | 2030 | H. Tillman | H. 2— | SITTING |
| 2:30 | 2045 | H. Tillman | H. 2— | TALKING / REFUSED RESTROOM |
| 2:45 | 2100 | H. Tillman | H. 2— | YELLING AT STAFF |
| 3:00 | 2115 | H. Tillman | H. 2— | SCREAMING AT STAFF |
| 3:15 | 2130 | H. Tillman | H. 2— | KICKING DOOR |
| 3:30 | 2145 | H. Tillman | H. 2— | WATER BREAK / REST ROOM |
| 3:45 | 2200 | H. Tillman | H. 2— | TALKING |
| 4:00 | 2215 | H. Tillman | H. 2— | ESCORTED TO CTC |

STAFF RELEASING INMATE FROM HOLDING CELL: NAME: H. Tillman      SIGNATURE: H. 2—

FINAL DISPOSITION: HOUSED: FABA-123L      ESCORTED BY: T. Merino/L. Williams      RELEASED TIME: 2215

SUPERVISOR SIGNATURE UPON RELEASE: F. Villalobos _____ _____

                                        PRINT              SIGNATURE          TITLE

MANAGER APPROVAL (IF TIME IN CELL EXCEEDS 4 HOURS): _____

                                        PRINT              SIGNATURE          TITLE

REASON FOR EXCEEDING TIME LIMIT: _____

3/17/2014

# EXHIBIT

1). Mobility Impaired vest Memo Stating that Im never supposed to prone out down on the Ground But Rather stand up & in place until an escort arrives to move me to A safer place where I can safely sit down.

EXHIBIT: <u>B, 4 Pages.</u>

State of California                                          Department of Corrections and Rehabilitation

# Memorandum

Date   :  February 25, 2014

To     :  Wardens
          Chief Executive Officers

Subject:  **MOBILITY IMPAIRED VESTS**

This memorandum establishes a statewide directive concerning the issuance of Mobility Impaired (MI) Vests for certain inmates with a mobility impairment, which renders them physically <u>unable</u> to get in a "seated" position on the ground during an emergency alarm.

All inmates are required to assume a "seated" position during an emergency alarm, and only those inmates who are physically <u>unable</u> to sit down on the ground will be issued a MI Vest.  Health care staff shall determine whether an inmate has a medical condition preventing them from sitting down on the ground during an emergency.  Since an inability to sit down may be a temporary condition following an injury or medical procedure, this directive is not limited to *Armstrong* Class members.

Only those inmates who cannot assume a seated position on the ground, as verified by a physician, are covered by this directive.  This directive will not include inmates who only require additional time to attain a seated position during an emergency.  The current use of hearing and vision impaired vests, as required pursuant to the *Armstrong* Remedial Plan, will remain unchanged; however, all existing mobility-related vest policies will adhere to these new guidelines.

It is the California Department of Corrections and Rehabilitation (CDCR) policy to provide access to programs, services, and activities for inmate/parolees with or without disabilities consistent with legitimate penological interest.  If, while attending these programs, services and activities, an alarm is sounded, it is necessary for all inmates to comply with existing alarm policy and procedures to demonstrate they are not participating in the emergency, impeding responding staff or posturing/preparing to join the emergency.

Inmates unable to assume a seated position on the ground, due to a medical condition, shall be issued a MI Vest so responding staff can easily recognize them during an emergency.  Inmates wearing a MI Vest are not required to attain a seated position; however, they are required to follow all staff instructions, including to maintain their location or move to another area during emergency situations.

The MI Vest will be yellow in color with the words Mobility Impaired on the back.  Ordering information for the MI Vests will be sent to the institutions.

Nothing in this directive is intended to override CDCR Use of Force policy as defined in the California Code of Regulations (CCR), Title 15, Section 3268.  Nor is it intended to replace current policy as outlined in the CDCR Alarm Response policy and training.  Inmates who are wearing their assigned MI Vest, but directly involved in an emergency situation, shall be subject to existing use of force policies.

Mobility Impaired Vests
Page 2

<u>Issuance</u>

- During health care screening at Receiving and Release, an inmate shall be issued a temporary MI Vest when health care staff determines one is a necessary precaution, pending a follow-up medical evaluation.

- Inmates notifying staff in writing (e.g., CDCR 7362, Health Care Services Request Form, and/or CDCR 1824, Reasonable Modification or Accommodation Request) that they cannot assume a seated position on the ground may be issued a temporary MI Vest as a precautionary measure.  This decision can be made during the face-to-face triage with nursing, pending a follow-up medical evaluation or via the Interim Accommodation Process that is included within the CDCR 1824 processing. Health Care staff responsible for issuing these temporary MI Vests shall be determined by local operating procedures.

- Generally, only those inmates that have been medically diagnosed with a condition that prevents them from assuming a seated position on the ground will be given MI Vests.  For individuals who are not using a wheelchair at all times, a MI Vest is necessary if the individual is unable to assume a seated position on the ground.  For individuals using wheelchairs outside of their cells, they will be expected to be seated in them during alarms.

## Permanent Functional Impairment (greater than six months)

| DPP Code | Equipment Usage and Function | MI Vest Decision Making |
|---|---|---|
| DPW | Full-time wheelchair user | Does not need MI Vest. |
| DPO | Intermittent Wheelchair user | MI Vest should be issued unless it is determined the individual is a full time wheelchair user. |
| DPM or DNM or not classified | Community Ambulatory with or without Assistive Devices | May need MI Vest. Special considerations: In cases where the inmate uses a walker with a seat, a MI Vest may be needed to allow custody to know if the inmate should use the seat of the walker instead of the ground. Inmates with severe orthopedic, neurologic or cardiopulmonary impairment may benefit from an MI Vest even if no assistive devices are required. |

Mobility Impaired Vests
Page 3

A Primary Care Physician may determine an inmate has a temporary need (less than six months) for a MI Vest due to a temporary medical condition. In this case, medical staff shall issue a CDCR 7410 or CDCR 128C, documenting the inmate patient's temporary authorization to possess the MI Vest, with the expiration date clearly identified.

The inmate shall be scheduled a follow-up appointment at or near the expiration date noted on the chrono for reevaluation of the inmate's temporary medical condition and the inmate's need for a MI Vest. If determined the temporary issue has been resolved, medical staff shall take possession of the MI Vest at that appointment.

- Full-time wheelchair user (DPW) inmates will not be issued a MI Vest as it is readily apparent to responding staff they are already in a restricted position. Intermittent wheelchair users (DPO) or inmates issued walkers with seats will be required to wear their MI Vest, if issued in accordance with this policy, anytime they are not seated in their wheelchair or walker.

- MI Vests will be purchased by Health Care Services and initially issued at no charge to the inmate. Except for normal wear, an inmate shall be charged for damage, repair, or replacement of the identifying vest. Issuance of a MI Vest (including expiration date, if applicable) will be entered into the Strategic Offender Managements System (SOMS) by staff as indicated in the local operating procedure.

- MI Vests shall not be confiscated from an inmate in possession of an expired vest chrono without health care involvement. Health care staff will review the inmate's health needs and confiscate the MI Vest if it is no longer determined to be medically necessary.

Inmate Responsibilities

- Those inmates issued a MI Vest, including intermittent wheelchair users (DPO) unable to assume a seated position on the ground when not in their wheelchair or walker with a seat, are required to possess their vest any time they are not in their cell/bed area.

- Inmates must notify health care staff when their chrono is about to expire and either obtain a new chrono authorizing continued use of the MI Vest or return the MI Vest to health care staff.

- Inmates who wear a MI Vest after health care staff have determined a MI Vest is not required will have their vest confiscated and will be subject to progressive discipline.

- Inmates who fail to wear their assigned MI Vest and fail to attain a seated position during an alarm will be subject to progressive discipline.

- Inmates must notify health care staff when their MI Vest is in need of replacement.

Mobility Impaired Vests
Page 4

- Inmates who lose/damage/destroy their MI Vest are responsible for the replacement cost. Inmates will not be charged for normal wear.

If you have any questions, please contact Vince Cullen, Assistant Project Manager, Class Action Management Unit, at (916) 322-2315.


M. D. STAINER
Director
Division of Adult Institutions

R. STEVEN THARRATT, MD, MPVM, FACP
Director of Health Care Operation
Statewide Chief Medical Executive

cc:  Associate Directors, Division of Adult Institutions
     M. Knowles, Class Action Management Unit
     V. Cullen, Class Action Management Unit
     T. Hirsig, Office of Legal Affairs
     J. Martinez, Office of Audits and Court Compliance

# EXHIBIT

Showing CDCRs LAC. state Prisons Operational Procedure OP#514 Regarding. Aggravated Battery on A Peace officer A Caustic Substance. Forced Testing of Inmates-Glassing. C/o A Castro C/o B. Pabon Wasn't decontaminated at any time during their evaluations and 7219 Injury Report. They were never spat on or Injured at any time ever.

EXHIBIT: C - 3 Pages

|  California Department of Corrections and Rehabilitation California State Prison Los Angeles County Operational Procedure #514 | TITLE: Forced Testing of Inmates-Gassing Assembly Bill 995 |
|---|---|
| | DEVELOPED: October 1999 |
| | REVISED: November 2014 |

**514.11**
**PURPOSE/OBJECTIVE**

The purpose of this procedure is to provide guidelines to ensure compliance in the forced testing of inmates who have participated in aggravated battery (gassing) against any correctional staff member.

The objective of this procedure is to outline a process by which the Chief Medical Executive (CME) or designee may authorize the forced testing.

**514.2**
**REFERENCES**

Penal Code, Section 4501.1

Assemble Bill No. 995

California Code of Regulations, Title 15, § 3268, Use of Force

**514.3**
**APPROVAL AND REVIEW**

The Warden must approve this procedure and all revisions prior to implementation.

The Associate Warden-Health Care Operations (AW-HCO) is responsible for the annual review of this procedure.

**514.4**
**RESPONSIBILITY**

The Warden has the overall responsibility for the administration of this procedure.

It is the responsibility of any officer or employee who is the victim of a gassing to report the incident immediately to the appropriate supervisor, and then to report to the Treatment Triage Area (TTA).

It is the responsibility of the TTA nurse to follow the established Post-Exposure Care Plan regarding the care of the exposed employee. The TTA nurse will also notify the Chief Executive Officer-Health Care (CEO-HC) or designee, which includes the Medical Officer of the Day (MOD), of the circumstances of the event. The TTA nurse will also provide a copy of the CDC-7219, Medical Reports of Injury or Unusual Occurrence, to the Infection Control Office upon disposition.



| California Department of Corrections and Rehabilitation California State Prison Los Angeles County Operational Procedure #514 | TITLE:   Forced Testing of Inmates-Gassing Assembly Bill 995 |
| --- | --- |
| | DEVELOPED:  October 1999 |
| | REVISED:       November 2014 |

It is the responsibility of the Facility Lieutenant to provide the CEO-HC/CME, or designee, with a copy of the CDC 837, Crime/Incident Report.

The CEO-HC/CME, or designee, which includes the MOD, at the time of the notification, will review the gassing incident. If he or she deems it medically necessary, an order will be given for the inmate to receive an examination. Examinations may include blood hepatitis and HIV testing at the time of the event, and periodically thereafter as determined to be medically necessary.

It is the responsibility of the supervisor of the exposed employee to send the employee to the TTA without delay, and to notify the Facility Lieutenant/Incident Commander.   During business hours, the Facility Lieutenant/Incident Commander will notify the Facility Captain.   During Non-business hours, the Facility Lieutenant/ Incident Commander will notify the Administrative Officer of the Day (AOD).

The facility supervisor will appoint unaffected staff members to escort the inmate to the designated testing area.  If the inmate refuses to be tested, the appropriate use of force will be utilized to complete the testing.

**514.5 DEFINITIONS**

Gassing- Intentionally placing or throwing, or causing to be placed or thrown on the person of another, any mixture of human excrement or other bodily fluids/substances.  Gassing is defined under the law as Aggravated Battery, a felony.

Gassing Incident- Any form of gassing or apparent gassing of any individual as defined above.

Gassing Victim- Any officer, employee, or non-confined individual in or at the institution who is the victim of a gassing incident.

**514.6 PROCEDURE**

The employee will immediately wash the effected area thoroughly with soap and water and notify their supervisor, providing all details of the incident.  The supervisor will notify the TTA nurse.

The TTA nurse shall receive the employee and takes the appropriate actions. The TTA nurse shall also notify the medical



| California Department of Corrections and Rehabilitation California State Prison Los Angeles County Operational Procedure #514 | TITLE:   Forced Testing of Inmates-Gassing Assembly Bill 995 |
| | DEVELOPED:  October 1999 |
| | REVISED:      November 2014 |

staff representative and inform him or her of the situation regarding the inmate and receive the necessary orders regarding inmate testing.

The inmate's questions will be answered and every effort will be made to elicit the inmate's consent and cooperation. Any medical staff so certified may perform the blood draw and skin testing. In the event of the inmate's refusal, reasonable force will be utilized to obtain the required samples.

**514.7 REPORTING REQUIREMENTS**

Should a controlled use of force be necessary to gain compliance with this procedure, the established use of force policy of videotaping and documenting on a CDC 837 will be followed. All staff members present will be identified. The Correctional Captain or AOD will be present during the entire procedure.

The TTA nurse will document all the events in the inmate's Medical File.

NOTE: ANY CHANGES TO THIS OPERATIONAL PROCEDURE WILL REQUIRE APPROVAL OF THE WARDEN AND CEO-HC.

_____
P. SHANK
Chief Executive Officer-Health Care
California State Prison-Los Angeles County

_____11/18/14_____
Date

_____
J. SOTO
Warden
California State Prison – Los Angeles County

_____11/19/14_____
Date

# EXHIBIT

1) Defendants Alleged 0 UnDisputed Facts.

2. See plaintiffs Disputed Facts to Defendants Undisputed Facts

EXHIBIT: D-10 Pages.

**UNDISPUTED FACTS**

| No. | Undisputed Facts | Supporting Evidence |
|-----|------------------|---------------------|
| 1 | At all times relevant to the allegations in the Complaint and during the original filing of this action, Plaintiff Baker was—and still is—a state inmate in the custody of the California Department of Corrections and Rehabilitation. | ECF No. 1 (Compl.); ECF No. 99 (Not. Change of Address). |
| 2 | Plaintiff is currently housed at Salinas Valley State Prison. | ECF No. 38. |
| 3 | On August 11, 2015, Plaintiff was involved in an incident for which he received a Rules Violation Report (RVR) for "aggravated battery on a peace officer (with a caustic substance)" while housed at California State Prison-Los Angeles County (LAC). | Compl. at 36; Compl. ¶ 3; Moseley Decl. Ex. B (RVR). |
| 4 | The Complaint alleges that on August 11, 2015, Defendants used excessive force on Plaintiff and were deliberately indifferent to his medical needs. | Compl. |
| 5 | On September 18, 2015, Plaintiff attended a disciplinary hearing on the RVR and was found guilty of the charge. | Moseley Decl. Ex. B; Baker Dep. 141:106 (attached as Ex. E to Grecea Decl.). |
| 6 | Plaintiff admits that a grievance procedure was available at the institution where the | Compl. at 2. |

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 92 of 126   Page ID
#:1453
Case 2:18-cv-02301-PA-GJS   Document 100-2   Filed 02/18/21   Page 3 of 12   Page ID
#:1084

| No. | Undisputed Facts | Supporting Evidence |
|---|---|---|
| | events related to his current complaint occurred. | |
| 7 | Plaintiff submitted one grievance, which was assigned log number LAC-S-15-04254. At his deposition, Plaintiff testified that this grievance is "the one" that challenged the RVR finding. | Moseley Decl. ¶¶ 7-9, Ex. B (Grievance); Grecea Decl. Exs. A (Interrogs.), C (Resp. to Interrogs.); Baker Dep. 140:13-141:6 (attached as Ex. E to Grecea Decl.). |
| 8 | No other grievances submitted by Plaintiff are related to the claims in this lawsuit. | Moseley Decl. ¶¶ 7-9; Grecea Decl. Decl. Exs. A (Interrogs.), C (Resp. to Interrogs.). |
| 9 | Plaintiff submitted grievance LAC-S-15-04254 to LAC's Appeals Office on October 17, 2015. | Moseley Decl. ¶ 7, Ex. B. |
| 10 | In grievance LAC-S-15-04254, Plaintiff challenged the disciplinary action taken against him following the incident on August 11, 2015. | Compl. at 12; Baker Dep. 141:1-6 (attached as Ex. E to Grecea Decl.); Moseley Decl. ¶¶ 7, 9, Ex. B (Grievance). |
| 11 | In grievance LAC-S-15-04254, Plaintiff demanded relief that included monetary compensation, an investigation, and that the RVR against him be dismissed. | Moseley Decl. Ex. B (Grievance). |

Case 2:18-cv-02301-PA-GJS   Document 100-2   Filed 02/18/21   Page 4 of 12   Page ID #:1085

| No. | Undisputed Facts | Supporting Evidence |
|---|---|---|
| 12 | Grievance LAC-S-15-04254 bypassed the First Level of Review and was accepted at the Second Level of Review on October 27, 2015, where it was classified as challenging a "disciplinary issue." | Moseley Decl. Ex. B (Second Level Response letter). |
| 13 | On December 10, 2015, in a four-page letter, LAC provided its Second Level of Review decision denying the grievance and instructed Plaintiff to seek further remedies at the Third Level of Review if he wished to pursue the grievance further. | Moseley Decl. ¶ 7, Ex. B (Second Level Response letter). |
| 14 | On December 22, 2015, the Third Level of Review (also known as the Office of Appeals (OOA)) received Plaintiff's appeal of the Second Level decision and assigned it log number 1507376. | Moseley Decl. ¶ 7, Ex. A (Third Level Tracking System). |
| 15 | On April 1, 2016, the OOA rejected the appeal for missing necessary documentation. | Moseley Decl. ¶ 8, Ex. C. |
| 16 | In its April 1, 2016 rejection letter, the OOA explained to Plaintiff that his appeal was missing (1) CDCR Form 115-MH (mental health assessment request); (2) CDCR Form 7219 (medical report of injury or unusual occurrence); and (3) the complete CDCR Form 837 (crime incident | Moseley Decl. ¶ 10, Ex. C. |

| No. | Undisputed Facts | Supporting Evidence |
|---|---|---|
| | report containing Parts A, B, and C), and was instructed to take the necessary corrective action to resubmit the appeal. | |
| 17 | On April 22, 2016, Plaintiff resubmitted the appeal to the OOA with the same attachments submitted with the original appeal, as well as the following additional attachments requested in the April 1, 2016 rejection letter: the CDCR Form 115-MH (mental health assessment request), four CDCR Form 7219s (medical report of injury or unusual occurrence), and portions of Part A and Part C of the CDCR Form 837 (crime incident report).  Plaintiff still did not provide pages one and two of Part A of the CDCR Form 837. | Moseley Decl. ¶ 9, Ex. D. |
| 18 | Along with the resubmission of the appeal on April 22, 2016, Plaintiff submitted a separate CDCR Form 22 requesting that the OOA expedite its review of the appeal. | Moseley Decl. ¶ 12, Ex. D. |
| 19 | On April 27, 2016, the OOA responded to the Form 22 and informed Plaintiff that the resubmission of the appeal was received and would be processed. | Moseley Decl. fn. 1, Ex. E. |

| No. | Undisputed Facts | Supporting Evidence |
|-----|------------------|---------------------|
| 20 | On May 6, 2016, Plaintiff submitted a follow-up Form 22 to the OOA, along with loose documents. | Moseley Decl. fn. 1, Ex. F. |
| 21 | On May 9, 2016, the OOA responded to the Form 22 by returning the loose documents to Plaintiff and informing him that his appeal was in the screening process. | Moseley Decl. fn. 1, Ex. F. |
| 22 | On May 25, 2016, Plaintiff submitted another follow-up Form 22 to the OOA. | Moseley Decl. fn. 1, Ex. G. |
| 23 | On May 25, 2016, the OOA responded to the Form 22 by informing Plaintiff that his appeal processed for screening and that he should refrain from submitting loose documents. | Moseley Decl. fn. 1, Ex. G. |
| 24 | On June 2, 2016, the OOA rejected the appeal resubmission for missing necessary documentation and returned all the documents (including the appeal) to him. | Moseley Decl. ¶ 10, Ex. J. |
| 25 | The OOA's June 2, 2016 rejection letter explained to Plaintiff—in verbiage that was intended for its May 25, 2016 letter, 2016 letter—that he had repeatedly provided loose documents in support of the appeal resubmission, which was not permitted. | Moseley Decl. ¶ 10, Ex. J. |
| 26 | On July 20, 2016, Plaintiff submitted another follow-up Form 22 to the OOA. | Moseley Decl. ¶ 16, Ex. H. |

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 96 of 126   Page ID
#:1457
Case 2:18-cv-02301-PA-GJS   Document 100-2   Filed 02/18/21   Page 7 of 12   Page ID
#:1088

| No. | Undisputed Facts | Supporting Evidence |
|-----|------------------|---------------------|
| 27 | On July 25, 2016, the OOA responded to Plaintiff, urging him to familiarize himself with applicable regulations and seek assistance from his correctional counselor or the LAC's Appeals Coordinator. | Moseley Decl. ¶ 16, Ex. H. |
| 28 | On August 17, 2016, Plaintiff submitted his last follow-up Form 22 to the OOA. | Moseley Decl. fn. 1, Ex. I. |
| 29 | On August 17, 2016, the OOA issued a thorough response to Plaintiff in which it summarized the reasons for rejecting the Second Level decision on grievance LAC-S-15-04254 twice, as well as a chronology of all actions taken by the OOA on that appeal. | Moseley Decl. ¶ 11, Ex. K. |
| 30 | The OOA's August 17, 2016 response reiterated that the appeal of grievance LAC-S-15-04254 was rejected for missing pages one and two of Part A of the CDCR 837 incident report. | Moseley Decl. ¶ 11, Ex. K. |
| 31 | The OOA's August 17, 2016 response also indicated that Plaintiff had not resubmitted the appeal back for reconsideration with the requested documents, and that the appeal was not exhausted at the Third Level of Review. | Moseley Decl. ¶ 11, Ex. K. |

| No. | Undisputed Facts | Supporting Evidence |
|-----|------------------|---------------------|
| 32 | The OOA never accepted the appeal of the Second Level's decision on grievance LAC-S-15-04254 and did not provide a Third Level decision. | Baker Dep. 153:16-18 (attached as Ex. E to Grecea Decl.); Moseley Decl. ¶ 11, Exs. A (Third Level Tracking System), K. |
| 33 | In the Complaint, Plaintiff alleges the grievance procedure was completed, but also contends that remedies were made "effectively unavailable." | Compl. at 2. |
| 34 | At deposition, Plaintiff clarified his belief that remedies were made unavailable to him because the OOA rejected his appeal and he was left without recourse, having no way to "go forward." | Baker Dep. 154:25-157:3 (attached as Ex. E to Grecea Decl.). |
| 35 | At deposition, Plaintiff admitted to using the grievance process at LAC "all the time." | Baker Dep. 142:17-25 (attached as Ex. E to Grecea Decl.); *see also* Grecea Decl. Exs. B (Req. Admis.), D (Resp. Req. Admis.). |
| 36 | At deposition, Plaintiff admitted to having access to the grievance system at LAC both in general population, as well as when he was housed in administrative segregation. | Baker Dep. 143:2-9 (attached as Ex. E to Grecea Decl.). |

| No. | Undisputed Facts | Supporting Evidence |
|---|---|---|
| 37 | At deposition, Plaintiff admitted to knowing he is required to exhaust grievances before filing lawsuits. | Baker Dep. 142:10-16 (attached as Ex. E to Grecea Decl. Ex.). |
| 38 | At deposition, Plaintiff also admitted that his appeal of the Second Level decision on grievance LAC-S-15-04254 was rejected at the Third Level of Review and he never sought to challenge its rejection, despite knowing he could do so. | Baker Dep. 153:16 – 154:4; 157:4-12 (attached as Ex. E to Grecea Decl.). |
| 39 | In discovery responses, Plaintiff admits that, other than grievance LAC-S-15-04254, he did not file any other grievances related to the claims in the Complaint. | Grecea Decl. Ex. A (Interrogs.), C (Resp. to Interrogs.). |
| 40 | During the time period when Plaintiff appealed grievance LAC-S-15-04254 to the Third Level of Review, Plaintiff was able to obtain final-level review of several other appeals. | Moseley Decl. Ex. A. |

///
///
///
///
///
///
///

9

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 99 of 126   Page ID
#:1460
Case 2:18-cv-02301-PA-GJS   Document 100-2   Filed 02/18/21   Page 10 of 12   Page ID
#:1091

## UNDISPUTED CONCLUSIONS OF LAW

| No. | Undisputed Conclusion of Law | Supporting Evidence |
|---|---|---|
| 1 | An inmate under CDCR's jurisdiction, such as Plaintiff, may appeal any policy, decision, action, condition, or mission by CDCR or CDCR staff that has a material adverse effect upon the inmate's health, safety, or welfare. | Cal. Code Regs., tit. 15 § 3084.1(a). |
| 2 | To exhaust this available administrative-grievance process, which is governed and described by Title 15 of the California Code of Regulations, an inmate must complete (or be permitted to bypass) three levels of formal administrative review. | Cal. Code Regs., tit. 15 §§ 3084 *et seq.* |
| 3 | Upon receipt, the Appeals Coordinator makes a determination whether the appeal has been properly submitted, or must be rejected or cancelled because of errors, omissions, duplication of a prior appeal, presentation of multiple, unrelated issues, or other violations of the regulations. | Cal. Code Regs., tit. 15, §§ 3084.5(b), 3084.6. |
| 4 | If the appeal is accepted for review, the First formal level of review is conducted by the division head or his or her designee. If the inmate is not satisfied with the first formal level response, he or she may submit | Cal. Code Regs., tit. 15 §§ 3084.2, 3084.7. |

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 100 of 126   Page ID
#:1461
Case 2:18-cv-02301-PA-GJS   Document 100-2   Filed 02/18/21   Page 11 of 12   Page ID
#:1092

| No. | Undisputed Conclusion of Law | Supporting Evidence |
|-----|------------------------------|---------------------|
|  | the appeal for a Second Level of Review. The Second Level of Review is conducted by the hiring authority or his or her designee.  If the inmate is not satisfied with the Second Level response, he or she can elevate the appeal to the Third Level of Review, which is conducted by the Office of Appeals (OOA). |  |
| 5 | CDCR's administrative-grievance process is deemed exhausted as to the allegations and claims asserted in an inmate's appeal when a decision on the appeal is rendered at the Third and final Level of Review by the OOA Chief. | Cal. Code Regs., tit. 15 §§ 3084.1(b), 3084.7(d)(3). |

Dated:  February 18, 2021

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
DEBORAH B. WADLEIGH
Supervising Deputy Attorney General

*/s/ Neculai Grecea*
NECULAI GRECEA
Deputy Attorney General
*Attorneys for Defendants*
*F. Villalobos, A. Castro, R. Pabon,*
*and B. Pabon*

LA2018501454
63887896.docx

# EXHIBIT

1) Defendants Deposition Documents Reflecting what plaintiff stated under oath.

EXHIBIT: <u>E - 11 pages</u>

1             IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4    TIMOTHY RAY BAKER,                    )
                                           )
5          Plaintiff,                      )
                                           )
6             vs.                          ) CASE NO. 2:18-CV-02301-PA (GJS)
                                           )
7    F. VILLALOBOS, et al,                 )
                                           )
8          Defendants.                     )
     _____      )

9

10              DEPOSITION OF TIMOTHY R. BAKER

11              Monday, December 7, 2020

12                 At   9:00 a.m.

13              At Remote Proceeding

14               Las Vegas, Nevada

15

16

17

18

19

20

21

22

23    JOB NO. 4351794

24    REPORTED BY:  SHIFRA MOSCOVITZ, CCR NO. 938

25    PAGES 1 - 222

                                              Page 1

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 103 of 126   Page ID
#:1464
Case 2:18-cv-02301-PA-GJS   Document 100-4   Filed 02/18/21   Page 25 of 36   Page ID
#:1291

```
 1       APPEARANCES:

 2       For Defendants:

 3                         NECULAI GRECEA, ESQ.

                          ASHA CLOVER JAMESON, ESQ.

 4                         KANDICE H. JUNG, ESQ.

                          300 South Spring Street

 5                         Suite 1702

                          LOS ANGELES, CALIFORNIA 90013

 6                         (213)269-6443

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 2

1    such date, signed off on this.  He seen the

2    pictures.  That's all I see, and then when he gave

3    me that incident packet it had the 115, the

4    disposition, and evidence, you know what 837 packet

5    is, right?

6         Q.   Yes.

7         A.   The crime incident, the crime incident

8    packet.  He showed me all that stuff and I had to

9    sign off on it and he left.  I filed the 602

10   immediately after that.  There is some gentleman

11   named Fordham, CC2, came and interviewed me at the

12   cell, gave me another packet of stuff.

13        Q.   Mr. Baker, let me just back up a little

14   bit for the disciplinary hearing.  So you said that

15   you were found guilty, but because of some time

16   constraint violations, you didn't actually lose any

17   good time credits, correct?

18        A.   Right, they assessed me, 90 days credit, I

19   think it was for 90 days recreational or something

20   or another, telephone, packages, canteen.  They took

21   those privileges, but I don't think I, I don't

22   recall getting a credit forfeiture.  I really don't

23   know to this day whether I did or not.  I know I got

24   a total of 36 points for that write up.  I remember

25   that.

Page 140

1    Q.   Right after that, Mr. Baker, you filed a

2    grievance, administrative grievance related to that

3    disciplinary hearing, correct?

4    A.   I did.

5    Q.   And is that grievance LAC-S-15-04254?

6    A.   That's the one.

7    Q.   All right.  And if I represented to you

8    that you filed that grievance sometime around

9    October of 2015, would that be accurate?

10   A.   If you say it is, I mean I don't have it

11   hear, so I can't really say definitively, if you say

12   it is, it is.

13   Q.   Okay.  But that's, I mean we are talking

14   about, it sounds like we are talking about the same,

15   right, that's the one?

16   A.   I know the law, but I don't know the exact

17   date I filed it.

18   Q.   Okay.  All right, no worries.  I mean

19   that's, the date on it is what it is.  So I just

20   wanted to make sure that we have the common

21   understanding that we are talking about the same

22   grievance.

23   A.   Yes.

24   Q.   So was it your understanding that you

25   needed to file that grievance in order to exhaust

Page 141

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 106 of 126   Page ID
#:1467
Case 2:18-cv-02301-PA-GJS   Document 100-4   Filed 02/18/21   Page 28 of 36   Page ID
#:1294

1    your administrative remedies before bringing a case

2    in federal court?

3        A.    Yes, I was told if you follow me at the

4    second level, Fordham, CC2 Fordham, I remember to

5    this day, he went beyond the time the second level

6    decision.  So I had to scramble and get it the to

7    the third level appeal in order to be in compliance

8    with time constraints.  I got it in on time and

9    explained to them that it was given to me late.

10       Q.    Mr. Baker, sorry to interrupt.  I am

11   getting there, because I want to get there, I think

12   that's important to know.  And I want to discuss

13   that with you, but for purposes of just this

14   question, I wanted to, it was, did you know that you

15   have to exhaust in order to file a lawsuit?

16       A.    Yes, I knew that.

17       Q.    And you have used this administrative

18   grievance process before during your time in prison,

19   correct?

20       A.    I use it all the time.

21       Q.    All right.  When you were at Lancaster

22   about how many grievances do you say you filed in

23   that prison alone, if you can remember?

24       A.    You said it was 22.  I said it was 17,

25   that I could account for, and I think I submitted

                                          Page 142

1    that.

2         Q.    And when you did those other grievances in

3    the past, you did some when you were housed in

4    general population, right?

5         A.    Right.

6         Q.    And did you also have access to the

7    grievance system when you were in administrative

8    segregation?

9         A.    Yes, I did.

10        Q.    Can you tell me, because I am not so

11   familiar with this.  When you are in general

12   population, how does one go about obtaining the

13   actual form, the grievance, the 602?

14        A.    That's the floor officer, there is a

15   podium, they use it behind the desk, or in an office

16   somewhere in a secluded area, we just ask for 602

17   appeal.

18        Q.    I understand.  And how do you go about

19   sending that grievance to the appeals office?

20        A.    Well, I don't file no more appeal usually,

21   I file misconduct allegations, that would be heard

22   within 14 days, sometimes sooner depends on when the

23   appeals court issues you a number and have it

24   reviewed.  So I don't know when the last time I

25   filed a 602 appeal.

                                        Page 143

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 108 of 126   Page ID
#:1469
Case 2:18-cv-02301-PA-GJS   Document 100-4   Filed 02/18/21   Page 30 of 36   Page ID
#:1296

1      Q.   Okay.  Let me see if I can refresh your

2    recollection.  Do you recall this grievance

3    challenging the disciplinary decision at the

4    hearing?

5      A.   Yes, I do.

6      Q.   And do you recall asking that rules

7    violation report for aggravated battery on police

8    officer be dismissed from your prison C file?

9      A.   Yes, I do.

10     Q.   Okay.  So was that granted at the second

11   level?

12     A.   No, it wasn't.

13     Q.   And that is why you then proceeded to take

14   it to the third level, correct?

15     A.   Right, yes.

16     Q.   All right.  Now, at the third level, it

17   was rejected, correct?

18     A.   Yes, sir.

19     Q.   And as far as you understand, when a

20   grievance is rejected, that means that it is not

21   accepted for review, correct?

22     A.   I don't think that's exactly actually

23   true.  That means you can challenge a rejected

24   appeal that warranted it being accepted for review

25   if it's rejected, if you challenge the rejection,

Page 153

Case 2:18-cv-02301-PA-GJS   Document 100-4   Filed 02/18/21   Page 31 of 36   Page ID #:1297

```
 1    then you could proceed forward.

 2         Q.   In this instance, did you challenge the

 3    rejection of this grievance?

 4         A.   No, because the first instance I was told

 5    that I didn't have my mental health 115 record.

 6    That I was also told that I didn't have my, I think

 7    it was the 7219 or something or other.  I think it

 8    was three documents that I said, they said I didn't

 9    have.  And I am telling them, yes, I did have them

10    and I submitted them.  So what happened to them, I

11    don't know, but I remitted them along with

12    additional documents that I got from Fordham, the

13    CC2, when I got the appeals back at the second level

14    he gave me all the documents, 837, and I submitted

15    to the third level of appeals, that was the second

16    time.  The first time he said I didn't submit them

17    and I said, yes I did.  So they said no, the appeal

18    is rejected.  Because I have to submit all documents

19    in one submission.  And I am telling them, I know I

20    already submitted these documents.  So what I did, I

21    went to the counselor and tried get it pulled out of

22    my CFO, and it's not there.  So I don't know what I

23    should tell you about that, but I did what I was

24    allowed to do, period.

25         Q.   Mr. Baker, in your complaint you indicate
```

Page 154

Case 2:18-cv-02301-PA-GJS   Document 100-4   Filed 02/18/21   Page 32 of 36   Page ID
#:1298

1    that you recall there is some boxes you didn't

2    check.  You indicated the grievance procedure was

3    completed.  What did you mean by that by the

4    grievance procedure being completed?

5         A.   In my appeals complaint?

6         Q.   Correct.

7         A.   Yes, because to me it was completed.

8    There was a citation that I read, I think it's Volvo

9    versus Brown, where it says, once you get a

10   disposition on an appeal and they refuse to let you

11   exhaust on those grounds, that that's seemed

12   exhausted with, and that's exactly, I quoted also

13   Albino versus Vodka, and I quoted Timber versus

14   Sack.  They made it unavailable, they gave me no

15   other recourse, they didn't say I could go forward.

16   They said it was rejected.  So by that being

17   rejected, there was no other recourse, even if I had

18   to file another appeal to challenge the rejection,

19   time constraints would have applied.  I think time

20   constraints would have been the factor, and that

21   would have been denied on those grounds.  If I

22   admitted that one, time constraints would have been

23   effected again, I would have been denied on those

24   grounds.  So my administrative made them available

25   based on no citations, and based on their decision I

Page 155

Case 2:18-cv-02301-PA-GJS  Document 106  Filed 03/22/21  Page 111 of 126  Page ID
#:1472
Case 2:18-cv-02301-PA-GJS  Document 100-4  Filed 02/18/21  Page 33 of 36  Page ID
#:1299

1    had no other recourse.  What was I suppose to do.

2    And then they told me if you submit them again we

3    are going to confiscate them.  So that concluded my

4    administrative right there, I have no remedies right

5    there, because if I submitted them, they were going

6    to throw them away.  What was I suppose to do, keep

7    fighting these people when they already made their

8    decision.  No, it doesn't work that away.

9         Q.   So I think I understand what you are

10   saying.  So you are saying yes, I admit I didn't

11   exhaust the grievance by obtaining a final level

12   decision on it, but I didn't do that because

13   remedies were made effectively unavailable, is that

14   an accurate statement?

15        A.   Exactly, once they rejected it, doesn't

16   have to be no other recourse because a rejection

17   means you got one or two things to do.  Either you

18   accept the rejection or you filed another grievance,

19   another appeal to challenge the rejection, not the

20   appeal itself, just a rejection notice.  You have to

21   file another grievance saying you challenge the

22   rejection notice predicated on this, this, and this.

23   Not challenging what the original appeal has

24   surmised, you can't challenge a rejection based on

25   that original.  That's a moot issue, it's no longer

                                        Page 156

Case 2:18-cv-02301-PA-GJS   Document 106   Filed 03/22/21   Page 112 of 126   Page ID
#:1473
Case 2:18-cv-02301-PA-GJS   Document 100-4   Filed 02/18/21   Page 34 of 36   Page ID
#:1300

1    about the original appeal it's about the rejection

2    notice.  So you have to challenge the rejection in

3    order to, in order to get to moving forward.

4        Q.   Did you know at that time, Mr. Baker, when

5    they rejected this grievance at the third level, did

6    you know that you could challenge the rejection?

7        A.   Once I got the appeal back, once I got the

8    original appeal back, it said that on the cover

9    sheet, it said I can challenge the rejection, but I

10   have to file a new appeal.

11       Q.   And did you do that?

12       A.   No, what I did, I submitted documents that

13   I had, that I had already submitted.  I told them

14   no, because I disagree with this decision, this is

15   why and I explained to them, this is why I am

16   resubmitting this appeal, and they rejected it

17   again.  So that was the end of that, that exhausted

18   my remedy.  I felt like I couldn't pursue it, I was

19   asking him to amend the decision, is what I am

20   asking him to do.  They wouldn't allow me that.

21   They wouldn't do that.  They just stuck on the

22   rejection.  I filed another appeal to challenge the

23   rejection.  Now, if I filed another appeal to

24   challenge the rejection, that's only going to be in

25   lieu of the original appeal.

Page 157

# EXHIBIT

EXHIBIT: F - 10 Pages.

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 02/16/2016        **Date IAC Received 1824:** 2/9/2016        **1824 Log Number:** SAC-H-16-00591

**Inmate's Name:** BAKER        **CDCR #:** K62174        **Housing:** CF4-123

**RAP Staff Present:** ADA Coordinator T. Tyler, **Custody Appeals Coordinator** C. Burnett, **Doctor Sahota, Health Care Appeals Coordinator** J. Kelley, **Psychologist** B. Rojas, **Principal of Education** D. Hamad, **Health Care Analyst** B. Johns,   Scribe M. Brown

**Summary of Inmate's 1824 Request:** He was assaulted by LAC staff on 8/11/15 that resulted in macular degeneration and a detached retina in his right eye. He is losing his vision and he has light sensitivity and flashing dot like lights in his right eye.

---

**FINAL RESPONSE:**

**RAP is able to render a final decision on the following:** You were last seen by Ophthalmology on 11/18/2016, where bifocals and transition lenses were prescribed for your headaches.

**Response:** Disapprove. Current vision accommodation of prescription eye glasses and readers are sufficient.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

_____        _____        **Date sent to inmate:** 3/4/16
ADA Coordinator/Designee                Signature

State of California                                                                                      Department of Corrections and Rehabilitation

## REASONABLE ACCOMMODATION REQUEST

CDCR 1824 (rev: ?/2014)

| INSTITUTION (staff use only): CSP-SAC | EC? Ⓨ N | LOG NUMBER (staff use only): SAC-H-16-00591 |
|---|---|---|

Date Received by Staff (staff use only):

2016 FEB -9 AM10: 13

### * * * TALK TO STAFF IF YOU HAVE AN EMERGENCY * * *

<u>Do not</u> use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDCR 7362 or a CDCR 602-HC.

| INMATE'S NAME (Print) Timothy R. Baker | CDCR NUMBER #K62174 | ASSIGNMENT Unassigned | HOUSING CF4-123 |
|---|---|---|---|

INSTRUCTIONS

- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service, or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response. <u>Do not</u> use an 1824 to request a response for a group of inmates. If you have received an 1824 decision that you disagree with, submit an appeal (CDCR 602, or 602-HC if disagreeing with a medical diagnosis/treatment decision).

WHAT CAN'T YOU DO / WHAT IS THE PROBLEM: I Cant see very well. Im being denied adequate Medical Treatment. I was forcefully head slammed at CSP-LAC on 8-11-2015. By means of my head being slammed against A window/Floor By Sgt. F.Villalobos & C/o R.Pabon. Excessive Force

WHY CAN'T YOU DO IT: I Suffer from Macular Degeneration & Detached Retina in my Right Eye due to Blunt Force Trauma on 8-11-15. CSP-LAC. Im losing my vision. Ive got light sensitivity Flashing Dot like lights on my Right side of my eye

WHAT DO YOU NEED: I Need to see an outside opthalmalogist Retinal Specialist. For Continued Eye Care Treatments. It was stopped due to a transfer to Here CSP-SAC on Dec 23, 2015 I was prescribed Distance Dark Grey Tinted Sunglasses And Reading Glasses & Now Bifocals with transitions. I Need my Sunglasses/Eye Glasses Magnifying Glasses And Medical I.m.P CHRONO

Which of the following best describes your disability that caused you to file this request:

- ☐ Difficulty walking or getting around
- ☒ Difficulty seeing
- ☐ Difficulty hearing
- ☐ Difficulty talking
- ☐ On kidney dialysis
- ☐ Difficulty using arms/hands
- ☒ Difficulty learning
- ☒ Difficulty thinking and understanding
- ☒ Mental impairment
- ☒ Other Disability (briefly describe): DNM / MENTAL HEALTH

DO YOU HAVE ANY DOCUMENTS THAT DESCRIBE YOUR DISABILITY?   Yes ☒   No ☐   Not Sure ☐

(List and attach documents if available, including: 1845, 7410, 128-C): Golden State Eye Diagnoses Dr.Khaled A Tawansy. MD.  Treatments Consultations

I understand staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| Timothy R. Baker | February 18, 2016 |
|---|---|
| INMATE'S SIGNATURE | DATE SIGNED |

Assistance completing this form provided by: _____ _____ _____

| | Last Name | First Name | Signature |

| ☐ IAP is not required as the CDCR 1824 contains no disability access or discrimination issues. | _____ Person making determination | _____ Title |
|---|---|---|

GOLDEN STATE EYE

K 62174

_____ Figueroa St. #200, Los Angeles, CA 90041   □ 125 N. Raymond Ave #312, Pa_____, CA 91103
□ 3628 E. Imperial Hwy #401, Lynwood, CA 90262   □ 3001 Tower Way #150, Bakersfield, CA 93309

**Tech:**
**CC** follow up p̄ Blunt Trauma (OD)

**HPI** Flashes of light OD, Floats, Blurring of vise

∅ Pain, ∅ redness, ∅ dischg

**Systemic Hx**   **Ocular Hx**
D.M. 8ys
HTN

**Trauma Hx**   **Family Hx**
Blunt Tra
OD

| Ht | Wt | BMI | BP | P | A1C | Cr |
|---|---|---|---|---|---|---|
| MS | | Mood | Dvlp | | ROS (+) | |

WRx

**Job:**
**Tobacco:**
**Habits:**
**Nutrition:**

**Ocular Meds**
∅

VA     OD 20/ 100    PH
(sc/cc) OS 20/ 80     PH
VF

**Pupils** OD 3.2 R RA
        OS 3.2 R RA   ∅ APD
        Sr Ran Sh

**Systemic Meds**
chr ASA

OD +0.50        20/80
OS +0.75 −0.50 x 120
                20/50

**Alignment** □ ortho
**Motility** □ full
**IOP** OD 14' 13 OS

**Dilated** OD OS OU @ ___
(M1%, N2.5%, C1%, A1%, CM, Combo)

ASA 81mg
Anticoag
Allergies

**External Exam**
OD OS
□ □  Orbit
□ □  Lids
□ □  Lacrimal
□ □  Lashes

**Slit Lamp Exam**
OD OS
□ □  Conj
□ □  Cornea
□ □  AC
□ □  Iris
□ □  Lens
□ □  Vitreous

**Extended Fundoscopy**

OD

2 C/D 2
PHNL

OS

**OD Impression**

INMATE SUBMITTED

**OS Impression**

**A/P** _____
Post Blunt ∅ 10NM
2ndr injury
_____

exam/exam full
time
→ med to 30
F/U 1 month

**Return in** □ D W M Y □ OCT (Ant / Glau / Ret ) or B-Scan on arrival   **Date** _____ **By:** KHALED TAWANSY MD

□ Risk/ benefits discussed, including but not limited to infection, bleeding, blindness, glaucoma, retinal detachment, pain, and loss of sight. All questions answered, ___ Samples.

**Name** Baker, Timothy   Frances, FNP   **DOB** 12/28/00   **Sex:** M/F  **Date** 10 7.15 OCT 07 2015
                Nurse Practitioner - LAC                                   Confidential Saved 2015-11-09 11:21:43.2

K62174

**GOLDEN STATE EYE**

☐ _____ Figueroa St. #200, Los Angeles, CA 90041   ☐ 125 N. Raymond Ave #212, Pa. _____ 91103
☐ 8920 E. Imperial Hwy #301, Lynwood, CA 90262   ☐ 3001 Tower Way #150, Bakersfield, CA 93309

Tech: _____
CC: F/U follow up trauma / Drusen OD

Systemic Hx
#DM
Nos: 9cy
yesterday

Ocular Hx
Ø

HPI: 44 yr old OT doing well O/O OD very tight
sensitive OD 70S Ⓡredness Ⓡ tearing
early in A.M. Ⓡ light flashes OD

Trauma Hx
Head
trauma

Family Hx
strong for
Hx of Coats

| Ht | Wt | BMI | BP | P | A1C | Cr |
|----|----|-----|----|----|-----|----|
| MS | | Mood | | Dvlp | | |
| WRx | | Mood | | | | |

ROS (+)

Job:
Tobacco:
Habits:
Nutrition:

Ocular Meds
Techs PRN

Systemic Meds
Atenolol, Losartan
Tylenol
Amlodipine
Metformin
Insulin
PRN

ASA
Anticoag
Allergies

| VA | OD 20/100 PH NI |
| SCCC | OS 20/80 PH NI± |
| VF | |

Pupils OD
OS            +/- APD

Sz Rxn Sh
Alignment ☐ ortho
Motility ☐ full
IOP OD #DMC 15 / 14 OS
Dilated OD OS OU a/c 622
(MYD, PM5x, C114, A1%, CM, Combo)

**External Exam**
OD OS
☐ ☐ Orbit
☐ ☐ Lids
☐ ☐ Lacrimal
☐ ☐ Lashes

**Slit Lamp Exam**
OD OS
☐ ☐ Conj
☐ ☐ Cornea
☐ ☐ AC
☐ ☐ Iris
☐ ☐ Lens
☐ ☐ Vitreous

+1 cell

A. SWAB, D.O.
Staff Physician
CSP-Los Angeles County

**INMATE SUBMITTED**

9/23/15

**Extended Fundoscopy**

OD          OS

-2 C/D -2



OS Impression
Normal / bare

CSP-LAC HC Records - Receive

SEP 2 3 2015

A/P   Blunt Trauma OD          loctine Re OID
Incomplete PVD OD          Sangbone full time

☐ Risk/ benefits discussed, including but not limited to infection, bleeding, blindness, glaucoma, retinal detachment, pain, and loss of eye. Questions answered. ☐ Samples.
Return in ☐ D W M Y ☐ OCT (Ant / Glau / Ret ) or B-Scan on arrival   Date _____ By: KHALED TAWANSY MD _____

Name Baker, Timothy   DOB 12/08/00   Sex: M/F   Date Saved: _____

*Name: Baker, Timothy           K62174          Date of Birth: 12/28/60

SLE/PSLE/PLE:                    OD    OS        Dilate: OD OS OU@   (M5% N2.5% CN% CM combo)
Lids                                            Fundus Exam:        OD    OS
Conjuctiva (Bulbar/Palbebral)   ☐     ☐         Optic Disc
Cornea (Epi/Stro/Endo/Tear)     ☐     ☐         (Size/C/D/Appearance/Nerve Fiber)   ☐    ☐
Ant Chamber (Depth/Cell/Flare)  ☐     ☐         Retina
Iris                            ☐     ☐         (Macula/Vessels/Periphery/Vitreous)   ☐    ☐
Lens (Cl/Ant/Post Cap/Cor/Nuc)  ☐     ☐         See extended opthalmoscopy              ☐

ARx: OD _____  Crx: OD _____
(wet)  OS _____         OS _____

EXTENDED OPTHALMOSCOPY:
OD                              OS



0.3 0.2

Drusen

A. SWABY, D.O.
Staff Physician
CSP-Los Angeles County        9/9/15

Impression:                     Plan:
1. S/P Blunt Trauma             1. prednisolone acetate @2D (OD)
2.                              2.
3. Drusen (OD)                  3.
4.                              4. follow up
5.                              5.

Dictated/Phone conversation/ records faxed

KHALED A. TAWANSY, M.D.
CSP-LAC HC Records Received

SEP 10 2015

Return ___2___ Days (Wks) Mos Yrs
Appointment: _____
Dr Tawansy college for

Confidential Baker 2015-11-09T14:21:45Z

Name:    **BAKER, TIMOTHY**

ID:      CZMI1752360722          Exam Date:    9/9/2015
DOB:     12/28/1960              Exam Time:    7:58 AM
Gender:  Male                    Technician:   Operator, Cirrus
Doctor:                          Signal Strength:  8/10


 

A. SWABY, D.O.
Staff Physician
CSP-Los Angeles County

**GOLDEN STATE EYE**

ZEISS

---

## Macula Thickness : Macular Cube 512x128     OD ●    ○ OS



Overlay: ILM - RPE  Transparency: 50 %
**High-definition mode**



ILM-RPE Thickness (µm)



Fovea: Fovea not found

 





ILM - RPE



ILM

RPE

Distribution
of Normals
99%
95%
5%
1%





| | Central Subfield Thickness (µm) | Cube Volume (mm³) | Cube Average Thickness (µm) |
|---|---|---|---|
| ILM - RPE | 315 | | |

**INMATE SUBMITTED**

---

| Comments | Doctor's Signature | SW Ver: 5.1.1.6 |
|---|---|---|
| | CSP-LAC HC Records - Received | Copyright 2010 |
| | SEP 1 0 2015 | Carl Zeiss Meditec, Inc |
| | | All Rights Reserved |
| | | Page 1 of 1 |

Confidential Saved 2015-11-09T14:21:43Z



Name: **BAKER, TIMOTHY**

ID: CZMI1752360722
DOB: 12/28/1960
Gender: Male
Doctor:

Exam Date: 9/9/2015
Exam Time: 8:00 AM
Technician: Operator, Cirrus
Signal Strength: 8/10

A. SWABY, D.O.
Staff Physician
CSP-Los Angeles County

GOLDEN STATE EYE

**ZEISS**

---

## High Definition Images: HD 5 Line Raster

OD ○   ● OS

---

**Scan Angle: 0°**       **Spacing: 0.25 mm**       **Length: 6 mm**







INMATE SUBMITTED

---

| Comments | Doctor's Signature | |
|---|---|---|
| | CSP-LAC HC Records - Received | SW Ver: 5.1.1.6<br>Copyright 2010<br>Carl Zeiss Meditec, Inc<br>All Rights Reserved<br>Page 1 of 1 |

SEP 1 0 2015

Confidential Saved 2015-11-09T14:21:43Z



| Name: | BAKER, TIMOTHY | | | |
|---|---|---|---|---|
| ID: | CZMI1752360722 | Exam Date: | 9/9/2015 | |
| DOB: | 12/28/1960 | Exam Time: | 8:00 AM | |
| Gender: | Male | Technician: | Operator, Cirrus | |
| Doctor: | | Signal Strength: | 9/10 | |

A. SWABY, D.O.
Staff Physician
CSP-Los Angeles County
GOLDEN STATE EYE

9/9/15

ZEISS

## Macula Thickness : Macular Cube 512x128          OD ○   ● OS

INMATE SUBMITTED



Overlay: ILM - RPE  Transparency: 50 %
High-definition mode



ILM-RPE Thickness (µm)



Fovea: 249, 65





ILM - RPE



ILM

Distribution
of Normals
99%
95%
5%
1%





RPE

| | Central Subfield Thickness (µm) | Cube Volume (mm³) | Cube Average Thickness (µm) |
|---|---|---|---|
| ILM - RPE | 250 | 9.9 | 276 |

| Comments | Doctor's Signature | |
|---|---|---|

CSP-LAC HC Records - Received
SEP 10 2015

SW Ver: 5.1.1.6
Copyright 2010
Carl Zeiss Meditec, Inc
All Rights Reserved
Page 1 of 1

Confidential Saved 2015-11-09T14:21:43Z

STATE OF CALIFORNIA

*9·9·15*                                                          *0600*

DEPARTMENT OF CORRECTIONS

# HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

*Tawansy*
*Bakersfield*

| PATIENT NAME *Baker Timothy* | CDC NUMBER *K 62174* | INSTITUTION *LAC* |
|---|---|---|

| DATE OF BIRTH *12/28/60* | EPRD DATE | | GENDER *m* |
|---|---|---|---|

PRINCIPLE DIAGNOSIS   *OD Retinoschisis*      ICD-9 CODE      CPT CODE(S)

REQUESTED SERVICE(S)   *Ophth   Consult ( Retinal Spelis)*   # OF DAYS RECOMMENDED

Please circle all that apply:  Diagnostic Procedure/ (Consultation)   (Outpatient) /Inpatient   (Initial) /Follow-up

Requested Treatment/Service is:   **EMERGENT**   **(URGENT)** ,   **ROUTINE**

For the purpose of retrospective review, if emergent or urgent, please justify: _____

Proposed Provider: *Retinal Surgeon*   Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (briefly describe the clinical situation, the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant): *Rt Orbital ( eye) injury, seen by Optometrist on 8/31/15, abnorm D.o. Need*

Estimated time for service delivery, recovery, rehabilitation and follow-up: *E/u in 1 wk*

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME *Wu, C* | APPROVED / AUTHORIZED / DENIED / DEFERRED BY *C. Chin MD* | DATE *9/2/15* |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE *9/1/15* | Utilization management tracking #: *LAC 15116 9/4203 +* |
|---|---|---|

DATE OF CONSULTATION                    PRINTED NAME OF CONSULTANT

FINDINGS: _____

~~INMATE SUBMITTED~~      *9/9/15*

RECOMMENDATIONS: _____

*A. SWABY, D.O.*
*Staff Physician*
*C. Los Angeles County*

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | *Baker, Timothy* |
| PCF SIGNATURE | DATE | *K 62174*   *12-28-62* |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL   - FILE IN UHR
GREEN   - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK   - UM
GOLD   - SPECIALTY SCHEDULER

*SEP 01 RECT*

CSP-LAC HC Records - Received
CSP-LAC HC Records - Received

PHYSICIAN REQUEST FOR SERVICES (RFS)     CDC 7243 (Rev. 11/02)   SEP 10 2015   SEP 01 2015

Confidential Saved 2015-11-09T14:21:43Z

## Primary Care Provider Progress Note

| | S4Date & Time 10/8/2015 10:29 AM | | Age | | UHR Present Yes | Current Medication Reviewed YES | | Immunizations Reviewed | HCM/Preventative Reviewed |
|---|---|---|---|---|---|---|---|---|---|
| Temp 97.1 | Pulse 70 | BP 117/62 | RR 20 | Wt (lbs) 189lb | HT (in) 5'10" | BMI | O2 Sat 100 | PF | Allergies Pcn |

**Reason for Visit:** F/u visit/opthal appt   **CHIEF COMPLAINT:** [H/O Rt retinoschisis( h/o Trauma), HTN, DM, CAD/atypical chest pain, Gerd, allergic rhinitis

| HTN: Chest pain? No | SOB? No | Diabetes: # of hypoglycemic reactions since last visit? | | Seizures: # of seizures since last visit? | |
|---|---|---|---|---|---|
| Asthma: # attacks since last visit? | Asthma canisters in last month? | | # TTA visits since last year? | # awakening w/asthma symp/week? | ACAT: |

Pt refused to be seen, seen by retinal specialist Dr Tawansy, who rec 1 month follow up
H/o refusing labs will re-order labs. f/U in 60 days

PMH: PL reviewed  Yes
ROS: see above

**OBJECTIVE:**   Selecting "WNL" documents that all exam elements listed in the PCP Clinical decision Support dated June 11, 2009 are "within normal limits"

| General | Resused to be seen | Musculoskeletal | |
|---|---|---|---|
| HEENT, Neck | | Neurologic | |
| Cardiac | | Rectal | |
| Pulmonary | | Skin (req for HIV) | |
| Abdomen | | Extremity | |
| Genital | | Foot (all diabetics) | |

**LAB/IMAGING STUDY RESULTS**

**Consults/Imaginings**

| Diagnosis | Goal (G) or Not at Goal (NG) | Plan |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |

INMATE SUBMITTED

| HCM/Preventative (R=refused) | Tdap | Pneumovax: | Influenza | Lipid: | FOBT |
|---|---|---|---|---|---|

| EFFECTIVE COMMUNICATION: | | | Self-Mgt. Goal(s);    Medication Reconciliated: Yes |
|---|---|---|---|

| 1.Disability | 2. Accommodation | 3. Effective Communication | Patient Education: |
|---|---|---|---|
| TABE Score: ☒ ≤ 4.0 | ☒ Extra Time  ☐ SLI(sign lang) | ☒ Pt. asked questions | ☒ Meds  ☒ Labs/study results  ☒ Pt. verbalize understanding of A/P |
| ☐ DPH ☐ DPV ☐ LD | ☐ Louder  ☒ Slower | ☒ Pt. summarized info | |
| ☐ DPS ☐ DNH | ☒ Written - Transcribed  ☐ Other: | EC Achieved: Yes | ☒ Diet/Exercise/Wt. mgt.  ☐ Smoking/ETOH ☐ Other: |
| ☐ DNS ☐ DPP ☒ NA | ☒ Simple - Basic  ☐ Equipment | *See  Chrono/notes | Adv. Directive No       : POLST No |

| *Patient agrees with Tx plan:  Yes | CDCR #:  K62174      TABE 0.0 |
|---|---|
| F/U Visit  60 days d ☐ 7-10 d ☐ 5-6wks ☐ 5-6months; | Name (Last, First, MI):  Baker, timothy |
| Printed: Name, Title          Signature | Date of Birth:  12/28/60 |
| Alphonso Swaby D.O | Housing:  D 5 121L |

COURT COPY.

<u>PROOF OF SERVICE BY MAIL</u>

<u>BY PERSON IN STATE CUSTODY</u>

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, <u>Timothy Ray Baker CDC#K62174</u>, declare:

I am over 18 years of age and a party to this action. I am a resident of <u>SVSP, Soledad, CA</u>
<u>Salinas Valley State</u> Prison,

in the county of <u>MONTEREY</u>

State of California. My prison address is: <u>Timothy R. Baker#K62174,</u>
<u>SVSP-C1-125, P.O. Box 1050, Soledad, CA 93960-1050</u>

On <u>March 17, 2021</u>
(DATE)

I served the attached: <u>OPPOSITION MOTION TO DEFENDANTS</u>
<u>Motion & Motion For Summary Judgment</u>
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

State of California          U.S. District Court
Department of Justice        Central District of California
Deputy Atty Gen. Nicolai Cocis.   OFFICE OF THE CLERK, E. Carson
300, S. Spring Street, Suite 1702   255, East Temple Street Room 180
Los Angeles, CA 90013        Los, Angeles, CA 90012.

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on <u>March 17, 2021</u>                              <u>Timothy Ray Baker.</u>
(DATE)                                              (DECLARANT'S SIGNATURE)

SALINAS VALLEY STATE PRISON. CI-125 Low.
P.O. Box 1050
SOLEDAD, CALIFORNIA 93960-1050



GJS



UNITED STATES DISTRICT COURT.
FOR. THE CENTRAL DISTRICT OF CALIFORNIA.
OFFICE OF THE CLERK, E. CARSON.
255. EAST TEMPLE STREET ROOM 180.
LOS. ANGELES, CALIFORNIA 90012.

STATE PRISON GENERATED MAIL

LEGAL MAIL

